**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BRIAN MILLER, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>    Defendant. | Civil Action No. 05-010-JJF |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF
IT'S MOTION FOR SUMMARY JUDGMENT**

Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com


Of counsel:
Larry R. Seegull
Linda M. Boyd
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com


Counsel for Defendant
*Computer Sciences Corporation*


Date: May 24, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS...........................................1

SUMMARY OF THE ARGUMENT...........................................................2

STATEMENT OF FACTS...................................................................3

ARGUMENT...........................................................…..........................13

    I.    Summary Judgment Standard....................................…..................13

    II.    Plaintiffs' Sole Claim Under The Delaware Wage Payment
    And Collection Act Is Barred By The One-Year Statue of
    Limitations Imposed By Section 8111 Of The Delaware Code................14

        A.    Plaintiffs' Claim Is Subject To The One-Year Statute of
        Limitations Because Plaintiffs Seek To Recover Wages.................14

        B.    Plaintiffs' Claim Is Barred Because They Each Knew
        And Understood As Of *September of 2003* That They Would
        Not Receive An AMIP Bonus For Fiscal Year 2004, And
        Did Not File The Present Action Until *December of 2004*...............15

    III.    Plaintiffs Did Not Earn And Are Thus Not Entitled To Any Portion
    Of An AMIP Bonus For Fiscal Year 2004 Because They Were
    Never Eligible To Participate In AMIP For Fiscal Year 2004.................17

        A.    Plaintiffs Were Never Eligible To Participate
        In AMIP for Fiscal Year 2004...............................................18

            1.    CSC Never Guaranteed That Plaintiffs' Participation
            In AMIP Would Continue Indefinitely...............................18

            2.    Plaintiffs Were Never Provided A Description Of The AMIP
            Program Criteria And Payout Methodology For Fiscal
            Year 2004 As Expressly Required By CSC's Policy...............21

        B.    Plaintiffs Could Not Have Earned Any Portion Of An
        AMIP Bonus For Fiscal Year 2004 Because They Did
        Not Know The Objectives, Targets And Weightings Upon
        Which Such A Bonus Would Be Based....................................23

CONCLUSION...............................................................................25

i

## TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 247-48 (1986) ...................................................................13

*Berry v. E.I. DuPont de Nemours & Co.,*
    625 F. Supp. 1364, 1377 (D. Del. 1985) ..............................................13

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322 (1986) ...............................................................13, 14

*Compass v. American Mirrex Corp.,*
    72 F. Supp. 2d 462, 467-68 (D. Del. 1999) ......................................15, 16

*McIntosh v. Arabian American Oil Co.,*
    633 F. Supp. 942, 947 (D. Del. 1986) ..................................................15

**State Cases**

*Dep't of Labor Ex. Rel Commons v. Green Giant Co.,*
    394 A.2d 753, 756 (Del. Super. 1978) ..................................................14

*Ibach v. Dolle's Candyland, Inc.,*
    1991 Del. Ch. LEXIS 12 at *28-29 (Del. Ch. 1991) ................................15

*Keller v. President, Directors and Company of Farmers Bank of State of Delaware,*
    2 Terry 471, 24 A.2d 539 (Del. Super. 1942) ........................................15

*Little Switzerland, Inc. v. Hopper,*
    867 A.2d 955 (Del. Ch. 2005) ............................................................15

*Plant v. Catalytic Constr. Co.,*
    287 A.2d 682, 684 (Del. Super. 1972) ..................................................15

*SCOA Indus., Inc. v. Bracken,*
    374 A.2d 263, 264 (Del. 1977) ......................................................14, 15

*Seitz v. The Siegfried Group, LLP,*
    2001 Del. Super. LEXIS 364 at * 14 (Del. Super. Oct. 2, 2001)...........14, 15, 16

*Thayer v. Tandy Corp.,*
    533 A.2d 1254 at *3 (Del. 1987) ........................................................14

**State Statutes**

DEL. CODE ANN. tit. 11, § 1107 ...........................................................17

DEL. CODE ANN. tit. 10, § 8111 ........................................................2, 15

DEL. CODE ANN. tit. 19 § 1101(a)(5). ....................................................14

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs, Brian Miller, Hector Calderon, Charles Folwell, Rolland Green,[1] Dawn M. Hauck, Kevin Keir, Ashby Lincoln, Karen Masino, Robert W. Peterson, Susan Pokoiski, Dan P. Rollins and William Sperati, commenced this action against Computer Sciences Corporation ("CSC") on December 13, 2004 in the Superior Court for the State of Delaware. In their Complaint, Plaintiffs allege one count of Violation of Delaware's Wage Payment and Collection Act, DEL. CODE. ANN. tit. 19, §§1101 *et seq*. On January 10, 2006, CSC filed a Notice of Removal to the United States District Court for the District of Delaware (D.I. 1.), and on January 18, 2005, CSC filed an Answer denying the substantive allegations of the Complaint. (D.I. 3.)

On May 31, 2005, the Court entered a Scheduling Order for the completion of discovery and the submission of case dispositive motions. (D.I. 11.) The Court later extended the deadlines for completion of discovery (D.I. 27) and for the submission of dispositive motions (D.I. 79, 95).

On November 8, 2005, the Court entered a Protective Order regarding the production, exchange and use of confidential information. (D.I. 51.) That Protective Order is still in effect.

This is CSC's Opening Brief in support of its Motion for Summary Judgment.

---

[1] On November 15, 2005, the Court granted the voluntary stipulation of dismissal with prejudice requested by Rolland Green. (D.I. 54.)

## SUMMARY OF THE ARGUMENT

I.      Defendant is entitled to summary judgment because there are no material issues of fact in dispute and CSC is entitled to judgment as a matter of law.

II.     Plaintiffs' Delaware Wage Payment and Collection Act ("DWPCA") claim is barred by Delaware's one-year statute of limitations on actions for the "recovery of wages for work, labor or personal services performed." DEL. CODE. ANN. tit. 10, § 8111 (2005). The claim accrued in September of 2003 when Plaintiffs were notified that they would not receive a bonus for the relevant fiscal year, but Plaintiffs did not file their Complaint until December 13, 2004, several months after the limitations period expired.

III.    Plaintiffs' DWPCA claim fails as a matter of law because Plaintiffs did not participate in CSC's bonus program for the relevant fiscal year and thus did not earn and are not entitled to any portion of a bonus under this program. Further, Plaintiffs could not have earned any portion of a bonus under CSC's bonus program because they were never provided the objectives, targets and weightings upon which such a bonus would be based.

2

## STATEMENT OF FACTS[2]

**I.    CSC Has A Bonus Program Known As
The Annual Management Incentive Program.**

Computer Sciences Corporation ("CSC", "the Company") is an information technology ("IT") services company that provides outsourcing of IT services to clients worldwide.  (Siekierka Aff. at A410.)[3]  Outsourcing is the practice of turning over operational and management responsibilities for a business' IT systems to an outside firm.  (A410.)  Often, outsourcing is accomplished by transitioning the IT employees from the client company to CSC.  (A410.)

In 1983, CSC created an incentive compensation program known as the Annual Management Incentive Program ("AMIP").  (A410.)  Under the program, AMIP participants are eligible to receive up to a specified percent of their base salary as a bonus after the close of the fiscal year.  (A410-A411; Koplowicz Aff. at A431.)  The percent actually received by each participant, if any, is based upon achieving a combination of various corporate, business unit, group and/or individual performance objectives set for each fiscal year.  (Eltzroth Dep. at A307[4]; A411; A431.)  CSC measures the degree to

_____

[2] CSC assumes Plaintiffs' testimony as true for the purposes of this Motion only.

[3] Plaintiffs deposed five CSC witnesses during discovery.  Testimony of additional relevant CSC witnesses who were not deposed is provided by way of affidavits included in CSC's Appendix filed herewith. Gus Siekierka is the Corporate Vice President of Human Resources for CSC. (A410.)

[4] Sonia Koplowicz and Susan Eltzroth are Directors of Human Resources at CSC. (A306; A431.)

which these objectives have been met at the close of the fiscal year.[5]  (A307; A411; A431-A432.)  If all of the objectives are achieved, an AMIP participant generally receives the specified potential percent of their base salary as an AMIP bonus.  (A307; A411; A432.)  The greater or lesser achievement of objectives results in a scaled percentage of the targeted AMIP bonus.  (A411; A432.)

> **A.    The Intent Of AMIP Is To Reward Only Upper
>          Level Management But The Program's Expansion
>          Over Time Deviated From This Original Intent.**

AMIP is intended to incentivize and reward upper-level management with year-end bonuses.  (Owen Dep. at A290-291[6], A307; A411; A432.)  Upper level management has traditionally included Presidents (Salary Level 09 – "S09"), Vice Presidents (Salary Level 08 – "S08") and some Directors (Salary Level 07 – "S07").  (A411; A432.)  Employees are "made eligible to participate in AMIP based on anticipated superior contributions to the successful achievement of business objectives" as well as their "job scope and impact of decisions to the success of the business."  (A346; A365.)

Over time, however, AMIP participation expanded beyond CSC's original intent.  (A411; A432-A433.)  This expansion resulted from CSC's absorption of large groups of new employees from clients in connection with outsourcing deals.  (A411; A433.)  As a result, the application of AMIP became inconsistent across the company as some S05 and S06 employees were allowed to participate in AMIP while others were not.  (A411; A433.)  Consequently, the ever increasing AMIP pool no longer reflected CSC's original

---

[5]  CSC's fiscal year runs from April 1 through March 31.  (A411.) For example, Fiscal Year 2004 ran from April 1, 2003 through March 31, 2004.  For convenience, fiscal years are abbreviated, such as FY04, meaning Fiscal Year 2004. (A411.)

[6]  Russell Owen is a President and Account Executive for CSC.  (A287.)

intent for the AMIP program as many lower level management and non-management employees were sporadically admitted to the program. (A411; A433.)

### B. Participation In AMIP Is Reviewed Each Year, And There Are No Guarantees of Continued Participation.

Regardless of whether employees became AMIP participants as upper-level management or lower-level management, CSC never promised or guaranteed ongoing participation in AMIP. (A292; Morris Dep. at A320-A321[7]; A346; A365; A411; A433.) Indeed, Plaintiffs admit that there were no guarantees:

> Q:    But you understand now that the company did not guarantee that you could continue to receive AMIP every year?
>
> A:    I do understand that.

(Calderon Dep. at A250.)

> Q:    You understood there was no guarantee that you would continue to receive AMIP, correct?
>
> ***
>
> A:    Correct.

(Hauck Dep. at A282.)

> Q:    You assumed [that you would be eligible for AMIP], but you weren't guaranteed, correct?
>
> A:    That's correct.

(Pokoiski Dep. at A129.)

> Q:    You understood that there were no guarantees that you would receive the AMIP forever.
>
> ***
>
> A:    Correct.

---

[7] Mary Jo Morris has been the President of CSC's Global Transformation Solutions business unit since May of 2003. (A317.)

(Masino Dep. at A66-A67.)

(*See also* Pl. Dep. at A14-A15, A37-A39, A85, A93-A94, A141, A168-A170, A188, A263-A264; A311-A312; A292; A320-A321; Styles Dep. at A331-A332[8].)

Participation in AMIP endures for only one fiscal year.  (A290-A291; A320-A321; A346; A365; Wilkinson[9] Dep. at A408; A411-A412; A433.)  Indeed, "[a]ll incentive/variable compensation programs are reviewed annually and may be modified or discontinued based on the Chemical Group's financial capability and business requirements."[10]  (A320-A322; A331-A332; A344; A362; A411-A412; A433.)

After the close of each fiscal year, CSC reviews employee participation in AMIP and removes employees as appropriate.  (A412; A433.)  CSC regularly removes employees from AMIP for business reasons. (A412.)

C.    **AMIP Bonuses Are Calculated Based On Various Corporate, Business Unit, Group And/Or Individual Objectives And Targets That Change Every Fiscal Year.**

CSC's compensation policies are available to employees on the corporate Internet and are distributed in printed form and via email.  (Pl. Dep. at A101-A102, A142-A143, A260-A262; A413; A432.)  The guiding compensation policies for the Chemical Group, of which all Plaintiffs were a part, are found in the Chemical Group North American Compensation Programs Employee Total Reward Guide ("Employee Total Reward

---

[8] James Styles was a Director of Human Resources during the relevant time period. (A330, A333-A334.)

[9] Nick Wilkinson is the Vice President of Chemicals, Energy, and Natural Resources for CSC. (A406.)

[10] Plaintiffs were all part of the Chemical Group within CSC.  (Pl. Dep. at A56, A107, A154, A187, A248, A269-A270.)

6

Guide") and the Chemical Group North American Compensation Programs Manager Total Reward Guide ("Manager Total Reward Guide"). (A432; *See* A336-A350, A351-A372.) The former was available to all Chemical Group employees, while the latter was provided to all Chemical Group employees who supervised other employees within the Chemical Group. (A432.) These guides described the AMIP details and participation criteria for all Chemical Group employees for FY03. (A432.)

AMIP bonuses are based on achieving a combination of various corporate, business unit, group and/or individual performance objectives set for each fiscal year. (Pl. Dep. at A10, A18-A19, A50, A60-A63, A73-A74, A89-A92, A114-A117, A145-A148, A171-A175, A197-A206, A219, A241-A242, A246-A247, A265-A269; A308-A309; A412; A433.) The objectives for a given year might include such metrics as revenue, operating income, earnings per share, and returns on investment, as well as individual financial and non-financial objectives. (A308-A309; A412; A433.) Each of these objectives is assigned a specific target number or similar goal towards which the employee is to strive. (A412; A433.) Likewise, each objective is weighted to reflect the employee's ability to impact certain objectives, and the achievement of the objectives is measured at the end of the fiscal year. (A412; A433.) The objectives, as well as their targets and weightings, change from year to year and from employee to employee. (Pl. Dep. at A10, A18-A19, A50, A60-A63, A73-A74, A89-A92, A114-A117, A145-A148, A171-A172, A197-A206, A219, A241-A242, A246-A247, A265-A269; A412; A433.)[11]

---

[11] For an example of an AMIP worksheet providing objectives, targets and weightings, see Plaintiff Brian Miller's FY03 AMIP worksheet at A373-A374.

**D.    AMIP Bonuses For Each Fiscal Year Are Earned At
The Conclusion Of That Fiscal Year Based Upon The
Company's Performance Measured At The End Of The Fiscal Year.**

Because AMIP is based entirely on year-long objectives, CSC assesses whether an employee has achieved his or her designated objectives after the close of the fiscal year. (Pl. Dep. at A8-A10, A20, A95, A150-A152, A257, A273; A293; A300-A302; A307, A313; A331-A333; A407; A412; A433.) Once the fiscal year ends, CSC spends several weeks determining how the company performed against the various objectives set forth on all AMIP worksheets. (Pl. Dep. at A8-A10, A273-A274; A346; A365; A412; A433-A434.) After these calculations are complete, AMIP bonuses for the now-past fiscal year are awarded as appropriate, typically in May or June of the new fiscal year. (A243-A245; A346; A365; A412-A413.; A434.)

After performance for a recently concluded fiscal year has been measured and AMIP bonuses awarded, CSC then begins to set AMIP objectives, targets and weightings for the new fiscal year. (A413; A434.) These objectives, targets and weightings are communicated to employees at some point during the fiscal year, although there is no set timeframe for this communication. (Pl. Dep. at A10, A64-A65, A91-A92, A150-A151, A176-A177, A243-A244; A294-A296, A300-A301; A434.) Typically, the objectives are communicated anywhere from August through October of the fiscal year. (A294-A295; Pl. Dep. at A10, A64-A65, A150-A151, A176-A177, A217-A218, A243-A245; A413; A434.)

Importantly, the communication of these objectives, targets and weightings serves to notify employees that they are eligible for AMIP: "**If you are eligible to participate in AMIP, your manager will supply you with a description of the program criteria**

8

**and payout methodology.**" (A346 (emphasis in original); A300-A301; A413; A434.) *Accordingly, employees who are not provided the AMIP criteria and payout methodology cannot assume that they are eligible for AMIP for the fiscal year.* (A346; A408; A413; A434.)

## II.    Plaintiffs Joined CSC As At-Will Employees In CSC's Chemical Group.

All but one of the Plaintiffs became CSC employees at-will in June of 1997 via an outsourcing arrangement with E. I. DuPont De Nemours & Company ("DuPont").[12] (Pl. Dep. at A3-A5, A35-A36, A41, A55, A82-A83, A105-106, A127, A149, A155-A156, A165, A166, A193, A238, A250-A251, A275, A279.) These Plaintiffs were all employed by DuPont when DuPont outsourced the operation and management of its IT systems to CSC. (Pl. Dep. at A5, A35-A36, A80-A82, A105-A106, A166, A190-A193, A236-A238, A239-A240.). When the outsourcing deal was finalized in June of 1997, these Plaintiffs were transitioned to CSC and became CSC employees in CSC's Chemical Group. (Pl. Dep. at A5, A35-A36, A55, A82-A83, A105-A106, A149, A155-A156, A164, A166, A193, A238, A250-A251, A275.)

Although incentive compensation was discussed with some transitioning DuPont employees before, during and after the transfer, these employees were never guaranteed or promised that they would be entitled to participate in AMIP throughout their career at CSC. (Pl. Dep. at A14-A15, A37-A39, A86-A88, A105-A106, A170, A275-A277.)

Some Plaintiffs became participants in AMIP for Fiscal Year 1998 ("FY98") upon their transfer to CSC. (Pl. Dep. at A12-A14, A42, A84, A153, A168, A249, A275-

---

[12] Plaintiff Ashby Lincoln joined CSC as an at-will employee in October of 1998. (A222-A223.)

A277.) These Plaintiffs were all classified as S05 or S06 employees, but were permitted to participate in AMIP when they transferred to CSC. (Pl. Dep. at A2, A12-A14, A84, A144, A167-A168, A249, A278.) Other Plaintiffs did not participate in AMIP until later in their tenure at CSC. (Pl. Dep. at A57-A59, A108-A109, A194-A195, A224-A225.) All Plaintiffs were participants in AMIP for FY03, the year prior to their removal. (Pl. Dep. at A8, A82, A94, A110-A111, A249, A278.)

### III.     A Disappointing FY03 Caused CSC To Reduce Costs By Realigning AMIP With Its Original Intent Of Rewarding Only Upper-Level Management.

Fiscal Year 2003 was a difficult and disappointing year for CSC, as the Company missed many of its financial targets. (A413.) To get the Company back on financial track, CSC implemented a number of substantial cost-saving measures consistent with its general operating model. (A413-A414.) Recognizing that AMIP had long since deviated from its original objective of incentivizing and rewarding only upper-level management, CSC decided to realign AMIP with this original intent, thereby reducing costs and fostering consistency across the company ("AMIP Realignment"). (A323-A324; A297; A414.) Additionally, the AMIP Realignment allowed CSC to layoff fewer employees than would otherwise have been necessary. (A297; A414.)

#### A.     CSC's Executives Determined That The Best Means Of Realigning The AMIP Program Was To Restrict AMIP Participation To Employees At Salary Level 07 And Above.

The consideration of the AMIP Realignment began early in FY04. (A296; A323-A324; A375-A376; A414.) After significant discussion among the leaders of CSC's business units, senior financial officers, and Human Resources employees about how best to implement the changes, CSC decided to limit AMIP participation for FY04 to the

Director level (S07) and above.[13]  (A377-A390; A414.)  In total, several hundred employees were removed from AMIP for FY04 pursuant to the AMIP Realignment. (A377-A390; A414.)  Because all of the Plaintiffs were at S05 or S06, they were not eligible to participate in AMIP for FY04.  (Pl. Dep. at A26, A44-A45, A48-A49, A76-A77, A95-A96, A157-A159, A181, A280.)

**B.    In September of 2003, CSC Communicated To Plaintiffs Verbally and In Writing That They Would Not Be Eligible For AMIP For Fiscal Year 2004, But Would Be Eligible For A Discretionary Bonus Instead.**

CSC provided detailed instructions for informing relevant employees that they would not be participating in AMIP for FY04 as a result of the AMIP Realignment. (A414-A415)  Managers of such employees were instructed to speak with each employee individually as well as to give them a written letter to sign.  (A377-A390; A415.) Pursuant to these instructions, Plaintiffs spoke with their respective managers in September of 2003, and received a letter regarding the fact that they would not participate in AMIP for FY04.  (Pl. Dep. at A26-A27, A43-A45, A68-A70, A95-A96, A118-A119, A132, A134, A160-A161, A180-A181, A208-A210, A226-A228, A252-A254, A280-A281; A415.)

**C.    Prior To This Communication, CSC Employees, Including Plaintiffs, Had Not Received Any Communication About FY04 AMIP Objectives And Targets.**

As mentioned above, CSC typically develops AMIP objectives, targets and weightings for the current fiscal year some time after it has "closed its books" for the

---

[13]  In addition, CSC reduced the maximum AMIP bonus that some Directors could receive.  (A415.)  A few individuals who commanded the management and/or budget responsibility beyond that which their level indicated were also eligible to participate in AMIP. (A415.)

11

prior fiscal year. (A415.) These objectives, targets and weightings are then communicated to AMIP participants at some point during the fiscal year, generally sometime between August and October of the fiscal year. (A415.) Plaintiffs *never* received any communications regarding FY04 AMIP objectives, targets or weightings. (Pl. Dep. at A6-A7, A16-A17, A47-A48, A67, A75-A76, A97-A98, A121-A122, A133, A182-A183, A207, A212-A213, A230, A255-A256, A282, A283-A284; A415.) Indeed, the only thing Plaintiffs were ever told about the FY04 AMIP was that they were *not* eligible. (A415.) Upper level management employees (S07 and above) received their AMIP objectives, targets and weightings after the September 2003 communications were made to Plaintiffs and the other S05 and S06 employees. (A415.)

## VI.  Plaintiffs Understood As Of September 2003 That They Would Not Receive An AMIP Bonus In Any Amount For Fiscal Year 2004.

As a result of CSC's September 2003 communications with Plaintiffs, both through conversations with their managers and through the September 11, 2003 letters, Plaintiffs understood *at that time* that they would receive no AMIP bonus whatsoever for FY04:

> Q:  Once you received notification that you were no longer eligible for the AMIP program in September of 2003, you understood at that time that you would not get an AMIP payment.
>
> A:  Ever again.

(Folwell Dep. at A190.)

> Q:  So maybe sometime within a couple of weeks after September 11, 2003, you understood you wouldn't even get an AMIP bonus payment for any period of time for the fiscal year 2004.
>
> A.  Right. Correct.

(Calderon Dep. at A234.)

12

> Q:    [W]hen you received the notification that you were no longer eligible for AMIP in September of 2003, you knew as of that point in time you would not get any AMIP bonus for fiscal year 2004?
>
> A:    That's what the letter read.

(Hauck Dep. at A272.)

> Q:    At that time that you were notified, you knew you would no longer get any AMIP payment, correct?
>
> A:    Correct.

(Masino Dep. at A53.)

(*See also* Pl. Dep. at A23-A25, A46, A53-A54, A97, A120, A125-A126, A137-A138, A179, A209-A211, A229, A233-A235.)

## ARGUMENT

### I.    Summary Judgment Standard.

Summary judgment is appropriate in this case because Plaintiffs fail "to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Moreover, Plaintiffs cannot rely on conclusory assertions to withstand a motion for summary judgment. *Berry v. E.I. DuPont de Nemours & Co.*, 625 F. Supp. 1364, 1377 (D. Del. 1985); *Celotex*, 477 U.S. at 324 (holding that a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for

13

summary judgment).  Based upon this standard, summary judgment should be entered for CSC on all of Plaintiff's claims.

**II.    Plaintiffs' Sole Claim Under The Delaware Wage Payment And Collection Act Is Barred By The One-Year Statue of <u>Limitations Imposed By Section 8111 Of The Delaware Code.</u>**

**A.    Plaintiffs' Claim Is Subject To The One-Year Statute of Limitations Because Plaintiffs Seek To Recover Wages.**

Plaintiffs' claim for AMIP bonuses constitutes a claim for "wages" under the Delaware Wage Payment and Collection Act ("DWPCA").  The DWPCA defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, commission or other basis of calculation."  DEL. CODE. ANN. tit. 19, § 1101(a)(5).  Delaware courts have long interpreted the term "wages" to encompass bonuses under the DWPCA.  *SCOA Indus., Inc. v. Bracken*, 374 A.2d. 263, 264 (Del. 1977) (holding that a year-end bonus constitutes "wages" under the DWPCA); *Thayer v. Tandy Corp.*, 533 A.2d. 1254 at \*3 (Del. 1987) (same); *Seitz v. The Seigfried Group, LLP*, 2001 Del. Super. LEXIS 364 at \* 14 (Del. Super. Oct. 2, 2001) ("[Y]ear end bonuses or amounts earned on commission are considered wages.") (attached as A391-A397) (citing *SCOA Indus.*, 374 A.2d at 264 and *Dep't of Labor Ex. Rel Commons v. Green Giant Co.*, 394 A.2d 753, 756 (Del. Super. 1978)).

Delaware law applies a one-year statute of limitations to such wage actions:

> **No action** for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or otherwise)...or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, **shall be brought after the expiration of one year** from the accruing cause of action on which such action is based.

14

DEL. CODE. ANN. tit. 10", § 8111 (2005) (hereinafter "Section 8111") (emphasis added).

Actions for recovery of bonuses have repeatedly been found to fall under Section 8111.

*See, e.g., Compass v. American Mirrex Corp.*, 72 F. Supp. 2d 462, 467-68 (D. Del. 1999)

(bonus upon sale of company); *SCOA Indus.,*374 A.2d at 264 (Del. 1977) (year-end

bonus); *Seitz*, 2001 Del. Super. LEXIS 364 at *14-16 (same) (attached as A391-A397);

*Little Switzerland, Inc. v. Hopper*, 867 A.2d 955 (Del. Ch. 2005) (bonus upon change in

control of corporation); *Ibach v. Dolle's Candyland, Inc.*, 1991 Del. Ch. LEXIS 12 at

*28-29 (Del. Ch. 1991) (incentive bonus) (attached as A398-A404)

> **B.    Plaintiffs' Claim Is Barred Because They Each Knew And Understood As Of *September of 2003* That They Would Not Receive An AMIP Bonus For Fiscal Year 2004, And Did Not File The Present Action Until *December of 2004*.**

In Delaware, statutes of limitations begin to run "when proper parties are in

existence capable of suing and being sued, and a cause of action exists capable of being

sued on forthwith." *Plant v. Catalytic Constr. Co.,* 287 A.2d 682, 684 (Del. Super. 1972)

(citing *In Keller v. President, Directors and Company of Farmers Bank of State of

Delaware*, 2 Terry 471, 24 A.2d 539 (Del. Super. 1942).  In other words, the statute of

limitations accrues when an actionable dispute between known parties becomes clear.

*Compass v. American Mirrex Corp.*, 72 F. Supp. 2d 462, 468 (D. Del. 1999) (statute of

limitations on bonus recovery claim began to run when the plaintiff was notified that his

employer would not pay him the amount to which he believed he was entitled); *McIntosh

v. Arabian American Oil Co.*, 633 F. Supp. 942, 947 (D. Del. 1986) (statute of limitations

on plaintiff's employment benefits recovery claim began to run when plaintiff was

notified by his employer that his eligibility for these benefits was terminated);  *SCOA

Indus., Inc. v. Wilmington Dry Goods Co.*, 374 A.2d 263, 264 (Del. 1977) (statute of

limitations on plaintiff's year-end bonus claim began to run when defendant refused to pay any amount of bonus, and not when defendant's fiscal year ended); *Seitz v. The Siegfried Group, LLP*, 2001 Del. Super. LEXIS 364 at *16-17 (Del. Super. 2001) (statute of limitations on bonus recovery claim began to run when Plaintiff was put on notice that the amount of the bonus was in dispute) (attached as A391-A397).

Here, each Plaintiff's claim for a bonus accrued as soon as he or she became aware that they would not receive an AMIP bonus in any amount for FY04. It is undisputed that **each** Plaintiff was so notified by CSC in September of 2003. (Pl. Dep. at A23-A25, A46, A53, A96, A118-A120, A125-A126, A134-A136, A137-A139, A178-A179, A190, A209-A211, A226-A229, A234-A235, A272.)

Indeed, Plaintiffs' recognition of the claim in September of 2003 is additionally made clear by their decision to contact and retain an attorney shortly after receiving notice that they were not eligible for AMIP in FY04. (Pl. Dep. at A54, A134-A136, A189, A271.) In fact, some of the Plaintiffs drafted and distributed a letter to other CSC employees whom they suspected were also impacted by the AMIP Realignment, explaining their belief that that they had a claim against CSC for bonus recovery, and inviting them to contact a particular attorney to pursue legal action as part of a group. (Pl. Dep. at A71-A72, A138-A140.)

Because Plaintiffs were notified and understood as of September of 2003 that they would not receive an AMIP bonus *in any amount* for FY04, the dispute between Plaintiffs and CSC was clear *at that time*. The one-year statute of limitations on Plaintiffs' bonus recovery claim thus began to run as of September of 2003 and expired as of September of 2004. *Because the Plaintiffs filed the present action on December*

*13, 2004, several months after the statute of limitations had run on their claim, this*

*action is barred by Section 8111 and should be dismissed as untimely.*

**III.    Plaintiffs Did Not Earn And Are Thus Not Entitled To Any
Portion Of An AMIP Bonus For Fiscal Year 2004 Because They
<u>Were Never Eligible To Participate In AMIP For Fiscal Year 2004.</u>**

Plaintiffs claim that CSC "improperly withheld [their] earned AMIP bonus[es] ...

for the period of time from April 1, 2003 through and including the time of CSC's notice

to each Plaintiff in September of 2003" in violation of the DWPCA.  (Complaint, D.I. 1

at ¶ 30.)    Although they cite to no specific provision of the DWPCA, Plaintiffs

presumably rely upon Section 1107's prohibition against an employer's unlawful

withholding or diverting of employee wages.    DEL. CODE ANN. tit. 11, § 1107.    In

considering whether income has been improperly withheld under the DWPCA, Delaware

courts first consider whether that income constitutes "wages" under Section 1101.

Assuming the disputed income falls under the category of "wages," courts next determine

whether the employee has earned and is thus entitled to the disputed wages.  In so doing,

courts can consider and rely upon statements in employee contracts and/or in policy

manuals.

Here, Plaintiffs have not earned and are not entitled to any portion of an FY04

AMIP bonus for two reasons.  First, Plaintiffs mistakenly assume, in direct contravention

of CSC policy, that they were automatically eligible to participate in AMIP for FY04

simply because they had participated in prior years.  Second, Plaintiffs premise their

claim for "earned income" on the inaccurate and nonsensical notion that they were

"perform[ing]...duties in accordance with the criteria required to receive [an] AMIP

bonus" *despite never having received any such AMIP criteria for FY04.*  As shown

below, these assumptions are belied by the express language of CSC's policies, a common sense understanding of the AMIP program, and Plaintiffs' own admissions.

**A.    Plaintiffs Were Never Eligible To Participate In AMIP for Fiscal Year 2004.**

**1.    CSC Never Guaranteed That Plaintiffs' Participation In AMIP Would Continue Indefinitely.**

As an annual incentive compensation program, AMIP is designed to incentivize selected employees by setting appropriate objectives, targets and weightings for each fiscal year and rewarding the achievement of those objectives. (A411-A412; A431-A433.) Because CSC's needs and goals change each year, CSC built substantial flexibility into the administration of the AMIP program:

- CSC reviews AMIP *each year* and expressly reserves the right to modify or completely discontinue the program based on financial and business requirements. (A344 ("All incentive/variable compensation programs are reviewed annually and may be modified or discontinued based on the Chemical Group's financial capability and business requirements."); A362 (same); A292; A320-A322; A331-A332; A411-A412; A433.)

- CSC reviews AMIP participation *each year* and expressly provides that participation in one fiscal year does not guarantee continued participation in subsequent years. (A346 ("Participation in AMIP is reviewed each year, and there is no guarantee of continued participation in the AMIP program."); A365 (same); A292; A320-A321; A408; A411-A412; A433.)

- For *each fiscal year*, CSC sets new objectives, targets and weightings as appropriate. (Pl. Dep. at A10, A18-A19, A50, A60-A63, A73-A74, A89-A92, A114-

A117, A145-A147, A171-A75, A197-A206, A219, A241-A242, A246-A247, A265-A269; A412.; A434.)

Indeed, Plaintiffs admitted that participation in AMIP was *not* guaranteed from one year to the next:

> Q:     But you understand now that the company did not guarantee that
>        you could continue to receive AMIP every year?
>
> A:     I do understand that.

(Calderon Dep. at A250.)

> Q:     You understood there was no guarantee that you would continue to
>        receive AMIP, correct?
>
> ***
>
> A:     Correct.

(Hauck Dep. at A282.)

> Q:     You assumed [that you would be eligible for AMIP], but you
>        weren't guaranteed, correct?
>
> A:     That's correct.

(Pokoiski Dep. at A129.)

> Q:     You understood that there were no guarantees that you would
>        receive the AMIP forever.
>
> ***
>
> A:     Correct.

(Masino Dep. at A66-A67.)

(*See also* Pl. Dep. at A14-A15, A37-A39, A93-A94, A141, A168-A170, A188, A263-A264.)

Accordingly, Plaintiffs' participation in AMIP in prior years is clearly irrelevant to their participation in FY04.  Plaintiffs "assumed" that they would get AMIP bonuses year after year, but CSC's express policy provided that participation in AMIP is reviewed

19

each year. (A346 ("Participation in AMIP is reviewed each year, and there is no guarantee of continued participation in the AMIP program."); A365 (same); A292; A320-A321; A408; A411-A412; A433.)

Likewise, Plaintiffs' AMIP objectives, targets and/or weightings from previous years are unrelated to those for FY04 because AMIP objectives, targets and weightings change each year to address CSC's changing needs and goals. (Pl. Dep. at A10, A18-A19, A50, A60-A63, A73-A74, A89-A92, A114-A117, A145-A148, A171-A175, A197-A206, A219, A241-A242, A246-A247, A265-A269; A411-A413; A434.)

Finally, Plaintiffs cannot maintain that they were promised indefinite continued participation in AMIP when they understood, and the policy provided, that the program can be modified or completely discontinued at CSC's sole discretion. (A292; A320-A322; A331-A332; A344; A362; A411-A412; A433.)

Moreover, ***Plaintiffs concede that they were never promised ongoing participation in AMIP.*** (Pl. Dep. at A14-A15, A37-A39, A66-A67, A85, A93-A94, A128-A129, A141, A170, A188, A250, A282.) Further, they recognize that CSC has the right to make business decisions to remain competitive, maximize profits and reduce costs. (Pl. Dep. at A32, A48-A49, A77, A99-A100, A123, A184, A214, A221, A255, A282.) ***Plaintiffs admitted that this includes the right to remove people from AMIP***:

> Q:    But you do understand that CSC has the right to make a change to its AMIP bonus as a business judgment in order to remain competitive in the marketplace, seek revenue to make profit?
>
> A:    Yes.

(Lincoln Dep. at A221.)

> Q:    You don't have an overall problem with CSC removing people from AMIP, do you?
>
> A:    No.

(Pokoiski Dep. at A124.)

> Q:    So then you don't have a problem with CSC removing people
>       from AMIP?
>
> A:    No.

(Peterson Dep. at A100.)

Accordingly, Plaintiffs cannot support their claim that they were eligible for and entitled

to FY04 AMIP bonuses by maintaining that they were participants in the FY04 AMIP by

virtue of any promise or guarantee of ongoing participation.

> **2.    Plaintiffs Were Never Provided A Description Of The AMIP
>         Program Criteria And Payout Methodology For Fiscal Year
>         2004 As Expressly Required By CSC's Policy.**

Employees are alerted to their AMIP eligibility for a particular fiscal year when

provided the objectives, targets and weightings towards which they must work to receive

an AMIP bonus:  "**If you are eligible to participate in AMIP, your manager will**

**supply you with a description of the program criteria and payout methodology.**"

(A346 (emphasis in original); A300-A301; A319; A413; A434.)    Under the plain

language of the policy, no employee can assume they are eligible to participate in AMIP

for a particular fiscal year *until and unless* they receive the appropriate communication

from their manager.    (A413; A434.)    Because AMIP is subject to modification or

discontinuance each year, and because AMIP objectives, targets and weightings change

each year for each employee, it makes sense and is necessary to premise an employee's

notification of eligibility upon communication of his or her new objectives, targets and

weightings. (A411-A413; A434.)

Here, Plaintiffs admit that they *never* received any communications regarding

FY04 AMIP objectives, targets or weightings. (Pl. Dep. at A6-A7, A16-A17, A47-A48,

21

A67, A75-A76, A97, A121-A122, A133, A182, A207, A212-A213, A230, A255-A256, A282-A284; A415.) Without such a notification, Plaintiffs were not eligible for AMIP in FY04.

In fact, because CSC had determined that no S05 and S06 employees would be eligible for FY04 AMIP, no such employee received a communication of this nature during FY04. (A414-A415.) Instead, Plaintiffs simply assumed that they were eligible to participate in FY04 AMIP because they were not otherwise informed:

> Every year I participated in that program, until somebody told me I wasn't participating in that program, I would assume that I was, yes.

(Miller Dep. at A141.)

> Q:   That is, you assumed you would continue to remain eligible for any AMIP payment because nobody had told you otherwise.
>
> A: Correct.

(Folwell Dep. at A196-A197.)

> So you just expected you were going to receive it until they told you you weren't.

(Rollins Dep. at A40.)

(*See also* Pokoiski Dep. at A129.) But, assuming something is true does not make it true. In order to be eligible for an FY04 AMIP bonus, Plaintiffs would have needed to receive a detailed explanation of how such a bonus would be calculated. Because Plaintiffs admit that they never received such an explanation (even though they received them in prior years) they were not a part of the FY04 AMIP. Accordingly, under the express terms of CSC's compensation policy, Plaintiffs were not eligible to participate in FY04 AMIP and had no reason to assume otherwise.

**B.    Plaintiffs Could Not Have Earned Any Portion Of An AMIP Bonus For Fiscal Year 2004 Because They Did Not Know The Objectives, Targets And Weightings Upon Which Such A Bonus Would Be Based.**

Plaintiffs argue that they each "earned" a prorated AMIP bonus because they were "perform[ing]…duties in accordance with the criteria required to receive [an] AMIP bonus" during the time period from April 1, 2003 until they were expressly notified that they were not eligible for FY04 AMIP participation. (Complaint, D.I. 1 at ¶ 19, 30, Final Unnumbered Paragraph.) *Given that the Plaintiffs were never provided any objectives, goals or targets for FY04, however, this argument is entirely unsupportable.* (Pl. Dep. at A6-A7, A16-A17, A47-A48, A67, A75-A76, A97-A98, A121-A122, A133, A182-A183, A207, A212-A213, A230, A255-A256, A282-A284.)

Plaintiffs never received any such AMIP criteria for FY04 and thus could not have been performing duties in an effort to meet such criteria.  In other words, Plaintiffs could not work towards earning a bonus when they had no knowledge of what earning that bonus would entail.

The impossibility of Plaintiff's argument is highlighted by Plaintiffs' own admissions that they can only estimate the prorated AMIP bonus to which they claim entitlement *because they did not and do not know the objectives, targets and weightings upon which such a bonus would have been based had they been eligible*:

> Q:    You have to estimate because you don't have a worksheet to use to calculate how your AMIP bonus would have been calculated, correct?
>
> A:    That's correct.
>
> Q:    You don't know what the weightings would have been on that worksheet?
>
> A:    No…
>
> Q:    You don't know what the targets were for that fiscal year '04, either?

> A:     No, I don't.

(Pokoiski Dep. at A121-A122.)

> Q:     The reason you had to estimate it is because you never received an
> AMIP worksheet for FY '04?
>
> A:     Correct.
>
> Q:     You don't know what metrics or factors were used in FY'04 to
> calculate the AMIP bonuses?
>
> A:     No.

(Lincoln Dep. at A230.)

> Q:     It would be impossible for you to come up with a final number of
> what you would have received had you not been removed from
> AMIP?
>
> A:     That's right.
>
> Q:     You don't know what metrics or factors were used to calculate the
> AMIP bonuses in fiscal year 2004?
>
> A:     Not exactly, that's right.  I know what was used to calculate prior
> years, but not that year.

(Peterson Dep. at A97-A98.)

(*See also* Pl. Dep. at A22, A28-A31, A47-A48, A75-A76, A133, A182-A183, A207,

A212-A213, A255-A256, A282-A284.)

The AMIP bonus is calculated using a detailed, formulaic compilation of

objectives, targets and weightings, which takes CSC great pains to develop and evaluate.

*Plaintiffs cannot maintain that they have "earned" FY04 AMIP bonuses while at the*

*same time admitting that they have no knowledge of what would have been required to*

*earn these bonuses.*

Moreover, CSC's policy and practice does not treat AMIP bonuses as earned if an

AMIP participant is no longer eligible for the program at the end of the fiscal year.

(A413.)   For example, although James Styles, Director of Human Resources, was

employed at CSC until March 17, 2006 and was participating in AMIP for FY06, he has not and will not receive any amount of AMIP bonus for FY06 because he was not an AMIP participant at the close of the fiscal year (i.e., March 31, 2006). (A334.) This is consistent with the deposition testimony of Russell Owen, a CSC President and Account Executive: "In my experience with CSC since 1992, there's such a behavioral or a cultural understanding of how this [AMIP] program is run, people will time their retirements, will time their job and assignment changes to occur after the end of the fiscal year because of the eligibility rules around AMIP." (A298-A299, A303; *see also* Eltzroth Dep. at A309-A310 (Q: "So is it your testimony that, if you're removed from the program prior to the payout, you're not eligible to receive the AMIP bonus?" A: "Yes." Q: "For any portion of the year?" A: "Yes."); A325-A327.)

Accordingly, Plaintiffs have not earned and are not entitled to any portion of an AMIP bonus for FY04.

## CONCLUSION

For the foregoing reasons, CSC respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,

/s/ Sarah E. DiLuzio

Sarah E. DiLuzio (#4085)
POTTER ANDERSON &
CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Of counsel:
Larry R. Seegull
Linda M. Boyd
DLA PIPER RUDNICK GRAY
CARY US LLP
6225 Smith Avenue
Baltimore, Maryland  21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Counsel for Defendant
*Computer Sciences Corporation*

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on May 24, 2006, I electronically filed

true and correct copies of **DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS**

**MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using CM/ECF

which will send notification of such filing, which is available for viewing and

downloading from CM/ECF, to the following counsel of record:

    Jeffrey K. Martin, Esq.
    Timothy J. Wilson, Esq.
    MARGOLIS EDELSTEIN
    1509 Gilpin Avenue
    Wilmington, DE 19806
    (302) 777-4680
    jmartin@marolisedelstein.com

                        /s/ Sarah E. DiLuzio
                        Sarah E. DiLuzio (DSB ID No. 4085)
                        POTTER ANDERSON & CORROON LLP
                        Hercules Plaza, 6th Floor
                        1313 North Market Street
                        Post Office Box 951
                        Wilmington, Delaware 19899-0951
                        Tel: (302) 984-6000
                        E-mail: sdiluzio@potteranderson.com