346

1    Q.    Would you consider any of the previous years'
2  guidelines?
3    A.    Yes.
4    Q.    Did you believe that the previous years'
5  guidelines would continue to be applicable?
6              MS. BOYD:  Objection.  Leading.
7    A.    Unless specifically changed, yes.
8    Q.    You stated that the factors changed for the
9  AMIP bonus.  Did they change frequently?
10   A.    No.  Once a year at most.  Occasionally they
11 would change during the course of the year as we tried to
12 establish what they were.
13   Q.    Did they change drastically in terms of what
14 you needed to do?
15   A.    No.
16   Q.    The September 11th letter, you still have that?
17   A.    I believe I do, yes.
18   Q.    It mentions a discretionary bonus.
19   A.    Yes.
20   Q.    Did you get that discretionary bonus?
21   A.    I did not.
22   Q.    Did you ever get it?
23   A.    No.
24   Q.    You also said earlier that, once you found out



WILCOX & FETZER LTD.
Registered Professional Reporters

B-0359

1  that you were off the AMIP plan, you did everything that
2  was expected of you. Why is that?
3      A.   That's the way I do my job. I do things that
4  are expected of me because I want to be a good employee.
5      Q.   Could you have been terminated if you didn't do
6  what was expected of you?
7      A.   Oh, yes.
8      Q.   The extra hours that you worked, that you
9  testified that you worked, what was the reason that you
10 worked these extra hours?
11     A.   To get a job done, to do it well.
12     Q.   Did earning your bonus come into play in that
13 decision?
14     A.   Yes. That's in the back of your mind. You
15 want to be worth what you're being paid.
16     Q.   You also testified that you weren't promised a
17 bonus at DuPont. Were you promised a bonus when you came
18 to work at CSC?
19          MS. BOYD: Objection, leading.
20     A.   The offer letter offered it to me.
21     Q.   Did you rely on that offer?
22     A.   Yes.
23          MS. BOYD: Objection. Leading.
24     Q.   If the AMIP program was not in the offer



348

1  letter, would that have made any difference in your
2  decision to accept employment with CSC?
3            MS. BOYD:  Objection.  Leading.
4       A.   If my compensation was not commensurate with
5  what I was being paid at DuPont, it would have made a
6  difference.  So yes, if it was missing, yes.
7       Q.   "Yes," meaning?
8       A.   I would not have agreed to move to CSC had some
9  kind of equal compensation been given.
10      Q.   Comparing the bonuses at DuPont and CSC, were
11 they exactly the same?
12      A.   I would say no.  I would say the way they were
13 calculated were different, but the percentage amount in
14 my case was the same, as far as what I was eligible for.
15      Q.   Is that what was most important to you?
16      A.   Yes.
17           MR. WILSON:  That's all I have.
18 BY MS. BOYD:
19      Q.   Let me hand you back Exhibit 23.  Looking at
20 the first page, could you tell me the pay period for
21 which this pay stub is for?
22      A.   This particular pay period was for April 28,
23 2001, to May 11th, 2001.
24      Q.   And the bonus you mentioned earlier of



WILCOX & FETZER LTD.
Registered Professional Reporters

B-0361

349

1  $30,612.82, that was paid during that pay period; is that
2  correct?
3      A.    Yes.
4      Q.    That factored into the total earnings listed at
5  the bottom in that pay period; is that correct?
6      A.    Yes.
7      Q.    Looking at the second page, could you tell me
8  the pay period for which this pay stub is for?
9      A.    May 11th, 2002, to May 24, 2002.
10     Q.    The bonus of $30,612.82 listed on this sheet
11 was paid during that pay period?
12     A.    Yes.
13     Q.    It factored into the earnings that you see at
14 the bottom on that date and during that pay period?
15     A.    Yes.
16     Q.    On page 3, could you tell me the pay period on
17 this pay stub?
18     A.    It is May 10th, 2003, to May 23rd, 2003.
19     Q.    And the bonus of $27,113 was paid for that pay
20 period; is that correct?
21     A.    Yes.
22     Q.    And it factored into the total earnings for
23 that pay period?
24     A.    Yes.



WILCOX & FETZER LTD.
Registered Professional Reporters

B-0362

1          MS. BOYD:  Thank you.
2  BY MR. WILSON:
3      Q.   I have a couple follow-ups regarding the same
4  exhibit.
5           On the first page of Exhibit 23 across from
6  the word "Salary," what is the number there under column
7  "Current"?
8      A.   3,924.72.
9      Q.   Is that the salary that you earned during that
10 pay period?
11     A.   Yes.
12     Q.   The bonus that's indicated on this, is that the
13 bonus you earned during this pay period?
14     A.   No.
15     Q.   When did you earn this bonus?
16     A.   During the entire year, fiscal year.
17     Q.   On page 2, what is the current salary?
18     A.   Current salary is $3,924.72.
19     Q.   Is that the salary you earned during this pay
20 period?
21     A.   Yes.
22     Q.   Where it says "Bonus," was that the bonus
23 earned during this pay period?
24     A.   No.  It was during the fiscal year.



WILCOX & FETZER LTD.
Registered Professional Reporters

B-0363

1   Q.   Fiscal year being?

2   A.   Would have been April 2001 through March 2002.

3   Q.   On the third page, the salary under "Current,"
4   when did you earn that salary?

5   A.   During the pay period.

6   Q.   And that pay period is what?

7   A.   Is March 10th, 2003, through March 23rd, 2003.

8   Q.   March or May?

9   A.   Excuse me. May. '05.

10  Q.   You did earn that salary during that pay
11  period?

12  A.   Yes.

13  Q.   Where it says "Bonus," did you earn that bonus
14  during that pay period?

15  A.   I earned it during that current -- or the prior
16  fiscal year.

17  Q.   What were the dates of that fiscal year?

18  A.   The dates would have been April 2002 through
19  March 2003.

20          MR. WILSON:  That's all I have.

21          (Deposition concluded at 10:00 a.m.)

22                  - - - - -

23

24



WILCOX & FETZER LTD.
Registered Professional Reporters

B-0364

<p>

T E S T I M O N Y

DEPONENT:   ROBERT W. PETERSON                              PAGE

BY MS. BOYD.................................. 280
BY MR. WILSON................................ 336
BY MS. BOYD.................................. 348
BY MR. WILSON................................ 350


E X H I B I T S

DEPOSITION EXHIBIT NO.                              MARKED

20 - A letter dated March 7, 1997, to
Robert W. Peterson from Dorothy Eltzroth...... 294

21 - A letter dated September 11, 2003,
to Robert Peterson from Joseph Doherty........ 311

22 - A two-page document entitled,
"Fiscal Year 2003 AMIP"....................... 337

23 - A three-page document Bates stamped
D-11146, D-11174, and D-11201................. 342

CERTIFICATE OF REPORTER                            PAGE 353



WILCOX & FETZER LTD.
Registered Professional Reporters

## CERTIFICATE OF REPORTER

STATE OF DELAWARE:
                    :
NEW CASTLE COUNTY:

      I, Kimberly A. Hurley, Registered Merit Reporter and Notary Public, do hereby certify that there came before me on the 28th day of January, 2006, the deponent herein, ROBERT W. PETERSON, who was duly sworn by me and thereafter examined by counsel for the respective parties; that the questions asked of said deponent and the answers given were taken down by me in Stenotype notes and thereafter transcribed by use of computer-aided transcription and computer printer under my direction.

      I further certify that the foregoing is a true and correct transcript of the testimony given at said examination of said witness.

      I further certify that reading and signing of the deposition were waived by the deponent and counsel.

      I further certify that I am not counsel, attorney, or relative of either party, or otherwise interested in the event of this suit.

      Kimberly A. Hurley, RMR

      Certification No. 126-RPR
      (Expires January 31, 2008)

DATED:



WILCOX & FETZER LTD.
Registered Professional Reporters