# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIAN MILLER, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-010-JJF |
| | ) | |
| COMPUTER SCIENCES CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Computer Sciences Corporation ("CSC"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12, hereby answers Plaintiffs' Complaint.

Defendant generally denies liability as to all counts and all claims. Each paragraph below corresponds to the numbered paragraphs in the Complaint:

1.     Defendant admits that this is an action by twelve current or former employees of CSC seeking recovery of a bonus. To the extent that this paragraph contains additional factual allegations, Defendant denies the remaining allegations in this paragraph.

2.     Defendant admits that Plaintiff Brian Miller was employed as a Senior Manager at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

3.     Defendant admits that Plaintiff Hector Calderon was employed as a Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

4.    Defendant admits that Plaintiff Charles Folwell was employed as a Senior Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

5.    Defendant admits that Plaintiff Rolland Green was employed as a Computer Scientist, Work Effort Lead at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

6.    Defendant admits that Plaintiff Dawn M. Hauck was employed as a Senior Manager at some time during her employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

7.    Defendant admits that Plaintiff Kevin Keir was employed as a Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

8.    Defendant admits that Plaintiff Ashby Lincoln was employed as a Senior Manager at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

9.    Defendant admits that Plaintiff Karen Masino was employed as a Senior Manager at some time during her employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

10.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

2

11.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

12.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

13.    Defendant admits that Plaintiff William Sperati was employed as a Senior Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

14.    Defendant admits that its registered agent for service of process in the State of Delaware is CT Corporation System at 1209 Orange Street, Wilmington, DE 19801. Defendant denies the remaining allegations in this paragraph.

15.    Defendant denies the allegations in this paragraph.

16.    Defendant denies the allegations in this paragraph.

17.    Defendant denies the allegations in this paragraph.

18.    Defendant denies the allegations in this paragraph.

19.    Defendant denies the allegations in this paragraph.

20.    Defendant denies the allegations in this paragraph.

21.    Defendant denies the allegations in this paragraph.

22.    Defendant denies the allegations in this paragraph.

23.    At this time, Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

24.    Defendant asserts that the letter speaks for itself.

25.    Defendant asserts that the letter speaks for itself.

26.    Defendant admits that no Plaintiff was paid an AMIP bonus on March 31, 2004. Defendant denies the remaining allegations in this paragraph.

27.    Defendant incorporates herein by reference the answers, admissions, and denials to paragraphs 1 through 26, as if fully restated.

28.    This paragraph contains no factual allegations to admit or deny, but rather states conclusions of law to which no response is required under the Federal Rules of Civil Procedure.

29.    This paragraph contains no factual allegations to admit or deny, but rather states conclusions of law to which no response is required under the Federal Rules of Civil Procedure.

30.    Defendant denies the allegations in this paragraph.

The unnumbered prayer for relief paragraph contains no factual allegations to admit or deny. To the extent that this paragraph contains factual allegations, however, Defendant denies the allegations in this paragraph and avers that Plaintiffs are not entitled to the relief prayed for.

## DEFENSES

1.    The Complaint fails to state a cause of action upon which relief can be granted.

2.    Plaintiffs are not entitled, on the law or the facts, to the damages claimed.

3.    Defendant's actions were taken in good faith, without malice and without intent and without willfulness such that the relief sought is not available.

4.    Defendant objects to Plaintiff's request for a jury trial with respect to any claim, issue or element of relief to which Plaintiff is not entitled to a trial by jury as a matter of law.

5.    No contract(s) and/or promise as averred in the Complaint existed and/or was breached.

6.    Some or all of Plaintiff's claims are barred by the doctrine(s) of release, estoppel, consent, waiver and/or laches.

7.    The Company will rely on each and every additional defense that may become known to it through the course of this litigation, including discovery, trial, or otherwise.

8.    Plaintiffs' claim is barred by the one-year statute of limitations set forth in Section 8111 of the Delaware Code, DEL. CODE. ANN. tit. 10, § 8111 (2005).

Defendant denies that Plaintiffs are entitled to any of the relief prayed for.

Defendant denies any allegation not specifically admitted herein.

Defendant reserves the right to amend this Answer to assert different or additional defenses or to otherwise amend any of its denials or averments.

WHEREFORE, having fully responded to the Complaint, Defendant respectfully requests that the Court dismiss Plaintiffs' claims with prejudice, award Defendant its costs and reasonable attorneys' fees incurred in this lawsuit, and allow Defendant such other and further relief as this Court deems just and proper.

Of Counsel:

Larry R. Seegull
Linda M. Boyd
DLA PIPER RUDNICK
GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Dated: June 15, 2006

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_
Sarah E. DiLuzio (#4085)
1313 North Market Street
6th Floor, P. O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Counsel for Defendant
Computer Sciences Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN MILLER, *et al.*,       ) | |
|      ) | |
| Plaintiffs,      ) | |
|      ) | |
| v.      ) | C.A. No. 05-010-JJF |
|      ) | |
| COMPUTER SCIENCES CORP.,      ) | |
|      ) | |
| Defendant.      ) | |
| _____ ) | |

## DEFENDANT'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Computer Sciences Corporation ("CSC"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12, hereby answers Plaintiffs' Complaint.

Defendant generally denies liability as to all counts and all claims. Each paragraph below corresponds to the numbered paragraphs in the Complaint:

1. Defendant admits that this is an action by twelve current or former employees of CSC seeking recovery of a bonus. To the extent that this paragraph contains additional factual allegations, Defendant denies the remaining allegations in this paragraph.

2. Defendant admits that Plaintiff Brian Miller was employed as a Senior Manager at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

3. Defendant admits that Plaintiff Hector Calderon was employed as a Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

4.    Defendant admits that Plaintiff Charles Folwell was employed as a Senior Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

5.    Defendant admits that Plaintiff Rolland Green was employed as a Computer Scientist, Work Effort Lead at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

6.    Defendant admits that Plaintiff Dawn M. Hauck was employed as a Senior Manager at some time during her employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

7.    Defendant admits that Plaintiff Kevin Keir was employed as a Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

8.    Defendant admits that Plaintiff Ashby Lincoln was employed as a Senior Manager at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

9.    Defendant admits that Plaintiff Karen Masino was employed as a Senior Manager at some time during her employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

10.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

2

11.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

12.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

13.    Defendant admits that Plaintiff William Sperati was employed as a Senior Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

14.    Defendant admits that its registered agent for service of process in the State of Delaware is CT Corporation System at 1209 Orange Street, Wilmington, DE 19801. Defendant denies the remaining allegations in this paragraph.

15.    Defendant denies the allegations in this paragraph.

16.    Defendant denies the allegations in this paragraph.

17.    Defendant denies the allegations in this paragraph.

18.    Defendant denies the allegations in this paragraph.

19.    Defendant denies the allegations in this paragraph.

20.    Defendant denies the allegations in this paragraph.

21.    Defendant denies the allegations in this paragraph.

22.    Defendant denies the allegations in this paragraph.

23.    At this time, Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

24.    Defendant asserts that the letter speaks for itself.

25.     Defendant asserts that the letter speaks for itself.

26.     Defendant admits that no Plaintiff was paid an AMIP bonus on March 31, 2004. Defendant denies the remaining allegations in this paragraph.

27.     Defendant incorporates herein by reference the answers, admissions, and denials to paragraphs 1 through 26, as if fully restated.

28.     This paragraph contains no factual allegations to admit or deny, but rather states conclusions of law to which no response is required under the Federal Rules of Civil Procedure.

29.     This paragraph contains no factual allegations to admit or deny, but rather states conclusions of law to which no response is required under the Federal Rules of Civil Procedure.

30.     Defendant denies the allegations in this paragraph.

The unnumbered prayer for relief paragraph contains no factual allegations to admit or deny. To the extent that this paragraph contains factual allegations, however, Defendant denies the allegations in this paragraph and avers that Plaintiffs are not entitled to the relief prayed for.

## DEFENSES

1.     The Complaint fails to state a cause of action upon which relief can be granted.

2.     Plaintiffs are not entitled, on the law or the facts, to the damages claimed.

3.     Defendant's actions were taken in good faith, without malice and without intent and without willfulness such that the relief sought is not available.

4.     Defendant objects to Plaintiff's request for a jury trial with respect to any claim, issue or element of relief to which Plaintiff is not entitled to a trial by jury as a matter of law.

5.     No contract(s) and/or promise as averred in the Complaint existed and/or was breached.

6.    Some or all of Plaintiff's claims are barred by the doctrine(s) of release, estoppel, consent, waiver and/or laches.

7.    The Company will rely on each and every additional defense that may become known to it through the course of this litigation, including discovery, trial, or otherwise.

8.    Plaintiffs' claim is barred by the one-year statute of limitations set forth in Section 8111 of the Delaware Code, DEL. CODE. ANN. tit. 10, § 8111 (2005).

Defendant denies that Plaintiffs are entitled to any of the relief prayed for.

Defendant denies any allegation not specifically admitted herein.

Defendant reserves the right to amend this Answer to assert different or additional defenses or to otherwise amend any of its denials or averments.

WHEREFORE, having fully responded to the Complaint, Defendant respectfully requests that the Court dismiss Plaintiffs' claims with prejudice, award Defendant its costs and reasonable attorneys' fees incurred in this lawsuit, and allow Defendant such other and further relief as this Court deems just and proper.

Of Counsel:

Larry R. Seegull
Linda M. Boyd
DLA PIPER RUDNICK
GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Dated:  June 15, 2006

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_
     Sarah E. DiLuzio (#4085)
     1313 North Market Street
     6th Floor, P. O. Box 951
     Wilmington, Delaware 19801
      (302) 984-6000 (general)
     (302) 984-6279 (direct)
      (302) 658-1192 (fax)
     sdiluzio@potteranderson.com

Counsel for Defendant
Computer Sciences Corporation

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, *et al*,                    )
                                          )
      Plaintiffs,                     )
                                          )
      v.                              )    C.A. No. 05-010-<u>JJF</u>
                                          )
COMPUTER SCIENCES CORP.,                  )
                                          )
      Defendant.                      )
_____  )

## <u>DEFENDANT'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT</u>

Defendant, Computer Sciences Corporation ("CSC"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12, hereby answers Plaintiffs' Complaint.

Defendant generally denies liability as to all counts and all claims. Each paragraph below corresponds to the numbered paragraphs in the Complaint:

1.    Defendant admits that this is an action by twelve current or former employees of CSC seeking recovery of a bonus. To the extent that this paragraph contains additional factual allegations, Defendant denies the remaining allegations in this paragraph.

2.    Defendant admits that Plaintiff Brian Miller was employed as a Senior Manager at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

3.    Defendant admits that Plaintiff Hector Calderon was employed as a Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

4.    Defendant admits that Plaintiff Charles Folwell was employed as a Senior Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

5.    Defendant admits that Plaintiff Rolland Green was employed as a Computer Scientist, Work Effort Lead at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

6.    Defendant admits that Plaintiff Dawn M. Hauck was employed as a Senior Manager at some time during her employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

7.    Defendant admits that Plaintiff Kevin Keir was employed as a Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

8.    Defendant admits that Plaintiff Ashby Lincoln was employed as a Senior Manager at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

9.    Defendant admits that Plaintiff Karen Masino was employed as a Senior Manager at some time during her employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

10.    Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

11. Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

12. Defendant denies the allegations in the first sentence of this paragraph. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

13. Defendant admits that Plaintiff William Sperati was employed as a Senior Computer Scientist at some time during his employment with CSC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

14. Defendant admits that its registered agent for service of process in the State of Delaware is CT Corporation System at 1209 Orange Street, Wilmington, DE 19801. Defendant denies the remaining allegations in this paragraph.

15. Defendant denies the allegations in this paragraph.

16. Defendant denies the allegations in this paragraph.

17. Defendant denies the allegations in this paragraph.

18. Defendant denies the allegations in this paragraph.

19. Defendant denies the allegations in this paragraph.

20. Defendant denies the allegations in this paragraph.

21. Defendant denies the allegations in this paragraph.

22. Defendant denies the allegations in this paragraph.

23. At this time, Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

24. Defendant asserts that the letter speaks for itself.

25.    Defendant asserts that the letter speaks for itself.

26.    Defendant admits that no Plaintiff was paid an AMIP bonus on March 31, 2004. Defendant denies the remaining allegations in this paragraph.

27.    Defendant incorporates herein by reference the answers, admissions, and denials to paragraphs 1 through 26, as if fully restated.

28.    This paragraph contains no factual allegations to admit or deny, but rather states conclusions of law to which no response is required under the Federal Rules of Civil Procedure.

29.    This paragraph contains no factual allegations to admit or deny, but rather states conclusions of law to which no response is required under the Federal Rules of Civil Procedure.

30.    Defendant denies the allegations in this paragraph.

The unnumbered prayer for relief paragraph contains no factual allegations to admit or deny.  To the extent that this paragraph contains factual allegations, however, Defendant denies the allegations in this paragraph and avers that Plaintiffs are not entitled to the relief prayed for.

## DEFENSES

1.    The Complaint fails to state a cause of action upon which relief can be granted.

2.    Plaintiffs are not entitled, on the law or the facts, to the damages claimed.

3.    Defendant's actions were taken in good faith, without malice and without intent and without willfulness such that the relief sought is not available.

4.    Defendant objects to Plaintiff's request for a jury trial with respect to any claim, issue or element of relief to which Plaintiff is not entitled to a trial by jury as a matter of law.

5.    No contract(s) and/or promise as averred in the Complaint existed and/or was breached.

6.      Some or all of Plaintiff's claims are barred by the doctrine(s) of release, estoppel, consent, waiver and/or laches.

7.      The Company will rely on each and every additional defense that may become known to it through the course of this litigation, including discovery, trial, or otherwise.

8.      Plaintiffs' claim is barred by the one-year statute of limitations set forth in Section 8111 of the Delaware Code, DEL. CODE. ANN. tit. 10, § 8111 (2005).

Defendant denies that Plaintiffs are entitled to any of the relief prayed for.

Defendant denies any allegation not specifically admitted herein.

Defendant reserves the right to amend this Answer to assert different or additional defenses or to otherwise amend any of its denials or averments.

WHEREFORE, having fully responded to the Complaint, Defendant respectfully requests that the Court dismiss Plaintiffs' claims with prejudice, award Defendant its costs and reasonable attorneys' fees incurred in this lawsuit, and allow Defendant such other and further relief as this Court deems just and proper.

Of Counsel:                                POTTER ANDERSON & CORROON

Larry R. Seegull                           By:_____
Linda M. Boyd[1]                           .....[Erica L. Niezgoda (#3986)]
DLA PIPER RUDNICK                          .....Sarah E. DiLuzio (#4085)[2]
GRAY CARY US LLP                           .....1313 North Market Street
6225 Smith Avenue                          .....6th Floor, P. O. Box 951
Baltimore, Maryland 21209                  .....Wilmington, Delaware  19801
(410) 580-3000 (general)                   .....(302) 984-6000 (general)
(410) 580-4253 (direct)                    .....(302) 984-[6048]6279 (direct)
(410) 580-3253 (fax)                       .....(302) 658-1192 (fax)
larry.seegull@dlapiper.com                 .....[eniezgoda@potteranderson.com]
                                           .....sdiluzio@potteranderson.com

Dated:  [January 18, 2005] June 15, 2006   .....Counsel for Defendant
                                           .....*Computer Sciences Corporation*

_____

[1] Ms. Boyd was admitted *pro hac vice* on September 8, 2005.  (D.I. 17.)

[2] The appearance of Ms. Niezgoda was withdrawn and substituted with the appearance of Ms. DiLuzio on March 15, 2005.  (D.I. 8.)

# EXHIBIT C

2005 U.S. Dist. LEXIS 36399, *

**ROBERT JACKSON, Plaintiff, v. COMMISSIONER NJSP, et al., Defendants.**

Civ. No. 00-4875

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

2005 U.S. Dist. LEXIS 36399

**December 27, 2005, Decided**
**December 27, 2005, Filed**

NOTICE: [*1] NOT FOR PUBLICATION

SUBSEQUENT HISTORY: Partial summary judgment granted by, On reconsideration by Jackson v. Comm'r NJSP, 2006 U.S. Dist. LEXIS 14598 (D.N.J., Mar. 10, 2006)

COUNSEL: For ROBERT JACKSON, Plaintiff: JOHN J. SULLIVAN, DECHERT PRICE & RHOADS, PRINCETON, NJ; MATTHEW V. DELDUCA, DECHERT PRICE & RHOADS, LAWRENCEVILLE, NJ.

For COMMISSIONER NJSP, CARL A. WILLIAMS, Defendant: GEORGE WRIGHT FISHER, JR., ZUCKERMAN & FISHER, LLC, PRINCETON, NJ; VINCENT J. RIZZO, JR., OFFICE OF THE NJ ATTORNEY GENERAL, RJ HUGHES JUSTICE COMPLEX, TRENTON, NJ.

For JAFCA D. MANDZIUK, (official individual), PATRICK J. CALLAHAN, (official individual), ROBERT FRANCES, (official individual), Defendants: VINCENT J. RIZZO, JR., KENNETH B. GOODMAN, OFFICE OF THE NJ ATTORNEY GENERAL, RJ HUGHES JUSTICE COMPLEX, TRENTON, NJ.

For CARL A. WILLIAMS, Defendant: GEORGE WRIGHT FISHER, JR., ZUCKERMAN & FISHER, LLC, PRINCETON, NJ.

JUDGES: Stanley R. Chesler, U.S.D.J.

OPINIONBY: Stanley R. Chesler

OPINION: CHESLER, District Judge

This matter comes before the Court on the motion of Defendants Jafca D. Mandziuk, Patrick J. Callahan, and Robert Frances (collectively "Trooper Defendants") for partial summary judgment [docket item # 54]. Defendant Carl A. Williams ("Williams") separately moves to (1) amend his Answer to Plaintiff's Amended Complaint [docket item [*2] # 61], and (2) to dismiss Plaintiff's Complaint for lack of jurisdiction or, in the alternative, for summary judgment [docket item # 63]. For the reasons set forth below, the Court holds: (1) Trooper Defendants Motion for partial summary judgement is denied; (2) Defendant Williams' Motion to Amend his Answer is granted; and (3) Defendant Williams Motion to Dismiss is granted.

**BACKGROUND**

The instant lawsuit arises out of an automobile stop made by the Defendants and the subsequent incidents surrounding Plaintiff's arrest. Many of the critical facts in this case are in dispute. The parties do seem to agree, however, on some preliminary facts.

*I. Undisputed Facts*

On January 6, 1999, Robert Jackson ("Plaintiff") was a passenger in a rental car driven by Gregory McCalop ("McCalop"). (Def. Br. 4; Pl. Br. 5.) Plaintiff and McCalop were traveling in a rented Chevy Lumina on Route 78 in New Jersey at around 9:00 in the evening. (Def. Br. 5; Pl. Br. 5.) At that time, Defendant Troopers Callahan and Mandzuik were conducting stationary radar patrol of vehicles traveling westbound on Route 78. (Def. Br. 5; Rizzo Decl. Ex. 2.) Defendant Callahan observed the Chevy traveling [*3] westbound and clocked its speed at 72 m.p.h. (Def. Br. 6; Rizzo Decl. Ex. 2.) The legal speed limit on that stretch of Route 78 is 65 m.p.h. (Id.) The troopers pulled off the median and began to pursue the car. (Def. Stat. Mat. Facts. P24; Pl. Stat. Mat. Facts. P24.) While in pursuit of the car on Route 78, the troopers did not employ their overhead lights, spotlights, siren or public address system n1. (Pl.'s Stmt. of Mat. Facts P30.)

n1 Defendants allege that despite unsuccessful attempts, because of the short distance be-

tween the Chevy and the vehicle traveling directly behind it, they were unable to safely move behind Plaintiff's car. (Def. Stat. Mat. Facts. P29-30.) Plaintiff, however, contends that Defendants never made any attempt to stop Plaintiff's car, in part, because the decision to pull over Plaintiff's vehicle was not made until Defendants learned the occupants race. (See Pl. Stat. Mat. Facts. PP30-40.)

At Exit 11, the Chevy exited Route 78 and pulled into the parking lot of the Busy Bee [*4] Convenience Store ("Busy Bee"), approximately one-tenth mile from the off ramp. (Id. P32; Def. Stat. Mat. Facts P43.) Before the car exited the highway, Trooper Mandziuk observed that the Chevy had Connecticut license plates. (Id. P36.) Unable to exit the highway when the Chevy pulled off, Defendants accelerated the police car to a point on the highway approximately 50 yards ahead. (Def. Stat. Mat. Facts P38, 40.) Defendant Callahan then crossed the grass median of the highway and the eastbound lanes of Route 78, and exited the highway at eastbound Exit 11. (Id. P41.) The motivation for Defendants decision to follow the Chevy off the highway is heavily in dispute n2.

> n2 In keeping with our obligations under Forbes v. Township of Lower Merion, this Court will identify all disputed material facts relevant to Defendants' qualified immunity defense separately during the discussion *infra* of Plaintiff's individual claims. 313 F.3d 144, 146 (3d Cir. 2002).

The Defendants spotted the [*5] Chevy in the parking lot of the Busy Bee convenience store. (Pl. Br. 8.) Defendant Callahan ran a National Crime Information Center ("N.C.I.C") check on the Chevy and learned that it was neither stolen nor involved in any crime. Defendant Troopers Robert Francis and Trooper Kevin Rowe heard the radio call and arrived at the scene shortly thereafter. (Def. Stat. Mat. Facts. P52-3.) The Troopers then entered the Busy Bee to seek the license and registration of the Chevy's driver. (Id. P51, 57.) When asked his name, McCalop falsely identified himself as Gary Ray Devone (Id. P61.)

The investigation continued back near the Chevy where Defendant Callahan requested McCalop produce his vehicle registration. (Id. P66.) McCalop produced an Enterprise rental agreement which showed the vehicle rented to John Knight, and which did not provide for other authorized drivers. (Id. 67.) Defendant Callahan then questioned Plaintiff and Mr. McCalop about the

origin, destination and purpose of their trip. (Id. P70.) McCalop then falsely identified Plaintiff as Aaron Johnson. (Id. P71.)

After the initial questioning of McCalop, Defendant Callahan approached Plaintiff and asked [*6] him his name. (Id. P79.) Plaintiff responded that his name was Robert Jackson and advised the officer that he had identification in the trunk of the car. (Id. P80-1.) Plaintiff produced a State of Connecticut, Department of Corrections, Inmate Identification Card confirming his identity as Robert Jackson. (Pl.'s Stmt. of Mat. Facts P83.)

Defendant Callahan received consent from McCalop to search the vehicle. (Id. P89.) During the search, Defendant Callahan found a wallet containing McCalop's drivers license revealing his true identity as Gregory McCalop and not Gary Ray Devone, and McCalop then admitted the same. (Id. PP90-93.)

Defendant Callahan noticed the zipper on Plaintiff's pants was open and did not believe it had been previously open. (Id. P96-7.) Callahan approached Plaintiff and conducted a pat frisk. (Id. P98.) The motivation for, and the events during the pat frisk are highly disputed between the parties.

After the pat frisk, Plaintiff began to run towards the end of the parking lot. (Id. P104-08.) Defendants Callahan, Mandzuik and Francis immediately gave chase while Callahan commanded Plaintiff to stop. (Id. P105-06.) During the chase, [*7] Defendant Callahan observed Plaintiff drop a small foil package on the ground (Id. P108.) Plaintiff continued running until he reached a guardrail at the edge of the parking lot. (Id. P109.) When Plaintiff jumped over the guardrail Callahan followed him and then tacked Plaintiff by grabbing hold of his right leg. (Id. P110-11.) Plaintiff broke free of Callahan's grasp, ran forward, and fell down an embankment. (Id. P112-13.) Defendants Callahan, Mandzuik and Francis went down the embankment to retrieve the Plaintiff. (Id. P115.) The events that transpired at the bottom of the embankment are heavily in dispute.

After being placed in handcuffs, the Troopers assisted Plaintiff up the embankment, brought him to a Troop car, and read him Miranda warnings. (Id. P119.) Defendant Callahan then retrieved the foil package he earlier saw drop from Plaintiffs person (Id. P121.) The package contained two small bags of a substance later confirmed to be vegetation laced with PCP. (Id. P122.) Thereafter, Plaintiff and McCalop were transported to the Perryville Station.

## II. Procedural History

On or about October 20, 2000, Plaintiff filed his initial [*8] pro se complaint arising out of the January 6,

1999 incident and named as defendants Troopers Mandziuk, Callahan and Francis, and the position of "Commissioner NJSP." On or about May 14, 2004 Plaintiff filed an Amended Complaint removing "Commissioner NJSP" from the case and adding Carl Williams as a defendant in his individual capacity. Trooper Defendants filed the instant Motion for Partial Summary Judgment on or about June 24, 2005. Defendant Williams filed the instant motions to amend his answer and to dismiss on July 8, 2005, and July 22, 2005 respectively.

The Court will turn first to Trooper Defendants Motion for Partial Summary Judgment, then to Defendant William's Motions to Amend his Answer and to Dismiss.

## TROOPER DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [*9] " Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202, (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary judgment:

> the judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find [*10] by a preponderance

> of evidence that the plaintiff is entitled to a verdict . . . .

Anderson, 477 U.S. at 252. A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. See id.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, [*11] each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

### II. Discussion

Qualified Immunity as to Plaintiff's Federal Claims

Plaintiff's Amended Complaint alleges that Trooper Defendants engaged in selective enforcement, unreasonable search and seizure, and the use of excessive force in violation of 42 U.S.C. § 1983. (Compl. PP13-14.) To recover under § 1983, a plaintiff must establish that a state actor engaged in conduct that deprived him of "rights, privileges, or immunities" secured by the Constitution or laws of the United States. Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). In the present Motion for Partial Summary Judgment, the Trooper Defendants argue they are shielded from liability by qualified immunity on all constitutional claims brought against them under § 1983.

The doctrine of qualified immunity shields government officials from civil damages under federal law if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) [*12] To determine whether a defendant is entitled to qualified immunity from a civil rights action, the Supreme Court has directed that trial courts conduct a two-step analysis.

Page 3

See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2155-56, 150 L. Ed. 2d 272 (2001). First, the court must determine whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." Id. at 2156. If the answer to this threshold question is no, meaning that no constitutional violation has occurred, then the matter of qualified immunity is obviated, and the Court need not inquire further. If, however, it is possible on the facts presented by a plaintiff that a defendant may have violated the plaintiff's constitutional rights, then the court must reach the second step of the analysis.

Step two requires a court to ask whether the right at issue was clearly established at the time of the incident, taking into consideration the specific context of the case. Id. The Saucier court stressed that to ascertain whether a right was clearly established, it must be identified with sufficient particularity so as [*13] to allow the conclusion that a reasonable official was on notice that his or her behavior would violate that right. See id. at 2156-57; Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999); Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 121 S.Ct. at 2156. See also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).

Though tailored to the factual scenario presented by the plaintiff, the focus of this step is solely upon determining what the law required. See Bennett, 274 F.3d at 136-37. As the Anderson court explained, the very action in question need not have been held unlawful for the right to be considered clearly established. See Anderson, 483 U.S. at 640. Rather, the "clearly established" inquiry addresses the officer's understanding of the legality or illegality of his behavior at the time of the incident. See Saucier, 121 S.Ct. at 2156-57; [*14] Wilson, 526 U.S. at 615. A court analyzing the applicability of qualified immunity must look to cases of controlling authority. See Wilson, 526 U.S. at 617. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." See Saucier, 121 S.Ct. at 2156-57.

Importantly, qualified immunity is not a mere defense from liability; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Accordingly, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation. See Saucier, 121 S.Ct. at 2156.

The responsibility to decide issues of qualified immunity early in the litigation, however, is often in tension with the need to resolve factual disputes relevant to defendant's conduct. In other words, "the standard for granting or denying a motion for summary judgment does not change in the qualified immunity context." Curley v. Klem, 298 F.3d 271, 282 (3d Cir. 2002). [*15] "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis". Id. at 278. Determining the existence of a clearly established right and the objective reasonableness of the defendant's actions are questions of law for the court to decide, but any disputed issues of historical fact relevant to the courts determination must be submitted to the jury. Id.; Mantz v. Chain, 239 F. Supp. 2d 486, 495 (D.N.J. 2002). "Where factual issues relevant to the determination of qualified immunity are in dispute, the Court cannot resolve the matter as a question of law" on a motion for summary judgment. Hill v. Algor, 85 F. Supp. 2d 391, 401 (D.N.J. 2000).

Therefore, for purposes of this motion, Defendants are entitled to summary judgment only if this Court determines, based on the undisputed facts in the record, that Defendants reasonably believed that their conduct was lawful in light of clearly established law and information known to them at the time of the alleged [*16] constitutional violation. This Court can not, however, grant summary judgment to the Defendants if disputed issues of material fact exist relevant to the Court's determination of Defendants "objective reasonableness."

Section 1983 Claim Against Individual Officers Based on Selective Enforcement

Count One of Plaintiff's Amended Complaint accuses Trooper Defendants of violating his Fourteenth Amendment rights guaranteed by the United States Constitution and the equivalent section of the New Jersey State Constitution by subjecting him to unlawful racial profiling. (Am. Compl. P77(a)-(d).) Defendants argue that they are entitled to qualified immunity on this claim. (Def. Br. 47.)

The Equal Protection Clause of the Fourteenth Amendment proscribes selective enforcement of the law based upon race. Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). In order to establish a selective enforcement claim against an officer, a plaintiff must show that "the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose." Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002).

This Court's first analysis is to consider [*17] whether the facts alleged, viewed in a light most favor-

able to the party asserting the injury, establishes a violation of a constitutional right. Plaintiff's Amended Complaint alleges that on January 6, 1999, while he was a passenger in a car traveling westbound on Route 78, Defendants Callahan and Mandziuk racially profiled him. (Am. Compl. P35-42.) Specifically, Plaintiff alleges that as the police cruiser passed Plaintiff's car, Defendant Mandziuk "craned his neck" to look at who was inside the vehicle driven by Mr. McCallop. (Pl. Stat. of Mat. Facts P5; Am. Compl. P40.) Plaintiff contends that Defendants did not make any efforts to effectuate a stop until they discovered the race of the vehicle's occupants. (Pl.'s Stmt. of Mat. Facts PP23, 30.) Additionally, Plaintiff alleges that Defendants detained and then searched the Plaintiff based on his race and under circumstances in which similarly situated, non-minority persons would not have been searched. (Am. Compl. P77 (b)-(d); Pl. Stat. of Mat. Facts P63).

For purposes of their motion, Defendants argue that assuming *arguendo* Plaintiff can establish discriminatory effect n3, his claim nonetheless fails because he cannot establish [*18] the discriminatory purpose prong. (Def. Br. 50.) The Supreme Court has held that proving discriminatory intent or purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' its adverse effects upon an identifiable group." Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979).

n3 The discriminatory effect prong requires a plaintiff to establish that he or she is a member of a protected class and that similarly situated members of an unprotected class were not prosecuted for the same allegedly unlawful conduct. Carrasca, 313 F.3d at 834. This can be proven by naming specific members of an unprotected class not selected for the same search, or by submitting statistical evidence of bias. Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002). Plaintiff's Amended Complaint contains several allegations of a pattern and practice of racial profiling by members of the New Jersey State Police. (Am. Compl. PP6-34.)

[*19]

The record offers conflicting accounts of when the Troopers recognized Plaintiff's race, whether that was a motivator in the decision to stop, and the events that took place at the Busy Bee. Plaintiff contends that Defendants learned the race of the vehicle occupants before making any effort to effectuate a stop. (Pl. Stat. of Mat. Facts P37.) In fact, Plaintiff alleges that Defendant Mandziuk

had determined that the driver of the Chevy was a black male before deciding to pull the car over. (Id.; Mandziuk Dep. 398:24-400:14, Dec. 23, 2004.) Plaintiff cites to Defendant Mandziuk's deposition testimony which provides:

Q: Is it fair to say that you were able to -- one of the ways in which you were able to recognize that car is that you were able to -- that the same people exiting that car were the same two people that you saw inside the car when you were driving along Route 78?
A: Yes
Q. You recognized the individuals as the same people who were in the car?
A. From my vantage point they appeared to be the same. It was the same car and everything else, so, yes I would say it was them.
Q: What were the features that indicated to you that it was the same individuals?
A: [*20] Well, the color of the car. I knew the driver of the car was a black male. Other than that, I don't know if I remember recalling at least what the driver's shirt was. It's hard -- I don't recall.

Mandziuk Dep. 398:24-400:14. The Defendants, on the other hand, argue that it is "undisputed" that the Troopers did not know the race of Plaintiff or McCallop when deciding to pull over the car. (Def. Stat. of Mat. Facts. P37.) Likewise, Plaintiff contends that Defendants followed him throughout the Busy Bee in a harassing manner customary of a racially motivated drug stop. (Pl. Br. 8.) All of the disputed facts bear on the motivations and justifications of the officials who effected the stop, and are thus material to the alleged violation of Plaintiff's right to equal protection. The issues that remain in dispute are necessary to this Court's determination of whether the Trooper Defendants are entitled to qualified immunity and therefore this Court cannot decide the claim on a motion for summary judgment.

Section 1983 Claim Against Individual Officers Based on Unreasonable Search and Seizure

Count One of Plaintiff's Amended Complaint also alleges the Trooper Defendants violated [*21] his Fourth Amendment rights guaranteed by the United States Constitution and the equivalent section of the New Jersey State Constitution by subjecting him to an unlawful pat down search and an unlawful strip search. (Am. Compl.

P77(e)(f).) Defendants contend they are entitled to qualified immunity. (Def. Br. 28.)

The threshold inquiry for this Court is whether Plaintiff's allegations, if true, establish a constitutional violation. Harlow, 457 U.S. at 818. Plaintiff alleges that after the Troopers had searched the rental car, and after Plaintiff had already been subjected to a search by Officer Mandziuk n4, Officer Callahan conducted an improper pat search of Plaintiff and subjected Plaintiff to an unlawful strip search. (Pl. Stat. of Mat. Facts P97.) Plaintiff further alleges that Officer Callahan grabbed and squeezed Plaintiff's groin area in an attempt to locate drugs and not to look for a weapon as Defendants contend. (Id. P98.) When Defendant Callahan felt a bulge in Plaintiff's pants, he ordered Plaintiff to pull down his pants in the parking lot of the Busy Bee. (Id. P100.) Attempting to comply with Defendants order, Plaintiff exposed his genitals in [*22] an effort to show Officer Callahan that he had nothing hidden in his pants. (Id. 101.) The Defendants again ordered Plaintiff's to pull down his pants. (Jackson Dep. 215:19-21.)

> n4 Plaintiff contends that at the direction of Officer Mandziuk he had already emptied his pockets and submitted to a patdown search before Trooper Callahan searched him. (Dep. of Jackson 194:12-16, 196:5-7.) Defendants have not moved to dismiss this claim and so for purposes of this motion, viewing the facts in a light most favorable to Plaintiff, the Court will accept this fact.

"A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004). During the course of the stop, an officer may subject the occupants to a pat down search only if the officer has a reasonable articulable suspicion that the occupants might be armed and dangerous. Id. at 216. Likewise, an officer must have probable cause to [*23] believe that a person possesses weapons or contraband before he may strip-search that person. DiLoreto v. Borough of Oaklyn, 744 F. Supp. 610, 621 (D.N.J. 1990). Therefore, Plaintiff has satisfied the first step by alleging a deprivation of an actual constitutional right.

The second step of the qualified immunity analysis is to determine whether that right was clearly established at the time of the alleged violation. In Terry v. Ohio, the Supreme Court established a strictly limited exception to the Fourth Amendment's general requirement that both probable cause and a warrant are necessary for a search:

> Where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully [*24] limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him

392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Under Terry, a totality of the circumstances test is applied to determine whether reasonable suspicion existed. Id. at 22-24. The Supreme Court later re-emphasized the need to consider all relevant circumstances when examining reasonable suspicions. United States v. Sokolow, 490 U.S. 1, 9, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Defendants do not brief the clearly established prong of their qualified immunity claim. This Court finds that Terry and its progeny provide sufficient guidance to reasonable officers to make clear that searching Plaintiff would only be permissible under the Fourth Amendment if they had a reasonable suspicion of legal wrongdoing and that Plaintiff was armed and dangerous.

Since the law was clear at the time of the alleged violation, Defendants can be granted qualified immunity only if their conduct in searching Plaintiff, even if a violation of the Fourth Amendment, was a violation a reasonable officer could have committed. See Lee v. Mihalich, 847 F.2d 66, 69 (3d Cir. 1988). [*25] Defendants point to the following circumstances and factors to justify their search of Plaintiff: (1) that Plaintiff appeared nervous and was pacing back and forth during the questioning of McCalop; (2) inconsistencies in the stories given by McCalop and Plaintiff regarding their identities, who rented the vehicle, and the origin, destination, and reason for their trip; and (3) Callahan's observation that Plaintiff's pants zipper was open and had not been open previously.

All of the Defendants purported factors, however, are in dispute. In opposition to the claim that Plaintiff seemed nervous, Plaintiff points to Trooper Callahan's inconsistent deposition testimony describing Plaintiff's demeanor as "calm," and then as nervous and tense. n5 (Callahan Dep. Vol. I at 137:22 to 138:8.) The inconsis-

tencies Defendants describe are also in dispute. First, Plaintiff points out that these inconsistences came from Mr. McCalop and not from Plaintiff. (Pl. Br. 40.) Plaintiff also contends that there were no inconsistencies as to the identity of the car's renter. Rather, Plaintiff claims, McCalop simply could not identify who had rented the car. (Id.) Likewise, Plaintiff claims that both [*26] Plaintiff and McCalop stated that their destination was North Carolina when asked. (Pl. Br. 40 (*citing* Def. Br. 13-14).)

> n5 The deposition testimony was as follows:
>
> Q: What was Mr. Jackson's demeanor up until this point?
> A: He was -- both of them were calm. I think Mr. Jackson was, I don't know if edgy could be the word that I would use, nervous, pacing and just kind of wound up, but still polite in his demeanor. Not wound up, other than nervous, exhibiting nervous demeanor, just packing and he just seemed tense.
>
> (Dep. of Callahan 137:22 to 138:8.)

The factual predicate of Plaintiff's claim is vigorously contested. These genuine issues of material fact which are a necessary to the determination of the Troopers' right to qualified immunity are issues of fact for the jury and therefore, summary judgment is denied.

Section 1983 Claim Against Individual Officers Based on Use of Excessive Force

Count One of Plaintiff's Amended Complaint accuses Trooper Defendants of using excessive force in violation [*27] of Plaintiff's Fourth Amendment rights. (Am. Compl. P77(g).) A claim for excessive force under the Fourth Amendment requires to show that a seizure occurred and that it was unreasonable. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). Defendants claim they are entitled to qualified immunity.

In determining whether the facts alleged establish a claim for excessive force, the Court must determine whether the Troopers "actions [were] objectively reasonable in light of the facts and circumstances confronting [them], regardless of [their] underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Whether the force was reasonable will depend on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether

he [was] actively resisting or attempting to evade arrest by flight." Id. at 396.

In the instant case, Plaintiff alleges that after he fell down the embankment, Defendant Troopers Callahan, Mandziuk, and Francis followed him. At the bottom of the embankment, [*28] Plaintiff alleges the Troopers beat him with a baton or some other blunt object. Plaintiff further alleges that the Troopers sprayed him with oleo capsicum (pepper) spray while he was curled in a fetal position offering no resistance. The facts, viewed in the light most favorable to Plaintiff, are sufficient to support a claim of excessive force.

The historical facts pertaining to Plaintiff's claim are disputed by Defendants. Defendants contend that any injuries Plaintiff received were a result of his fall down the embankment. Defendants further claim that none of the Troopers were carrying any blunt objects with them during the events of this case. (Def. Br. 43-45.) These disputed issues of material fact regarding Trooper Defendants' use of force are questions which a jury must resolve before this Court can properly determine whether the Troopers are entitled to qualified immunity. Accordingly, the Court will deny summary judgment with respect to Plaintiff's excessive force claim.

### DEFENDANT WILLIAM'S MOTION TO AMEND ANSWER

This case was originally filed by Plaintiff, acting without counsel, in October 2000. This Court appointed counsel for Plaintiff and granted Plaintiff until [*29] May 14, 2004 to amend his Complaint and join new parties. Accordingly, on or about May 14, 2004, Plaintiff filed his Amended Complaint naming Carl Williams, former Superintendent of the New Jersey State Police, as a Defendant. On or about November 29, 2004 Defendant Williams filed his Answer asserting ten affirmative defenses. Defendant Williams, however, did not include an affirmative defense asserting the bar of the statute of limitations. On or about July 8, 2005, Defendant Williams filed the instant motion [docket item # 61] to Amend his Answer to assert the additional affirmative defense of the statute of limitations.

### I. Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides, "a party may amend its pleadings only by leave of court or written consent of the adverse party; and leave shall be freely given when justice so requires." FED.R.CIV.P. 15(a). The decision to grant leave to amend rests within the sound discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1970). In the absence of undue delay, bad faith or dilatory motive on the part of [*30] the movant, leave to amend should be

freely given. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). The burden to demonstrate good cause to amend is on the movant. Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Center, Inc., 120 F.R.D. 476, 478 (D.N.J. 1988).

A trial court's discretion to grant leave to amend is tempered by considerations of prejudice to the non-moving party. Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990). "In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Id. Neither incidental delay nor incidental prejudice are a sufficient basis for denial of an amendment; both must be "undue." Id. Incidental delay will be considered undue where the movant cannot satisfactorily explain the delay. Opti-Center, Inc., 120 F.R.D. at 478. Similarly, incidental prejudice "becomes undue when the opponent shows it would be "unfairly disadvantaged or deprived of the opportunity to present [*31] facts or evidence which it would have offered . . . ." Harrison Beverage Co., 133 F.R.D. at 468 (citations omitted).

## II. Discussion

Plaintiff's original Complaint filed in October of 2000 named "Commissioner NJSP" as a defendant. Neither Defendant Williams nor his attorney were ever served or received a copy of the initial pro se Complaint. In Plaintiff's Amended Complaint, Defendant Williams was personally named as a Defendant and served on or about August 8, 2004. Defendant William's attorney knew that the original pro se Complaint named "Commissioner NJSP" as a Defendant but without any specific information, filed Defendant William's answer without an affirmative defense asserting the bar of the statute of limitations. (Certification of George W. Fisher, Esq. PP6-8.) It was not until preparing Defendant William's final pretrial order that counsel realized he had not asserted a statute of limitations defense. (Id. P9.) The lapse in time between Defendant William's Answer and request to amend spanned about eight months.

In opposition to Defendant William's motion to amend his answer, Plaintiff first argues that Defendant Williams waived his [*32] statute of limitations defense by failing to timely assert it. (Pl. Br. 2.) Generally, parties are required to assert any affirmative defenses early in the litigation to avoid surprise or prejudice, and to conserve judicial resources. Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002). Rule 8(c) of the Federal Rules of Civil Procedure provides that: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations . . . and any other matter consti-

tuting an avoidance or affirmative defense." Fed.R.Civ.P.8(c).

Plaintiff cites to numerous cases from other circuits for the proposition that the statute of limitations, as an affirmative defense, is waived if not pled n6. Plaintiff cites to only one Third Circuit case which held that the statute of limitations should be asserted as early in the litigation as possible and that if not promptly plead, the affirmative defense *could* be waived. Robinson, 313 F.3d at 136. It is well established in this Circuit that failure to raise an affirmative defense does not always result in waiver. [*33] Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 209 (3d Cir. 2001); Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991); see also Pro v. Donatucci, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996). Rule 15(a) allows for an amendment of a responsive pleading at any time by leave of court to include an affirmative defense, and "leave shall be freely given when justice so requires." Eddy, 256 F.3d at 209. Leave to amend will generally be allowed unless such amendment would prejudice the opposing party.

> n6 Plaintiff cites to: Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 11 (1st Cir. 2005) (holding that "affirmative defenses must be pled or they will generally be deemed waived and excluded from the case."); Natl Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc., 392 F.3d 520, 526 (2d Cir. 2004) ("Generally, a failure to plead an affirmative defense results in a waiver."); Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004) (holding that responses to pleadings must contain all affirmative defenses and that "failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.").

[*34]

Plaintiff argues that he will be prejudiced by allowing amendment in this case. (Pl. Br. 6.) A motion to amend should be denied where the non-moving party will be "deprived of the opportunity to present facts or evidence" to rebut a defense." Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir. 1981). Prejudice to the non-moving party "is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." Harrison Beverage, 133 F.R.D. at 469.

Since discovery has closed in this case, Plaintiff contends that he will be prejudiced if this Court permits Defendant William's to assert his statute of limitations

defense because his ability to respond to the statute of limitations defense would require further development of the facts. (Pl. Br. 7.) Specifically, Plaintiff claims that discovery is necessary on the issue of whether Defendant Williams had actual or constructive notice of the original pro se Complaint and on the role of the Attorney General's Office and [*35] its relationship to the Defendant at the time the original complaint was filed. (Id. 8.) Plaintiff argues that this discovery is necessary to make a sufficient relation back argument under Rule 15(c)(3) in response to Defendant William's Motion to Dismiss.

Rule 15(c)(3) of the Federal Rules of Civil Procedure permits an Amended Complaint to "relate back" to the filing of an earlier complaint where the following conditions are met:

> the amendment changes the party or the naming of the party against whom a claim is asserted if [subsection (c)(2)] is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party

Fed.R.Civ.P. 15(c)(3). The certification of Defendants counsel in support of Defendant William's motion to amend provides that Defendant Williams had [*36] no notice, prior to his being served in August 2004, that any action had been filed against him. (Cert. P7.) Further, Defendant William's Motion to Dismiss contained an affidavit of Defendant Williams likewise stating that prior to being served with the Amended Complaint, he had no knowledge of Plaintiff's original complaint, nor did he request the Attorney General's Office to provide him with legal representation in the matter or accept service on his behalf. (Williams Aff. PP5-7.) Together, William's affidavit along with the certification of his attorney provide Plaintiff with sufficient information to oppose the statute of limitations defense.

Furthermore, this Court does not find it necessary to grant Plaintiff further discovery on this issue. Any information regarding the way in which the Attorney General's office handled the pro se complaint and what Defendant William's relationship was with the Attorney Generals office at that time would not advance Plaintiffs

argument. Knowledge on the part of the Attorney General's office does not create actual knowledge on the part of Defendant Williams such that he could expect to be sued in his individual capacity. Plaintiff argues [*37] that Defendant Williams may be chargeable with "constructive notice" of the suit relying on Garvin v. City of Philadelphia, 354 F.3d 215 (3d Cir. 2003). Garvin recognized two instances where a court can impute notice under Rule 15(c). The first is the shared attorney method which applies when the originally named party and the party later sought to be added are represented by the same attorney, the "attorney is likely to have communicated to the latter party that he may very well be joined in the action." Id. at 223 (citing Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 196 (3d Cir. 2001). The second is an "identity of interest" theory available when the parties are so closely related in business or other activities that the commencement of an action against one "serves to provide notice of the litigation to the other." Id. Neither of these two theories are applicable here. Defendant Williams, as sued in his individual capacity, is not being represented by State counsel. Moreover, Defendant Williams as an individual cannot be said to have interest in this litigation so closely related to the State as to share an identity [*38] of interest.

This Court finds that amendment of Defendant William's answer to assert the affirmative defense of the statute of limitations would not cause any undue prejudice to the Plaintiff. This Court is satisfied that under such circumstances, Defendant William's failure to plead his statute of limitations defense in his initial Answer did not effectively waive the defense. Accordingly, Defendant William's motion to amend is granted.

### DEFENDANT WILLIAM'S MOTION TO DISMISS ON STATUTE OF LIMITATIONS GROUNDS

Count Three of Plaintiffs Amended Complaint alleges that Defendant Williams violated 42 U.S.C. § 1983 by permitting and/or encouraging a pattern and practice of illegal racial profiling within the Division of State Police n7. (Am. Compl. P4.) On or about July 23, 2005, Defendant Williams moved to dismiss Plaintiff's Amended Complaint on the theory that Plaintiff's claims are barred by the applicable statute of limitations. (Def. Br. 16.)

> n7 Count Four of Plaintiff's Complaint makes an identical claim based upon the New Jersey Constitution. (Am. Compl. P90-3.)

[*39]

## Discussion

Plaintiff's claims against Defendant Williams arise under 42 U.S.C. § 1983. Section 1983 provides for a federal cause of action but does not provide a statute of limitations to govern accrual. Accordingly, the Supreme Court has held that claims under § 1983 are best denominated as personal injury actions and are therefore controlled by a state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). In New Jersey, that statute is N.J.S.A. 2A:14-2 which provides that any action "for an injury to the person caused by wrongful act, neglect or default . . . shall be commenced within 2 years next after the cause of any such action shall have accrued." See Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). Thus, for Plaintiff's claim against Defendant Williams to survive, it must have been commenced within two years after its accrual.

Although state limitations periods are applied in § 1983 cases, accrual of a cause of action under § 1983 is a question of federal law. Albright v. Oliver, 510 U.S. 266, 280 n.6, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); Michaels v. State of New Jersey, 955 F.Supp. 315, 323 (D.N.J. 1996). [*40] Generally, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). In the present case, the incident forming the basis of the litigation occurred on January 6, 1999. Accordingly, Plaintiff's claim against Defendant Williams likewise accrued on January 6, 1999.

Plaintiff's original pro se complaint naming "Commissioner NJSP" as a Defendant was timely filed on October 20, 2000. Defendant Williams in his individual capacity, however, was not added as a party until May 14, 2004 when Plaintiff filed his first Amended Complaint. The Amended Complaint was filed over five years after the date Plaintiff's injury accrued and was, therefore, untimely.

In opposition, Plaintiff argues that his claim against Defendant Williams in his individual capacity is timely because the addition of Defendant Williams in the Amended Complaint relates back under Rule 15(c)(3) to the date of his original complaint. This Court disagrees.

The "linchpin" of Rule 15(c) is notice. Schiavone v. Fortune, 477 U.S. 21, 31, 106 S. Ct. 2379, 91 L. Ed. 2d 18 (1986). [*41] Williams had no actual notice of Plaintiff's original Complaint naming "Commissioner NJSP" as a defendant. (Williams Aff. P5.) Plaintiff argues that further discovery may reveal that Defendant Williams can be charged with constructive notice of the original

complaint based upon the way in which the Attorney General's Office handled the case. (Pl. Br. 8.) Plaintiff's initial pro se complaint asserted claims against the position of "Commissioner NJSP," making it a suit against the superintendent of the NJSP in his/her official capacity. Plaintiff's Amended Complaint removes "Commissioner NJSP" from the case and added claims against Defendant Williams in his individual capacity. The characterization of "official capacity" versus "individual capacity" is not without its practical significance. A suit against a public servant in his official capacity is a suit against the public entity employing the public servant. The real party in interest is the public entity not the public servant. Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). In contrast, a suit against a public servant in his personal capacity looks to impose personal liability on the servant for actions under color of law [*42] and the real party in interest, therefore, is the public servant. Hafer, 502 U.S. at 25. Consequently, Plaintiff's original pro se complaint was against the position of Superintendent ("Commissioner") of the NJSP and, therefore against the State. This type of claim does not provide Defendant Williams with constructive notice of the lawsuit. Thus, Plaintiff's Amended Complaint does not relate back to the date of the original complaint and the § 1983 claim against Defendant Williams is therefore barred by the two year statute of limitations.

## CONCLUSION

For the aforementioned reasons, the Court holds: (1) Trooper Defendants motion for summary judgment is denied; (2) Defendant Williams motion to amend his answer to assert additional affirmative defenses is granted; and (3) Plaintiff's claims against Defendant Williams are barred by the two year statute of limitations. An appropriate order will follow.

12/27/05

Stanley R. Chesler, U.S.D.J.

## ORDER

**THIS MATTER** having come before the Court upon Defendants Jafca D. Mandziuk, Patrick J. Callahan, and Robert Frances ("Trooper Defendants") motion for partial summary judgment (Docket Item # 54) and [*43] Defendant Carl A. Williams ("Defendant Williams") motion to amend his answer to assert additional affirmative defenses [Docket Item # 61] and Defendant Williams motion to dismiss [Docket Item # 63]; and the Court having considered the submissions of the parties, for the reasons expressed in the Opinion filed herewith, and for good cause shown;

IT **IS** this 27th day of December 2005,

2005 U.S. Dist. LEXIS 36399, *

**ORDERED** that Trooper Defendants motion [docket item # 54] is **DENIED;** and it is further

**ORDERED** that Defendant Williams motion to amend [docket item # 61] is **GRANTED;** and it is further

**ORDERED** that Defendant Williams motion to dismiss [docket item # 63] is **GRANTED.**

s/ Stanley R. Chesler

United States District Judge

# EXHIBIT D

LEXSEE

**JOSEPH R. FALLON v. JOHN ASHCROFT, et al.**

**CIVIL ACTION NO. 00 CV 5258**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

**2002 U.S. Dist. LEXIS 12202**

**January 25, 2002, Decided**
**January 25, 2002, Filed; January 28, 2002, Entered**

**SUBSEQUENT HISTORY:** Affirmed by Fallon v.
Meissner, 2003 U.S. App. LEXIS 8277 (3d Cir. Pa., Apr.
30, 2003)

**DISPOSITION:** [*1] Defendant's Motion For Sum-
mary Judgment granted.

**COUNSEL:** For JOSEPH R. FALLON, PLAINTIFF:
JACQUELINE M. VIGILANTE, LAW OFFICES OF
JACQUELINE M. VIGILANTE, MULLICA HILL, NJ
USA.

For JOHN ASHCROFT, ATTORNEY GENERAL,
RESPONDENT: STEPHEN J. BRITT, U.S.
ATTORNEY'S OFFICE, PHILA, PA USA.

For JOHN ASHCROFT, ATTORNEY GENERAL,
RESPONDENT: JAMES G. SHEEHAN, U.S.
ATTORNEY'S OFFICE, PHILA, PA USA.

**JUDGES:** R. Barclay Surrick, Judge.

**OPINIONBY:** R Barclay Surrick

**OPINION:**

**MEMORANDUM AND ORDER**

SURRICK, J.

**JANUARY 25, 2002**

Presently before the Court is the Government's Mo-
tion for Summary Judgment Pursuant to Fed. R. Civ. P.
56. (Doc. No. 14) and Plaintiff's response thereto. For the
reasons that follow, the Government's motion will be
granted.

**Factual Background**

Plaintiff Joseph R. Fallon ("Plaintiff") is a fifty-four
year old attorney who is employed by the Department of
Justice as an Assistant District Counsel in the New York
Office of District Counsel of the Immigration and Natu-
ralization Service ("INS"). Plaintiff has been so em-
ployed since July 24, 1995. Although Plaintiff works in
New York City, he has chosen to reside in Philadelphia
and has commuted to New York [*2] City each business
day since 1995. Because Plaintiff travels the distance
between his residence and workplace by bus, he is per-
petually held hostage to the bus schedule. In addition,
Plaintiff suffers from a recurring back problem which
limits his movement and has created difficulty in certain
aspects of his job. For instance, Plaintiff requires full
back and lumbar supports in his office chairs and he ex-
periences discomfort in bending down, which makes it
difficult for him to reach items that are located close to
the ground.

Since 1996, Plaintiff has sought transfer out of the
New York Office of District Counsel by applying for
vacant positions in other INS offices, including Boston,
Philadelphia, and the Eastern Regional Office in South
Burlington, Vermont. Plaintiff was not selected for any
of the vacancies for which he applied. In most instances
he was not advised of his non-selection. Plaintiff alleges
that his non-selection was either the result of his age or
physical condition and that in each case, a younger
worker was transferred or hired to fill the vacancy.

Plaintiff contends that the failure of the INS to trans-
fer him has resulted in the deprivation of income and
opportunities [*3] for promotion. He states that the fail-
ure of the INS to transfer him to the Philadelphia District
Office deprived him of certain benefits such as decreased
commuting costs of more than $ 3,000 per year, the abil-
ity to work longer hours and take advantage of an alter-
native work schedule, and additional promotional oppor-

tunities. (Pl.'s Response, at X-12.) Similarly, Plaintiff contends that the failure of the INS to transfer him to the Eastern Regional Office in South Burlington, Vermont deprived him of the ability to work longer hours and save money that he now spends on commuting to New York. He also contends that a transfer to the Eastern Regional Office would have provided him with greater exposure and broader experience and that this, in turn, would have led to additional promotion opportunities. (Pl.'s Response, at X-13.)

On November 3, 1999, Plaintiff initiated contact with an Equal Employment Opportunity Commission (EEOC) Counselor to discuss his non-selections for transfer and his allegation that Defendants have a practice of denying older workers' transfer requests. Plaintiff subsequently filed a formal Complaint of Discrimination with the INS EEO office with respect to these [*4] allegations on January 10, 2000. n1 It appears that no final decision has yet been made with respect to this Complaint. n2 On December 3, 1999, Plaintiff initiated contact with an EEOC Counselor specifically concerning the failure to transfer to Philadelphia. A formal Complaint of Discrimination was filed on March, 14, 2000. No final decision has been made as to this Complaint. Plaintiff also initiated contact with an EEOC Counselor on December 8, 1999 for the purpose of discussing the denial of his transfer request to the Eastern Regional Office in Vermont. A formal Complaint of Discrimination was thereafter filed and was ultimately dismissed as untimely on July 19, 2000. (See Pl.'s Complaint, Exhibits A, B & C).

n1 The formal Complaint originally contained an allegation of class discrimination. However, Plaintiff withdrew this allegation and elected to pursue the denial of transfer on an individual basis only. The Complaint included specific instances of Plaintiff's non-selection for transfer, including his non-selection of transfer to Philadelphia and Boston. (See Pl.'s Response, X-66, and Pl.'s Complaint Exhibit A).

[*5]

n2 The instant action was filed pursuant to 29 C.F.R. § 1614.407(b), which provides that a complainant who has filed an individual complaint may file a civil action in a United States District Court "after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and a final decision has not been issued." EEOC Federal Sector Equal Employment Opportunity, 29 C.F.R. § 1614.407(b) (2001)

Plaintiff has brought this action against Attorney General John Ashcroft, n3 the Immigration and Naturalization Service, and INS Commissioner Doris Meissner (collectively, "Defendants") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act") Plaintiff's Complaint alleges that Defendants engaged in employment discrimination on the basis [*6] of both his age and physical disability.

n3 Plaintiff's original lawsuit named Attorney General Janet Reno as a defendant in this case. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Attorney General John Ashcroft was substituted for former Attorney General Janet Reno.

Count 1 of Plaintiff's Complaint contains non-specific allegations that Plaintiff has not been selected for transfer to any of the vacancies for which he has applied, and that the denial of his transfer requests was due to age discrimination. Although Count I does not refer to any specific instances of age discrimination, Plaintiff's response to Defendants' interrogatories lists twenty-four different instances where he was denied transfer out of the New York office dating back to 1996. n4 Count 1 is essentially an aggregation of claims for Defendants' refusal to transfer Plaintiff. Plaintiff further alleges in Count I that nearly all requests to transfer from the New York office of the INS made by workers over the age of forty [*7] have been denied while no one under the age of forty who requested a transfer out of the New York office has been denied. n5

n4 In their motion for summary judgment Defendants assume that Count I is a "general litany of allegations of nonselection" (Def.'s' Mot for Summary Judgment) that implicitly incorporates claims for every instance of nonselection for transfer since Plaintiff was hired. Plaintiff confirmed Defendants' assessment of Count I in his response to Defendant's motion for summary judgment." (Pl.'s Response at 12, X-9, X-10).

n5 Plaintiff repeatedly refers to Defendants' conduct with regard to transfers as a "pattern and practice" of discrimination. Plaintiff's usage of the term "pattern and practice" is not entirely

*clear. The term "pattern and practice" is used in several different ways in the employment discrimination context. First, the term "pattern and practice" may be used to describe a type of claim that may be brought by either the federal government or by a party asserting a class-action against an employer. See Vaszlavik v. Storage Tech Corp.*, 175 F.R.D. 672, 679 (D. Col. 1997). Under this usage, the federal government or party bringing a class-action may bring suit against an employer claiming that the employer has a pattern and practice of employment discrimination. Second, the term "pattern and practice" may be used to identify the type of evidence that may be presented to demonstrate discrimination. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1217 (3d Cir. 1995). Under this usage, an individual may use evidence of a pattern or practice to help prove individual claims of discrimination. Lastly, the term "pattern and practice" may be used when a party seeks to invoke the continuing violations doctrine to defeat an affirmative defense of untimeliness. *Dunn v. Hercules, Inc.*, 1994 U.S. Dist. LEXIS 6445, at *3 n.3 (E.D. Pa. May 12, 1994). Under this usage, a party may be able to avoid the effect of the statute of limitations by showing that the otherwise time-barred claims are part of a pattern and practice of employment discrimination that he has only recently become aware of.

Plaintiff's Complaint does not provide useful clues as to the manner in which he uses the term "pattern and practice." Indeed, we note that Plaintiff does not use the term "pattern and practice" in his Complaint, but instead refers to "practices and policies," a term that we interpret to be substantially synonymous with "pattern and practice." At any rate, the parties have apparently agreed in their submissions that the term "pattern and practice" and, by implication, the term "practices and policies," are used as a means of invoking the continuing violations doctrine so as to defeat Defendants' affirmative defense of untimeliness.

[*8]

Count II of Plaintiff's Complaint is a specific allegation of age discrimination for failure to transfer Plaintiff from the New York office to the Philadelphia office. Count III is a specific allegation of age discrimination for failure to transfer Plaintiff from the New York office to the Eastern Regional Office in South Burlington, Vermont. Count IV is a general allegation of discrimination for denying Plaintiff transfer opportunities, promotional

opportunities, assignments, and details based upon a disability.

Defendant's motion for summary judgment requests dismissal of Plaintiff's Complaint for two reasons. First, Defendants argue that all but two of Plaintiff's claims related to non-selection for transfer are barred by the statute of limitations. Second, Defendants contend that Plaintiff's claims fail because Plaintiff has not established a prima facie case of discrimination.

**Legal Standard**

In deciding a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, we must grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue [*9] as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). We must take all evidence of the nonmovant as true, and draw all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Where the record, taken in its entirety, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

**Discussion**

**I. Timeliness of Plaintiff's Claims in Counts I through III**

In Counts I through III, Plaintiff has asserted claims arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq., for Defendants' refusal to transfer* [*10] *him on the basis of his age. As above indicated, Count I is a rather amorphous allegation that Defendants routinely discriminated against persons based on age, and that as a result Plaintiff was denied transfer out of the New York office. Although not specifically pleaded in Count I, counsel agree that based upon Plaintiff's interrogatory answers, this Count includes all failures to transfer Plaintiff out of the New York office dating back to 1996. Although Counts II and III allege specific instances of age discrimination, they are redundant, as these claims of age discrimination are pled, if but vaguely, in Count I. Counts II and III are merely a restatement of claims already included in Count I through the answers to interrogatories. The timeliness of*

*claims included in Count I will ultimately be dispositive of the timeliness of the same claims in Counts II and III.*

*A federal employee complaining of age discrimination has two routes by which he may seek relief. Stevens v. Dep't of Treasury*, 500 U.S. 1, 6, 114 L. Ed. 2d 1, 111 S. Ct. 1562 (1991). An aggrieved individual may either invoke the EEOC's administrative process and then file an action in federal court if [*11] he is not satisfied with the administrative remedies or he may simply decide to litigate the merits of his claim in federal court in the first instance. 29 U.S.C. §§ 633a(b) & (c) (1994 & Supp. V 1999); *Stevens*, 500 U.S. at 5-6. Regardless of whether the aggrieved individual chooses to pursue an administrative remedy or to litigate his claim in federal court, he must first consult with a Counselor prior to filing the complaint in an attempt to informally resolve the matter. This initial informal complaint to a counselor must occur within forty-five days of the date of the alleged discrimination. 29 C.F.R. § 1614.105 (2001); n6 *Bohac v. West*, 85 F.3d 306 (7th Cir. 1996) (administrative time limits under ADEA are statutes of limitation); *Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997) (plaintiff must exhaust required administrative remedies before seeking judicial relief); *Arizmendi v. Lawson*, 914 F. Supp 1157 (E.D. Pa 1996). n7 After consulting with a Counselor, the aggrieved individual may file an administrative complaint. If there has been no decision after [*12] 180 days from the date the individual filed the administrative complaint, the individual may bring an action in federal district court. 29 C.F.R. § 1614.407. Alternatively, if after consulting with a Counselor the individual decides not to pursue a remedy for alleged age discrimination through the administrative process, he may file a lawsuit under the ADEA. However, he may not commence the civil action until he has given the EEOC not less than thirty days notice of his intent to sue. 29 C.F.R. §§ 1614.105(b)(1) & 1614.201(a). This notice must be filed within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 633a(d).

n6 Section 1614.105 entitled Pre-Complaint Processing provides:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of action.

[*13]

n7 The forty-five day period of limitations contained in 29 C.F.R. § 1614.105 also applies to claims under the ADA and Rehabilitation Act. *See Trumbull v. Shalala*, No. AW-99-34-1, 2000 U.S. Dist. LEXIS 20584 at *11 (D. Md. June 21, 2000); *Peterson v. Henderson*, No. 97-75481, 1998 U.S. Dist. LEXIS 18964, at *13-14 (E.D. Mich Nov. 13, 1998); *Miller v. Cohen*, 52 F. Supp. 2d 389 (M.D. PA. 1998).

Defendants contend that with two exceptions, all of the non-selections in Count I, as well as the non-selection alleged in Count III, preceded Plaintiff's informal complaint by more than forty-five days and are therefore barred by the limitations period contained in 29 C.F.R. § 1614.105(a)(1). Defendants concede that the claims in Counts I and II based upon the requested transfers to Boston in 2000 and Philadelphia in 1999 are timely. Defendants first raised the timeliness issue in their motion for summary judgment and did not plead the period of limitations as an affirmative defense in their Answer [*14] to Plaintiff's Complaint.

Plaintiff argues that although he did not comply with the forty-five day limitation period, his claims are not time-barred for the following reasons. First, Plaintiff argues that Defendants have waived their right to raise the period of limitations at this stage of the litigation by not including it as an affirmative defense in their Answer. Second, Plaintiff argues that the INS accepted his Complaint of Discrimination, which included the allegations made in Count I, and thereby made a decision not to dismiss the allegations for failure to comply with the period of limitations. Plaintiff contends that this constitutes a waiver of any potential statute of limitations defense. Third, Plaintiff argues that the doctrine of continuing violation should be applied in this case to render Plaintiff's otherwise untimely allegations timely. Finally, as to Plaintiff's non-selection for transfer to the Eastern Regional Office in Vermont, Plaintiff argues that the doctrine of equitable tolling or equitable estoppel renders this claim timely.

## A. Waiver of the Statute of Limitations Defense by Failure to Plead

Federal Rule of Civil Procedure 8 requires that a [*15] defendant answering a complaint set forth any affirmative defenses such as the statute of limitations. Fed. R. Civ. P. 8(c). The Third Circuit "has taken the position that whether an affirmative defense that must be pleaded in the answer is waived will depend on whether the defense was raised 'at a pragmatically sufficient time' and the plaintiff was prejudiced in the ability to respond." *Pro v. Donatucci*, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991)); *see also Turiano v. Schnarrs*, 904 F. Supp. 400, 405-406 (M.D. Pa. 1995) (permitting an affirmative defense of qualified immunity to be raised for the first time in defendant's motion for summary judgment because it was done in a pragmatically sufficient time); *Petock v. Thomas Jefferson Univ*, No. 84-5937, 1986 U.S. Dist. LEXIS 30246, at *3 (E.D. Pa. Jan. 21, 1986) ("A defendant may raise an affirmative defense for the first time by way of summary judgment and a court so grant only if there are no genuine issues of material fact, if the plaintiff is not prejudiced by the raising of the defense on summary judgment, [*16] and if the defendant is entitled because of the newly raised defense to summary judgment as a matter of law.")

It is apparent that Defendants failed to plead the statute of limitations as an affirmative defense. However, it is equally apparent that Plaintiff has not been prejudiced by Defendants first raising the untimeliness of Plaintiff's claims in their motion for summary judgment. *Compare Regal Indus., Inc. v. Genal Strap, Inc.*, No. 93-0209, 1994 U.S. Dist. LEXIS 10193 (E.D. Pa. July 26, 1994) (finding waiver of affirmative defense of statute of limitations where it was first asserted after trial on a motion to alter or amend the judgment) *with Harris v. Mercy Health Corp.*, No. 97-7802, 2000 U.S. Dist. LEXIS 11228, at *18-19 (E.D. Pa. Aug. 10, 2000) (noting that where plaintiff previously argued against the limitations defense in his brief in response to defendant's motion to dismiss, there was presumably no surprise or prejudice). Defendants have set forth the period of limitations defense in their motion for summary judgment and Plaintiff has had ample opportunity to respond to Defendants' arguments. The lack of prejudice is demonstrated by [*17] the fact that Plaintiff has taken full advantage of the opportunity to present his position on the matter in his response to Defendants' motion. The affirmative defense was therefore raised in a pragmatically sufficient time for Plaintiff to fully and thoughtfully respond. *See Harris*, 2000 U.S. Dist. LEXIS 11228, at *18-19. Under the circumstances, we will deem Defendants' Answer amended to include the affirmative defense of the statute of limitations. *See Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 55 F. Supp. 2d 309, 315 (D. Del. 1999); *Pantzer v. Shields Dev. Co.*, 660 F. Supp. 56, 61 (D. Del. 1986).

## B. Waiver of Timeliness Requirement at the Administrative Level

When the INS accepted Plaintiff's formal Complaint of Discrimination on January 10, 2000, it failed to dismiss the complaint as untimely in accordance with 29 C.F.R. § 1614.107(a)(2). n8 Plaintiff contends that this constituted a decision not to dismiss the allegation for failure to comply with applicable time limits, thereby waiving the statute of limitations as a defense to Plaintiff's claims. This argument is without merit. [*18]

> n8 29 C.F.R. § 1614.107(a)(1) provides that an agency shall dismiss a complaint that "fails to comply with the applicable time limits contained in § § 1614.105, 1614.106 and 1614.204(c), unless the agency extends the time limits in accordance with § 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor."

By accepting the complaint, the INS did not waive the timeliness requirement. "An agency does not waive a timeliness defense merely by accepting or investigating a discrimination complaint." *Smith v. Danzig*, No. 00-216-P-H, 2001 U.S. Dist. LEXIS 10262, at *32 (D. Me. July 20, 2001); *see also Ester v. Principi*, 250 F.3d 1068, 1072 n.1 (7th Cir. 2001) ("We do not . . . reject the well-settled rule that agencies do not waive a timeliness defense merely by accepting and investigating a discrimination complaint."). Plaintiff [*19] first contacted a Counselor on November 3, 1999. Plaintiff then proceeded to file the Complaint of Discrimination on January 10, 2000. Plaintiff offers nothing more than the fact that he was permitted to file a formal complaint, that he did file a formal complaint, and that this formal complaint was assigned a particular number. There is no suggestion that the INS ever addressed the merits of the complaint or made an explicit finding with regards to its timeliness. The lack of an explicit finding of timeliness or a decision on the merits compels the conclusion that the timeliness defense was not waived by Defendants. *See Ester*, 250 F.3d at 1071-72.

## C. Doctrine of Continuing Violation

"Under the continuing violation doctrine, if a plaintiff has expressed a "continuous practice and policy of discrimination, ... the commencement of the statute of

limitations period may be delayed until the last discriminatory act in furtherance of it," *Fitzgerald v. Henderson* 251 F.3d 345 (2d Cir. 2001). The application of the continuing violation doctrine permits Plaintiff to pursue otherwise time-barred claims if he can demonstrate that the alleged wrongful [*20] conduct is part of an ongoing pattern and practice of discrimination by Defendants. *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480-81 (3d Cir. 1997) In determining whether Plaintiff has demonstrated a continuing violation, we apply the three factor analysis set forth in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971 (5th Cir. 1983), as approved by the Third Circuit. *See Rush*, 113 F.3d 476 at 481.

> This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, [*21] or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate? As noted, the particular context of individual employment situations requires a fact-specific inquiry by a trial judge which cannot be easily reduced to a formula.

*Berry*, 715 F.2d at 981-82 (footnote omitted).

Plaintiff contends that all of the alleged violations at issue involve the same type of discrimination which was of a recurring nature and which lacked the degree of permanence that would have triggered Plaintiff's awareness of his rights. Plaintiff argues that a sufficient degree of permanence is not present because he was not informed that he had not been selected for many of the positions for which he applied, that someone else had

been selected, or of the reasons for his non-selection. In other words, Plaintiff argues that because he was not aware that employment decisions had been made by the INS or the basis for those decisions, he could not have been expected to initiate contact with a counselor in a timely fashion.

We are satisfied that the continuing violation [*22] doctrine has no application in this case. The facts of this case are such that a reasonable person should have been aware of his duty to assert his rights. Although the acts alleged by Plaintiff do concern the same type of discrimination occurring over a period of time, this does not automatically transform the alleged acts into a continuing violation. *See Berry*, 715 F.2d at 981-82. Each denial of a transfer application was a discrete event. Even if Plaintiff was not notified that he was not selected for transfer, the lengthy passage of time was sufficient to put Plaintiff on notice that his various applications had not been approved. It is important to note that Plaintiff was denied transfer out of the New York office on no fewer than nineteen occasions before 1999. Seventeen of these denials occurred before 1998. Surely Plaintiff was aware, or at the very least should have been aware, that he had not been selected for the positions after the lapse of months and years. Even though Plaintiff may not have been informed of his non-selection, the non-selection would certainly have achieved a sufficient degree of permanence over time and should have triggered Plaintiff's [*23] awareness of and duty to assert his rights. *See Rush*, 113 F.3d 476 at 481; *Berry*, 715 F.2d at 981-82. Moreover, given the extensive list of denied transfer requests, Plaintiff should have been aware that he could expect future transfer requests to be denied as well. Indeed, either the sheer volume of denials or the lengthy passage of time should have been sufficient to have put Plaintiff, an attorney, on notice of the duty to assert his rights. n9 Plaintiff did not initiate the complaint process when he should have been aware of his duty to do so. Under the circumstances, the continuing violation doctrine cannot be applied to resurrect Plaintiff's untimely claims in this case. *See Rush*, 113 F.3d 476 at 481.

> n9 Plaintiff is an attorney with eighteen years experience who is licensed to practice law in five states. He has a Juris Doctorate Degree, Master of Arts Degree in Industrial Relations and a Master of Law Degree in Labor Law from Georgetown University. He has been a supervisor in the litigation department of a major insurance company, has represented both labor and management in arbitration, mediation and collective bargaining and has taught courses in labor management relations, human resources management and collective bargaining.

[*24]

As reflected in the answers to interrogatories, of the twenty-four positions that Plaintiff has applied for since 1996, Plaintiff has sought informal counseling or otherwise made an administrative complaint on three occasions. These occasions are: (1) November 3, 1999, after Plaintiff's application to transfer to Philadelphia was denied on October 6, 1999; (2) December 9, 1999, approximately one year after his application to transfer to Vermont had been denied in December of 1998; and (3) November 13, 2000, after his application to transfer to Boston was denied on or about October 5, 2000. On only two of these occasions -- the November 3, 1999 denial of his application to transfer to Philadelphia and the November 13, 2000 denial of his application to transfer to Boston -- did Plaintiff seek informal counseling within the forty-five day period provided by 29 C.F.R. § 1614.105 Clearly, the only timely claims relate to these two denials.

**D. Doctrine of Equitable Tolling**

Plaintiff argues that the doctrine of equitable tolling or equitable estoppel n10 compels a finding that the complaint process was timely initiated with respect to the Assistant [*25] Regional Counsel position at the Eastern Regional Office in Vermont. "Equitable tolling stops the running of the statute of limitations in light of established equitable considerations." *New Castle County v. Halliburton Nus Corp*, 111 F.3d 1116, 1125 (3d Cir. 1997). Equitable tolling may be appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). For equitable tolling to apply, Plaintiff need only show that he could not have discovered essential information bearing on his claim through the exercise of reasonable diligence. 38 F.3d 1390.

n10 The Third Circuit treats equitable tolling and equitable estoppel as two sides of the same coin. *See Courtney v La Salle Univ*, 124 F.3d 499, 505 (3d Cir. 1997).

[*26]

We are satisfied that the facts proffered by Plaintiff, like the facts in *Oshiver*, do not support the application of equitable tolling. In *Oshiver* the plaintiff brought suit against the defendant law firm claiming, among other things, discriminatory failure to hire. The plaintiff alleged that in May, 1989, she applied for a position as an associate attorney with defendant. The plaintiff was instead hired as an hourly attorney, having been informed by the defendant that there were no salaried positions available at that time. The defendant did advise her, however, that she would be considered for an associate position if one became available. A little over one year later, in April, 1990, the plaintiff was dismissed with the explanation that the firm did not have sufficient work to sustain her position as an hourly employee, but that if additional hourly work or an associate position became available, the defendant would contact her. In May, 1991, plaintiff learned at an unemployment compensation benefits hearing that shortly after her dismissal defendant hired a male attorney to take over her duties as an hourly employee. Nearly six months after learning of this information, [*27] the plaintiff filed an administrative complaint alleging that her dismissal was the product of gender discrimination. Subsequently, in January, 1992, the plaintiff learned that defendant hired a male attorney as an associate in May, 1991, without notifying her that an associate position had become available. The plaintiff then amended her administrative complaint to include a claim of discriminatory failure to hire. In considering whether the plaintiff's claims were time-barred, the Third Circuit concluded that the equitable tolling doctrine was inapplicable to the plaintiff's failure to hire claim. The decision was based squarely upon the fact that nowhere in the plaintiff's complaint did she allege that the defendant misled her, actively or otherwise, with respect to its failure to hire. The court stated that "at most, Oshiver alleges that the firm concealed from her the fact that an associate opening arose. To be activated, equitable tolling requires active misleading on the part of the defendant. The type of concealment Oshiver alleges is ... qualitatively different from taking affirmative steps to mislead." *Oshiver*, 38 F.3d at 1391 n.10.

In the instant case, [*28] we have no concealment or misleading. Plaintiff applied for a transfer to the position of Assistant Regional Counsel in the Eastern Regional Office in South Burlington on or about November 9, 1998. In late December, 1998, Plaintiff was notified that the position had been filled by another INS attorney. On or about January 4, 1999, Plaintiff made inquiries regarding the selected candidate in order to determine whether any discriminatory action had occurred. Plaintiff was advised that the selected candidate was "senior" and "experienced." Although Plaintiff was apparently unsatisfied with the response he did not request additional information through the Freedom of Information Office until October of 1999. On November 3, 1999, Plaintiff received information pursuant to this request revealing that the "senior" and "experienced" person originally selected for the vacancy, Mr. McGrath, had declined the position and that it had then been offered to another can-

didate, Mr. Muther, who is younger than Plaintiff. n11 After receiving this new information, Plaintiff initiated a claim in November, 1999.

n11 This alternate candidate entered duty on March 15, 1999.

[*29]

Plaintiff contends that he had no reason to know of his ADEA claim at the time he was notified of his non-selection in December, 1998. Plaintiff also argues that as of December, 1998, Plaintiff did not have any experience with the filing requirements to perfect a complaint of age discrimination and that this should be a factor in considering whether equitable tolling applies to Count III. n12

n12 As mentioned above, Plaintiff is an experienced attorney not an unsophisticated litigant. Nonetheless he contends that because he had no experience or actual or constructive knowledge of the filing requirements, the Court should consider this as a factor in whether equitable tolling applies in this case. We do not believe that we should disregard the period of limitation provided for by federal regulations simply because plaintiffs contend that they have no actual or constructive knowledge of the filing requirements.

We are compelled to conclude that Plaintiff has not shown the requisite "active misleading" on the part [*30] of Defendants necessary to invoke the equitable tolling doctrine. See Oshiver, 38 F.3d at 1391 n.10. There is no indication that Plaintiff was being misled when he inquired into the identity of the successful candidate on January 4, 1999. Although Plaintiff was not satisfied with the amount of information that he received from his inquiries, and subsequent information revealed that the position was ultimately awarded to another candidate, there is no indication that McGrath had already declined the position on January 4, 1999. In fact, on January 7, 1999, Muther sent a "cc: mail" to Rachel McCarthy expressing his disappointment that he had not been chosen for the position. Plaintiff has offered no evidence to indicate that McGrath had declined the position as of January 4, 1999 and that Plaintiff had been actively misled. Accordingly, the doctrine of equitable tolling does not apply in this case.

## II. Plaintiff's Prima Facie Case under the ADEA and Rehabilitation Act

The only claims in Plaintiff's Complaint that are not time-barred under the foregoing analysis are the claims related to the denial of transfer to Philadelphia and the claims related to the [*31] denial of transfer to Boston. Defendants argue that Plaintiff has failed to establish a prima facie case of employment discrimination under both the ADEA and the Rehabilitation Act and that they are therefore entitled to summary judgment on these claims. For the reasons hereinafter discussed, we are compelled to conclude that Plaintiff has failed to establish a prima facie case of either age or disability discrimination because he cannot demonstrate that he suffered an adverse employment action, an essential element of both claims.

## A. Prima Facie Case: ADEA

When evaluating a claim under the ADEA, the Third Circuit has applied a "slightly modified version" of the three-step test set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed 2d 668, 93 S. Ct. 1817 (1973). n13 Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). "First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case." Id. To establish a prima facie case of employment discrimination under the ADEA, Plaintiff must show [*32] that (1) he is a member of a protected class (i.e., that he is over age forty), (2) that he was qualified for the position at issue, (3) that he suffered an adverse employment action, and (4) that he was ultimately replaced, or the position was filled by a younger person. See Connors v. Chrysler Fin. Corp., 160 F.3d 971, 973 (3d Cir. 1998). "If the plaintiff offers sufficient proof of these elements, step two is reached. The burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the [act]." Keller, 130 F.3d at 1108.

n13 We note that although Plaintiff has pled in Count I of his Complaint that Defendants had a policy and practice of discriminating against older employees, this does not entitle Plaintiff to show employment discrimination through the method of proof recognized in Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977). Cooper v. Diversicare Mgmt. Servs. Co., 115 F. Supp. 2d 1311, 1322 n.13 (M.D. Ala. 1999) (citing Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760-61 (4th Cir. 1998))

[*33]

## B. Prima Facie Case: Rehabilitation Act

In Count IV, Plaintiff claims that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 701 et seq., by discriminating against Plaintiff on the basis of his perceived disability n14 Plaintiff contends that this alleged discrimination was manifested in the terms and conditions of his employment, including transfer opportunities, promotional opportunities, assignments, duties, and details Defendants argue that Plaintiff has failed to establish both the requisite knowledge of his disability on the part of the managers of the offices to which he applied for transfer and that Plaintiff has experienced an adverse employment action by not being selected for transfer

> n14 The ADA prohibits covered entities from discriminating against qualified individuals with a disability because of the disability in regard to the terms, conditions, and privileges of employment, including job application procedures, the hiring, advancement, or discharge of employees, employee compensation, and job training See 42 U.S.C. § 12112 (1994). Under the provisions of the ADA, the United States is not a covered entity. See 42 U.S.C. § § 12111(2) & 12111(5)(B)(i) (1994). Therefore, the ADA does not provide Plaintiff with a cause of action and Plaintiff's claim for discriminatory conduct based on his perceived disability is appropriately brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. Nevertheless, the ADA is an important source of applicable law insofar as the Rehabilitation Act mandates that "the standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C 12111, et seq.) and the provisions of sections 501 though 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C 12201-12204 and 12210), as such sections relate to employment " See 29 U.S.C. § 791(g) (1994 & Supp V 1999) Thus, while Plaintiff's claim in Count IV is not actionable under the ADA, the ADA provides the applicable law for a claim arising under the Rehabilitation Act.

[*34]

In the absence of direct evidence of discrimination, the burden-shifting analysis in McDonnell Douglas Corp v Green, 411 U.S. 792, 36 L. Ed 2d 668, 93 S. Ct.

1817 (1973) is applicable to Plaintiff's claims under the Rehabilitation Act and ADA. See Newman v GHS Osteopathic, 60 F 3d 153, 157-58 (3d Cir 1995) Under the McDonnell Douglas framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination under the ADA. Olson v GE Aerospace, 101 F.3d 947, 951 (3d Cir. 1996). To establish a prima facie case of discrimination based upon disability under the ADA, Plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability See Skerski v. Time Warner Cable Co., 257 F 3d 273, 278 (3d Cir 2001) (stating the elements for a prima facie case under the ADA). The term "disability" means (1) having a physical or mental impairment that substantially limits one or more of the major life activities [*35] of such individual, (2) a record of such impairment, or (3) being regarded as having an impairment. 42 U.S.C. § 12102(2) (1994). Here, Plaintiff alleges that he was regarded as disabled by Defendants. n15 If Plaintiff succeeds in establishing a prima facie case under the ADA, the burden of production then shifts to Defendants to articulate some legitimate, nondiscriminatory reason for their action. Olson, 101 F 3d at 951.

> n15 Although it has not been argued in Defendant's motion for summary judgment and we do not presently decide the issue, we note that it appears unlikely that Plaintiff would be able to establish that he has a "disability" as defined under the ADA. The United States Supreme Court has very recently held that in determining whether a person has a physical impairment that substantially limits one or more of the major life activities of an individual, the court must look to whether the individual is prevented or restricted from performing "tasks that are of central importance to most people's daily lives." Toyota Motor Mfg., Inc v Williams, 534 U.S. , 534 U.S. 184, 151 L. Ed. 2d 615, 122 S. Ct. 681, No. 00-1089, slip op. at 1-2 (Jan. 8, 2002). In the instant case, Plaintiff contends that he is disabled within the meaning of the ADA because his employer is aware of his limitations associated with his bad back and therefore regards him as being disabled. But to be regarded by one's employer as disabled under the terms of the ADA, the employer must regard the person as "having a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). Williams teaches that "terms [such as "substantially limits"] and "major life ac-

tivities"] need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Williams*, slip op. at 12. Moreover, it appears that this is an objective standard. The inquiry is whether the impairment places "severe restrictions in the activities that are of central importance to *most people's* daily lives." *Id.* at 17 (emphasis added). In the instant case, Plaintiff has merely alleged that he uses lumbar supports in his chairs and that a recurring back problem causes him discomfort when bending over. We doubt whether such impairments are of the type that could objectively be seen as substantially limiting Plaintiff's major life activities.

[*36]

## C. Adverse Employment Action

It is essential to Plaintiff's claims under both the ADEA and the Rehabilitation Act that Plaintiff have suffered an adverse employment action. An adverse employment action is an action by an employer that is serious and tangible enough to alter Plaintiff's compensation, terms, conditions, or privileges of employment, or to deprive him of employment opportunities, or adversely affect his status as an employee. 29 U.S.C. § 623(a) (1994 & Supp. V 1999); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (construing a parallel requirement of adverse employment action in the context of a Title VII case). Although the definition of "adverse employment action" includes job opportunities that are not mere entitlements, there must be some material detriment to the plaintiff. "Mere idiosyncracies of personal preference are not sufficient to state an injury." *Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446, 457 (D.C. Cir 1999) (holding that "a plaintiff who is made to undertake or who is denied a lateral transfer -- that is, one in which she suffers no diminution in pay or benefits [*37] -- does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm").

We recognize that an adverse employment action is not limited to loss or reduction of pay or monetary benefits but may include other forms of adversity as well. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination

suit.'" *Id.* Whether Plaintiff has experienced an adverse employment action is an issue of fact and often cannot be resolved on a motion for summary judgment, except where the issue is not fairly contestable. *See Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 273-74 (7th Cir. 1996); *Danas v. Chapman Ford Sales, Inc.*, 120 F. Supp. 2d 478, 485 [*38] (E.D. Pa. Oct. 27, 2000) (citing *Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 273-74 (7th Cir. 1996)). In the instant case, we conclude that the issue is not fairly contestable and that Plaintiff has not experienced an adverse employment action.

Plaintiff alleges that "the ability to transfer to different District Counsel's office [sic] is a term and condition of employment in which Defendants have discriminated against older workers based upon their age." (Pl.'s Complaint P 24.) In support of this allegation, Plaintiff has stated that prior to being hired, he was informed that the INS "had an awful lot of promotion and transfer opportunities," that "one could expect there was quite a bit of mobility in the INS," and that "the INS is very, very big on transferring people." (Def.s' Mot. for Summary Judgment, Ex. A-8.) Plaintiff has also stated that his understanding at the time he was hired was not that he was assured of transfer, but that his *"prospects were excellent* for a transfer anywhere within the system." (Def.'s Mot. for Summary Judgment, Ex. A-13-14 ) (emphasis added) Plaintiff argues that he sought and was denied transfer to positions that "offered [*39] Plaintiff a greater opportunity for advancement, to be recognized, to improve skills with a lesser caseload and interact more collegially with his colleagues, the bench and bar." (Pl.'s Response, at 22.)

It is Plaintiff's position that the denials of his transfer requests constituted adverse employment actions because the sought-after transfers were not merely lateral or identical, but would have resulted in a material benefit had Plaintiff been selected. Plaintiff argues that the inability to work longer hours, practice in a particular field of law, or practice in a particular office has had a harmful effect upon his career. In particular, Plaintiff contends that all of the transfers for which he applied "would have resulted in a significant change in the amount of time he travels, a savings in the portion of his income he must devote to his commute and the opportunity to advance his career by being more available to his supervisors and colleagues as a result of not having to run for the bus." n16 (Pl.'s Response, at 19.)

> n16 We have noted that Plaintiff has voluntarily chosen to live in Philadelphia and work in New York. We also note that before his present employment, Plaintiff was working in Hanover, Massachusetts while living in Nashua, New

Hampshire, seventy miles away. It is unclear how the consequences of Plaintiff's commute could be related to an adverse employment action when it is a condition that he voluntarily and repeatedly imposes upon himself.

[*40]

We have little doubt that Plaintiff would have experienced a collateral benefit by transferring out of the New York office, although we must admit that this presumes that Plaintiff would not again choose to live 100 miles away from work. It can hardly be doubted that Plaintiff would benefit from not commuting such long distances. However, the question is not whether Plaintiff would be better off working in a city other than New York, but whether the denial of his transfer requests affected his compensation, terms, conditions, or privileges of employment, deprived him of employment opportunities, or adversely affected his status as an employee. In making this determination, we note that the positions for which he applied in Boston and Philadelphia are not substantially different from his present position in New York -- the only significant difference is the location of his workplace and the impact this has upon Plaintiff's commute. The failure of the employer to transfer Plaintiff to a position that is only collaterally beneficial does not, under the circumstances in the instant case, rise to the level of an adverse employment action.

Plaintiff cites the Third Circuit case of *Goosby v. Johnson & Johnson*, 228 F.3d 313 (3d Cir. 2000), [*41] in support of his argument that Defendant's refusal of the desired transfers constituted an adverse employment action. *Goosby* is inapposite. In *Goosby* Plaintiff claimed that after her employer restructured the workforce, she was assigned to a newly created position that was more difficult, less desirable, and only "for employees that the company wanted to get rid of." *Goosby*, 228 F.3d at 317, 319. The court concluded that there existed a genuine issue of material fact concerning whether the position at issue was, in fact, less desirable, and a genuine issue of material fact concerning whether Plaintiff was treated adversely or not. *Goosby*, 228 F.3d at 319. Unlike *Goosby*, there is no allegation in this case that Defendants affirmatively acted to place Plaintiff in a less advantageous position. Rather, Plaintiff's complaint is that Defendants have failed to place him in a position which he perceives to be more advantageous.

Plaintiff also contends that had he been selected for the position of Eastern Regional Counsel in the Eastern Regional Office in South Burlington, Vermont, he would have been able to practice in different substantive [*42] areas of law that have broader based application and which would have allowed Plaintiff to draw upon his labor relations education and thereby further advance his

career. Plaintiff argues that this position would have provided him with opportunities that are not as readily available to employees working in other offices. For example, Plaintiff argues that the Deputy Regional Counsel at the Eastern Regional Office obtained her position while she was an Assistant Regional Counsel at the Eastern Regional Office, and that the position was only advertised among the Assistant Regional Counsel staff at the Eastern Regional Office. Plaintiff contends that by not being permitted to transfer to the Eastern Regional Office, he is missing out on similar opportunities.

Even if Plaintiff's claims regarding transfer to Vermont were not time barred, Plaintiff has offered no substantive evidence to support his contention that his career with the INS has been adversely affected by this failure to transfer. His argument invites this Court to speculate on what might have been. In the case of *Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001), the Third Circuit considered a District [*43] Court's finding of an adverse employment action through the presumed future effect that an employer's actions might have on compensation, terms, conditions, or privileges of employment. In *Weston* plaintiff brought suit against his employer under Title VII for placing written reprimands in his personnel file that were to remain in the file for a period of six months. The trial court held that the written reprimands constituted an adverse employment action because of their "presumed" effect on the compensation, terms, conditions, or privileges of plaintiff's employment. The Third Circuit disagreed, holding that the employer did not take an adverse employment action by placing the reprimands in plaintiff's personnel file because plaintiff failed to show how the reprimands effected a material change in the terms or conditions of his employment. *Weston*, 251 F.3d at 431. The court noted that the plaintiff was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location, did not have his hours or work altered in any way, and was not denied a pay raise or promotion as a result of the reprimands. *Id.* The Third [*44] Circuit refused to speculate as to the presumed effect of a written reprimand.

Similarly, we cannot presume that Plaintiff's nonselection for transfer has effected a material change in the terms, conditions or privileges of his employment. Plaintiff's suggestion that he lacks the ability to advance his career because of Defendants' denial of his transfer requests is sheer speculation. Plaintiff has failed to demonstrate how the failure to transfer did effect a material change in the terms and conditions of his employment. Having failed to establish that he experienced an adverse employment action, Plaintiff has failed to establish a crucial element of his prima facie case of employment discrimination based on age or disability.

2002 U.S. Dist. LEXIS 12202, *

### Conclusion

For the foregoing reasons Defendant's Motion For Summary Judgment will be granted.

An appropriate Order follows.

### ORDER

AND NOW, this 25th day of January, 2002, upon consideration of Government's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Docket No. 14) and Plaintiff's response thereto, it is ORDERED that the said Motion be and the same is hereby GRANTED.

BY THE COURT: [*45]

R. Barclay Surrick, Judge