IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, *et al* ,

       Plaintiffs,

      v.

COMPUTER SCIENCES CORPORATION,

       Defendant.

Civil Action No. 05-010-JJF

## DEFENDANT'S REPLY BRIEF
## IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Of counsel:
Larry R. Seegull
Linda M. Boyd
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Counsel for Defendant
*Computer Sciences Corporation*

Date: June 15, 2006
737185

# **TABLE OF CONTENTS**

INTRODUCTION_____ 1

ARGUMENT_____ 2

I.   Plaintiffs' Claim Is Barred By The One-Year Statue of Limitations._____ 2

   A.   Defendant Has Not Waived Its Statute Of Limitations Defense
        Because Plaintiffs Have Demonstrated No Prejudice Whatsoever._____ 2

   B.   Plaintiffs' Argument That Their Claim Could Not Accrue
        Until After The Close Of The Fiscal Year Fails Because
        Plaintiffs Knew As Of September of 2003 That They Would
        Receive No AMIP Bonus For FY04 And Thus No Amount, Agreed
        Upon Or Otherwise, Was Ever  Due And Payable To Plaintiffs._____ 5

   C.   Under Delaware Case Law, Plaintiffs' Cause of Action
        Accrued When They Were Put On Notice Of The Dispute
        Over the FY04 AMIP Bonus In September Of 2003._____ 10

II.  Plaintiffs Failed To Present Any Material Issues Of Fact Demonstrating
     That They Are Entitled To An AMIP Bonus For Fiscal Year 2004._____ 11

   A.   Plaintiffs Provide No Evidence That AMIP-Eligible Employees
        Remained In AMIP Indefinitely Unless Otherwise Notified._____ 11

   B.   Plaintiffs Provide No Evidence That An AMIP Bonus Can Be
        Earned In The Absence Of AMIP Objectives, Targets And Goals._____ 13

   C.   Plaintiffs Provide No Evidence That Plaintiffs Were Participating
        In AMIP From April Of 2003 Through September Of 2003._____ 15

   D.   Plaintiffs Provide No Evidence That Their "Assumption That
        They Were Earning Their AMIP Bonuses" Has Any Bearing
        On Whether They Were Actually Earning Their AMIP Bonuses._____ 16

   E.   Plaintiffs Provide No Evidence That Individuals Who Are
        Removed From The AMIP Program During The Fiscal Year
        Receive Prorated AMIP Bonuses At The End Of The Fiscal Year._____ 17

CONCLUSION_____ 19

# TABLE OF AUTHORITIES

## Federal Cases

*Aubrey Rogers Agency, Inc. v. AIG Life Insurance Co.,*
    55 F. Supp. 2d 309, 315 (D. Del. 1999) _____ 3

*Block v. First Blood Assoc.,*
    988 F.2d 344, 350-51 (2d. Cir. 1993) _____ 3

*Camarillo v. McCarthy,*
    998 F.2d 638, 639 (9th Cir. 1993) _____ 3

*Charpentier v. Godsil,*
    937 F.2d 859, 864-65 (3d. Cir. 1991) _____ 2

*Compass v. American Mirrex Corp.,*
    2 F. Supp. 2d 462, 468 (D. Del. 1999) _____ 10

*Dole v. Arco Chemical Co.,*
    921 F.2d 484, 488 (3d. Cir. 1990)_____ 3

*Fallon v. Ashcroft,*
    2002 U.S. Dist. LEXIS 12202 _____3

*G.R. Sponaugle & Sons v. Hunt Const. Group, Inc.,*
    6 F. Supp. 2d 236, 242 (E.D. Pa. 2004) _____ 4

*Jackson v. Commissioner NJSP,*
    2005 U.S. Dist. LEXIS 36399 (D.N.J. Dec. 27, 2005 _____2, 4

*Kleinknecht v. Gettysburg College,*
    989 F.2d 1360, 1374 (3d. Cir. 1993)_____ 3

*Seitz v. The Siegfried Group, LLP*
    2001 Del. Super. LEXIS 364 (Del. Super. Oct. 2, 2001 _____10

*U.S. v. Donald Lane Const.,*
    19 F. Supp. 2d 217, 221 (D. Del. 1998) _____ 2, 3

## Federal Rules

Federal Rule of Civil Procedure 15(a) _____ 2

## State Statutes

Del. Code. Ann. tit. 10, § 8111 _____1, 2

## INTRODUCTION

This case is perfectly suited for resolution at summary judgment because the material facts are not in dispute. For instance, Plaintiffs do not dispute that:

- Section 8111 provides the relevant one-year statute of limitations (D.I. 99 at 9-13.);

- Plaintiffs were each informed by CSC in September of 2003 that they would receive no AMIP bonus for Fiscal Year 2004 ("FY04") (D.I. 99 at 6; Pl. Dep. at B-0082-B-0083, B-0159-B-0161, B-0246-B-0248, B-0322-B-0323, B-0418-B-0419, B-0464, B-0470, B-0521-B-0522, B-0612-B-0613, B-0693-B-0694, B-0780-B-0782, B-0865-B-0867, B-0940-B-0942; A415.);

- The AMIP bonuses Plaintiffs received in prior years had been calculated using AMIP-specific objectives, targets and weightings ("AMIP criteria") (Pl. Dep. at B-0047, B-0057-B-0058, B-0227-B-0230, B-0263-B-0264, B-0316-B-0317, B-0408-B-0411, B-0495-B-0497, B-0500, B-0595-B-0596, B-0675-B-0677, B-0739-B-0740, B-00849-B-0850, B-0905-B-0906.);

- AMIP objectives, targets and weightings were typically distributed well after the commencement of the fiscal year (D.I. 99 at 15.; Pl. Dep. at B-0047, B-0229, B-0318-B-0319, B-0606-B-0607, B-0741-B-0742, B-0843-B-0845, B-0905; B-1114-B-1115.);

- Plaintiffs did not receive any AMIP objectives, targets or weightings for FY04. (Pl. Dep. at B-0042-B-0043, B-0054, B-0175-B-0176, B-0237, B-0269, B-0327-B-0328, B-0426-B-0427, B-0466, B-0616, B-0692, B-0707-B-0708, B-0789, B-0869-B-0870, B-0944, B-0946-B-0947; A415.)

Plaintiffs simply have not presented the Court with any facts (or law) sufficient to overcome summary judgment. As this Reply demonstrates, there is no genuine issue of

material fact upon which to proceed to trial, and summary judgment for CSC is therefore appropriate.

## ARGUMENT

I.    **Plaintiffs' Claim Is Barred By The One-Year Statue of Limitations.**

    A.    **Defendant Has Not Waived Its Statute Of Limitations Defense Because Plaintiffs Have Demonstrated No Prejudice Whatsoever.**

Plaintiffs do not dispute that 10 *Del. C.* § 8111, imposes a one-year statute of limitations on their sole claim in this litigation. Instead, Plaintiffs assert that CSC has waived its right to assert a statute of limitations defense by not earlier raising this defense.

Together with this Reply Brief, CSC has simultaneously filed a Motion for Leave To File Amended Answer to include the statute of limitations defense. Federal Rule of Civil Procedure 15(a) allows a party to amend its pleadings at any time with leave of the court, and instructs that "leave shall freely be given where justice so requires." Fed. R. Civ. P. 15(a). The underlying purpose of Rule 15(a) is to facilitate decisions on the merits rather than on mere procedural technicalities. 3 MOORE'S FEDERAL PRACTICE § 15.14[1] (3d. ed. 2006). Accordingly, "[a] district court should freely grant leave to amend when justice requires, absent a substantial reason to deny. A liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)." *Id.; see, e.g., Charpentier v. Godsil*, 937 F.2d 859, 864-65 (3d. Cir. 1991) ("Unless the opposing party will be prejudiced, leave to amend should generally be allowed.") (citations and quotations omitted). *Jackson v. Commissioner NJSP*, 2005 U.S. Dist. LEXIS 36399, at *32-33 (D. N.J. Dec. 27, 2005) (same) (C01-C11); *U.S. v. Donald Lane Const.*, 19 F. Supp. 2d 217, 221 (D. Del. 1998) (defendant does not waive an affirmative defense by failing to plead that defense as specified in Rule 8(c) unless plaintiff shows evidence of prejudice such that its "ability to present its case would be seriously

2

impaired were amendment allowed") (citing and quoting *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d. Cir. 1990) (citations omitted)).

 ***Raising an affirmative defense for the first time in a post-answer motion for summary judgment does not result in the waiver of that defense where the opposing party suffers no prejudice.*** *E.g., Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1374 (3d. Cir. 1993) (upholding the district court's consideration of defendant's immunity defense at the summary judgment stage even though defendant did not plead this defense in its answer because plaintiff did not demonstrate prejudice); *Block v. First Blood Assoc.*, 988 F.2d 344, 350-51 (2d. Cir. 1993) (upholding the district court's consideration of defendant's statute of limitations defense at the summary judgment stage even though defendant did not plead this defense in its answer because the plaintiff did not demonstrate prejudice); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment.") (citations omitted); *Donald Lane Const.*, 19 F. Supp. 2d at 220-22 (granting defendant's motion to amend its answer to assert the affirmative defense of untimely notice and considering this defense at summary judgment).

 Courts have been particularly willing to consider such affirmative defenses where the opposing party has been afforded the opportunity to respond to the affirmative defense in its Answering Brief and/or where the defense presents a question of law for resolution. *Aubrey Rogers Agency, Inc. v. AIG Life Insurance Co.*, 55 F. Supp. 2d 309, 315 (D. Del. 1999) (holding that defendant did not waive its statute of frauds defense by first asserting this defense in its post-answer motion for summary judgment because plaintiff was not prejudiced by the amendment and had the opportunity to respond to the defense in its answering brief); *Fallon v. Ashcroft*, 2002 U.S. Dist. LEXIS 12202, at *15-17 (E.D. Pa. Jan. 25, 2002) (holding that defendant did not waive the statute of limitations defense by first asserting this defense

3

in its post-answer motion for summary judgment because plaintiff was not prejudiced by the amendment and fully responded to the defense in its answering brief, thus demonstrating that the defense was "raised in a pragmatically sufficient time for Plaintiff to fully and thoughtfully respond") (C12-C23); *G.R. Sponaugle & Sons v. Hunt Const. Group, Inc*, 366 F. Supp. 2d 236, 242 (E.D. Pa. 2004) (holding that the defendant did not waive the release defense by first asserting this defense in its post-answer motion for summary judgment because "the defense of release presents only a question of law and Plaintiff does not argue any prejudice"); *Jackson*, 2005 U.S. Dist. LEXIS 36399, at *34-38 (holding that defendant did not waive its statute of limitations defense by first asserting this defense in its post-answer motion for summary judgment, and noting that the likelihood of prejudice to the non-moving party "is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts") (C01-C11).

*Here, although Plaintiffs claim they will suffer "extreme prejudice" if CSC is permitted to Amend its Answer to include the limitations defense, they wholly neglect to identify or explain the nature of this prejudice.* (D.I. 99 at 9.) Plaintiffs fail both to point to any actions or discovery that they would have taken if CSC had earlier raised the defense, or to demonstrate any further discovery they now would require to more fully address the defense. (D.I. 99 at 9.) These omissions are not surprising given that CSC's statute of limitations defense presents a question of law which cannot be influenced or determined by further discovery. As a matter of law, Plaintiffs' Complaint was untimely when it was filed in December of 2004; Plaintiffs cannot now and could not ever take any action or discovery that would change this legal reality. Moreover, CSC's statute of limitations argument relies heavily on Plaintiffs' unanimous deposition testimony that they knew as of September of

4

2003 that they would not receive any amount of an AMIP bonus for fiscal year 2004.[1] Again, no further action or discovery will alter this sworn testimony.

Additionally, Plaintiffs have been afforded ample opportunity to address the merits of CSC's statute of limitations defense in their Answering Brief.  At no point in Plaintiffs' lengthy opposition to the limitations defense do they highlight a need for further discovery to bolster their arguments.  Accordingly, CSC has not waived its statute of limitations defense because Plaintiffs have failed to demonstrate any prejudice resulting from CSC's assertion of this defense at summary judgment.[2]

**B.    Plaintiffs' Argument That Their Claim Could Not Accrue Until After The Close Of The Fiscal Year Fails Because Plaintiffs Knew As Of September of 2003 That They Would Receive No AMIP Bonus For FY04 And Thus No Amount, Agreed Upon Or Otherwise, Was Ever Due And Payable To Plaintiffs.**

Plaintiffs attempt to avoid Delaware's one-year statute of limitations with legal arguments contradicted by their unanimous deposition testimony.  Although Plaintiffs each testified that they *knew* in September of 2003 that they would receive no AMIP bonus for FY04, Plaintiffs now assert in their Answering Brief that they *did not and could not know* until after the close of that fiscal year that they would receive no AMIP bonus for FY04 (D.I. 99 at 11.).  This last-ditch attempt to portray their claim as unripe until after the close of the Fiscal Year is belied by Plaintiffs' clear and consistent deposition testimony:

Q:    You understood from this letter that your AMIP eligibility was terminated?

---

[1] Indeed, CSC did not initially plead the statute of limitations defense because Plaintiffs' deposition testimony was needed to establish the defense.  Plaintiffs' eleven depositions were only recently concluded.

[2] It is also noteworthy that discovery is not closed as Plaintiffs assert.  The Scheduling Order set forth by this Court did not impose any deadline for non-written discovery.  (D.I. 11.)  In fact, CSC's motion for summary judgment was filed less than one week after the most recent deposition taken by Plaintiffs.

A:    I understood that I would not be receiving a check at the end of that fiscal year.

(Folwell Dep. at B-0696.)

Q:    So maybe sometime within a couple of weeks after September 11, 2003, you understood you wouldn't even get an AMIP bonus payment for any period of time for the fiscal year 2004.

A.    Right. Correct.

(Calderon Dep. at B-0813.)

Q:    [W]hen you received the notification that you were no longer eligible for AMIP in September of 2003, you knew as of that point in time you would not get any AMIP bonus for fiscal year 2004?

A:    That's what the letter read.

(Hauck Dep. at B-0920.)

Q:    At that time that you were notified, you knew you would no longer get any AMIP payment, correct?

A:    Correct.

(Masino Dep. at B-0204.)

Q:    At the time that you received this letter, Exhibit 8, you understood that you would no longer be getting AMIP payments, correct?

A:    Correct.

(Rollins Dep. at B-0166.)

Q:    So you understood at that time that you wouldn't be receiving an AMIP bonus at all?

A:    Correct.

(Peterson Dep. at B-0323.)

Q:    You understood from that meeting that you wouldn't receive any AMIP bonus for that year?

A:    Yes.

(Pokoiski Dep. at B-0419, B-0432-B-0433.)

Q:     When you received notice in September of 2003 by Bob Tattle that you were not going to be AMIP-eligible, you understood at that point that you would not receive any AMIP payment, correct?

A:     I understood the company was telling me that would be the case.

(Miller Dep. at B-0476-B-0477.)

Q:     You understood from this communication that you would not be receiving any AMIP bonus at all, correct?

A:     I understood we weren't eligible for it anymore.

(Keir Dep. at B-0610.)

Q:     So you knew once you spoke to Debbie Cebula that you would not get any AMIP?

A:     I expected that, when the AMIP was distributed, I would not – my participation would not be recognized and, therefore, I would get nothing for that fiscal year.

(Sperati Dep. at B-0081.)

Q:     After you received this letter, you knew you were not going to get an AMIP bonus, correct?

A:     Correct.

(Lincoln Dep. at 769.)

    Plaintiffs' testimony stands in blatant contradiction to their newfound argument that they "could not have discovered through reasonable diligence that they had not been paid the wages until the close of the fiscal year." (D.I. 99 at 11.) CSC made clear in September of 2003 that Plaintiffs would receive *no* AMIP bonus for FY04 (A414-A415.), and Plaintiffs' own words indicate that they received and understood this message *at that time*. Thus, there was never any amount of an AMIP bonus that was due and payable to Plaintiffs after the close of the fiscal year because Plaintiffs correctly understood and expected that they would receive *no* AMIP bonus at all for FY04.

Further, Plaintiffs' actions following the September 2003 communications were consistent with both their understanding that they would receive no AMIP bonus for FY04 and their belief that their claim against CSC was ripe as of September of 2003. Shortly after September of 2003 and well prior to the close of the fiscal year, Plaintiffs took significant steps to advance their legal claims:

- Plaintiffs located, contacted and retained legal counsel in the Fall and early Winter of 2003. (Pl. Dep. at B-0205, B-0472, B-0651, B-0915.)

- On December 5, 2003, several Plaintiffs solicited additional participants to join this litigation, sending letters to more than 120 CSC employees whom they believed had been impacted by the FY04 AMIP Realignment. (C31-C32; B-0256-B-0257, B-0477-B-0479.) The letter conveyed their belief "that it would be worthwhile to pursue a course of action to attempt to recover at least part of this lost [AMIP] compensation." (C31.)

- On January 16, 2004, Plaintiffs' counsel informed CSC's Legal Department by letter that he represented the Plaintiffs and believed they had been improperly denied an "earned bonus." (B-1307.) He further stated, "[U]nder separate cover we will be seeking the payment of this bonus to our clients." (B-1307.)

The act of retaining an attorney as well as the language and tone of the solicitation letter and Plaintiffs' counsel's letter to CSC, indicate that Plaintiffs correctly understood that their claim was ripe long before the close of FY04.[3]

_____

[3] Additionally, Plaintiffs admit that they have never known and cannot now determine the AMIP bonus amounts they would have received had they been AMIP-eligible in FY04. (Pl. Dep. at B-0042-B-0043, B-0077, B-0088-B-0091, B-0175-B-0176, B-0237, B-0269-B-0270, B-0327-B-0328, B-0426-B-0427, B-0466, B-0616-B-0617, B-0692, B-0707-B-0708, B-0789, B-0869-B-0870, B-0944, B-0946-B-0947.) Because Plaintiffs never received any AMIP objectives, targets or weightings for FY04, there was (and is) no possible way for Plaintiffs or CSC to calculate these hypothetical bonuses. Indeed, because no FY04 AMIP objectives, targets and goals were

*(footnote continued to next page)*

Similarly, Plaintiffs' brief argument that no cause of action existed in September of 2003 because CSC might have elected to reinstate them to the AMIP program or paid them a prorated AMIP is based on sheer speculation. (D.I. at 10-11.) Plaintiffs point to no record evidence indicating that CSC ever considered such actions or that Plaintiffs ever believed such actions might occur. In fact, as shown above, all evidence is directly to the contrary. Furthermore, under Plaintiffs' logic, CSC could have successfully defeated this same suit as unripe if it had been brought in October of 2003. To attempt to do so, however, CSC would have been forced to make a truly laughable argument: CSC would have had to argue that, despite its formal, company-mandated written and oral communications expressly and unequivocally informing Plaintiffs that they would receive no AMIP bonus for FY04, the claim was not yet ripe because the company might, at some point in the future, decide to change its mind. Clearly, CSC would make no more headway with this argument than Plaintiffs should make with the reverse argument.

---

*(footnote continued from previous page)*
created for Plaintiffs, neither they nor CSC have any way of knowing if these goals, whatever they might have been, would have been achieved at all.

Moreover, the fact that AMIP-eligible employees received AMIP bonuses after the close of FY04 is completely irrelevant to any calculation of Plaintiffs' hypothetical FY04 AMIP bonuses. Plaintiffs cannot rely on any other employee's AMIP formula to calculate their own hypothetical bonus because 1) each AMIP-eligible employee received individualized AMIP objectives, targets and goals, and 2) the employees who remained AMIP-eligible in FY04 were more senior than any of the Plaintiffs and thus would have had different AMIP objectives, targets and goals.

As a result, Plaintiffs can only estimate their damages by relying on information from the AMIP bonuses they received in years prior to FY04. They do not and cannot utilize any information from or related to FY04 itself. (Pl. Dep. at B-0088-B-0090, B-0169-B-0176, B-0269-B-0270, B-0327-B-0328, B-0426-B-0427; B-0462-B-0466, B-0616, B-0707-B-0708, B-0788-B-0789, B-0811, B-0944-B-0947.) *Notably, the close of FY04 had no impact on these prior year estimates, which could easily have been performed in September of 2003.* Thus, even if Plaintiffs could deny their deposition testimony and somehow claim that they were waiting to receive an AMIP bonus at the close of FY04, they simply cannot claim that they were waiting to receive some "agreed upon amount" that was due and payable at that time.

C.     Under Delaware Case Law, Plaintiffs' Cause of Action Accrued When They Were Put On Notice Of The Dispute Over the FY04 AMIP Bonus In September Of 2003.

Plaintiffs likewise distort the relevant case law in a futile attempt to avoid the one-year statute of limitations.  The majority of cases discussed by Plaintiffs involve disputes over the proper amount of wages due rather than situations, as here, where Plaintiffs were notified that they would not receive wages in any amount.  Not surprisingly given their desire to avoid the statute of limitations, Plaintiffs make much of the fact that the causes of action in these cases arose after the defendant offered some amount of payment.  However, they conveniently gloss over the fact that the payment offers are only relevant because they crystallized an otherwise uncertain dispute between the parties.

In *Compass v. American Mirrex Corp*, for example, the parties agreed that the plaintiff was entitled to a bonus in some amount.  72 F. Supp. 2d 462, 468 (D. Del. 1999).  Although the facts were not initially available to calculate the bonus, the parties soon ascertained the relevant information and negotiated over the proper amount of the bonus for nearly seven months in the hopes of avoiding a dispute.  *Id.*  When the defendant broke off the negotiations and tendered a check for less than the plaintiff desired, it was clear that a dispute was unavoidable and the cause of action accrued.  *Id.*

Similarly, in *Seitz v. The Siegfried Group, LLP*, the plaintiff and defendant disagreed on the proper bonus amount to which plaintiff was entitled.  2001 Del. Super. LEXIS 364, at *6 (Del. Super. Oct. 2, 2001) (C24-C30).  Many months after his resignation, the plaintiff demanded from the defendant a calculation of the incentive compensation he was owed.  *Id.*  Without tendering any payment, defendant provided a bonus calculation that was significantly lower than the payment plaintiff anticipated.  *Id.*  The court held that by providing this calculation, the plaintiff was put on notice that the amount was in dispute, thereby commencing the statute of limitations.  *Id.* at *15-17.

10

Notably, in both *Compass* and *Seitz*, the commencement of the limitations period had nothing to do with when the wage payments were "due and payable" to the plaintiffs. Rather, both courts found that the cause of action accrued when the defendants first made clear to the plaintiffs that they would not pay the amount plaintiff believed he was due. In the instant case, it is undisputed that CSC notified Plaintiffs that they would not receive any AMIP bonus for FY04 in September of 2003. This communication was sufficient to commence the statute of limitations because, as evidenced by Plaintiffs' unanimous testimony, it put Plaintiffs on notice of the dispute.

Accordingly, Plaintiffs' claim is barred by the statute of limitations because they failed to file within one year of September of 2003, the time that they were notified of the dispute.

## II.    Plaintiffs Failed To Present Any Material Issues Of Fact Demonstrating That They Are Entitled To An AMIP Bonus For Fiscal Year 2004.

Although Plaintiffs purport to identify various material issues of fact, upon closer scrutiny their arguments are unsupported by either the record evidence or simple common sense.

### A.    Plaintiffs Provide No Evidence That AMIP-Eligible Employees Remained In AMIP Indefinitely Unless Otherwise Notified.

Plaintiffs first argue that CSC did not adhere to its policy that AMIP participation is reviewed annually and that employees are alerted to their AMIP eligibility for each particular fiscal year. (D.I. 99 at 13-14.) However, Plaintiffs drastically distort the relevant policy when making this argument, suggesting incorrectly that the policy dictates that employees be informed of their AMIP eligibility at the ***beginning*** of each fiscal year. Building on this mistake, Plaintiffs then claim that, because employees are not notified of their AMIP eligibility at the beginning of the fiscal year, CSC's practice is actually that AMIP-eligible employees remain in AMIP forever unless otherwise notified.

11

In fact, CSC's policy and practice mandates that, "**If you are eligible to participate in AMIP, your manager will supply you with a description of the program criteria and payout methodology.**" (B-1302 (emphasis in original); B-1146-B-1147; B-1184; A413; A434.) *Notably, the policy says nothing about the timing of this communication.* (B-1302.) Thus, employees are alerted to their AMIP eligibility for a particular fiscal year only when provided the objectives, targets and weightings towards which they must work to receive an AMIP bonus. Because AMIP is subject to modification or discontinuance each year, and because AMIP objectives, targets and weightings change each year for each employee, it makes sense and is necessary to premise an employee's notification of eligibility upon communication of his or her new objectives, targets and weightings. (A411-A413; A434.) Any assumption of continued AMIP-eligibility prior to the receipt of these new goals would render the AMIP meaningless as the intent of the program is to incentivize employees to achieve specific, carefully articulated fiscal year goals. (A410-412; A431-34.)

The record evidence demonstrates that CSC's general practice, *consistent with the above described policy*, was to communicate objectives, targets and weightings to AMIP-eligible employees anywhere from August through December of the fiscal year, although there was no set time frame for this communication. (Pl. Dep. at B-0047, B-0231-B-0232, B-0319, B-0503-B-0504, B-0606-B-0607, B-0741-B-0742, B-0843-B-0844; B-1113-B-1114; A413, A434.) Plaintiffs thus cannot support their argument that CSC's actual practice was that AMIP-eligible employees automatically remain in AMIP unless otherwise notified.

Plaintiffs admit that they *never* received any communications regarding FY04 AMIP objectives, targets or weightings. (Pl. Dep. at B-0042-B-0043, B-0054, B-0175-B-0176, B-0237, B-0269, B-0327-B-0328, B-0426-B-0427, B-0466, B-0616, B-0692, B-0707-B-0708,

B-0789, B-0869-B-0870, B-0944, B-0946-B-0947; A415.)  Accordingly, Plaintiffs *never* had

any right or reason to assume that they were enrolled in AMIP for FY04.[4]

**B.      Plaintiffs Provide No Evidence That An AMIP Bonus Can Be
          Earned In The Absence Of AMIP Objectives, Targets And Goals.**

Plaintiffs next make the outrageous claim that, despite the highly structured and

formulaic nature of AMIP bonus criteria and calculations, employees can earn an AMIP

bonus simply by "work[ing] hard to earn the most value for the corporation to achieve good

financial results." (D.I. 99 at 16.)  As support for this assertion, they offer only the fact

(conveniently ignored in their earlier argument) that AMIP criteria are generally not

distributed until well after the start of the fiscal year.  Relying on this fact, Plaintiffs

somehow conclude that AMIP criteria are unnecessary to earn an AMIP bonus because

AMIP-eligible employees receive full-year AMIP bonuses.

Plaintiffs' argument ignores the fundamental fact that AMIP is based entirely on

year-end goals.  (A410-413; A431-34.)  AMIP bonuses are not earned on a day-to-day, week-

to-week, or month-to-month basis.  Rather, the final year-end achievement of these goals is

the sole measurement that determines whether an AMIP bonus has been earned.  (A410-413;

A431-34.)  Thus, even assuming AMIP-eligible employees received their AMIP criteria on

the first day of the fiscal year and worked to achieve these goals every single day of that year,

they would not be entitled to any AMIP bonus if these goals were unfulfilled at the close of

---

[4]  Plaintiffs' misleading citations further demonstrate that no record evidence supports this
argument.  For example, Plaintiffs cite to the testimony of Dot Eltzroth and Mary Jo Morris to
support their incorrect contention that AMIP participants must be "notified *immediately*" if they
are removed from AMIP. (D.I. 99 at 14.)  In fact, in the cited testimony, Ms. Eltzroth merely
agreed that employees removed from AMIP during the fiscal year "have been told within a
reasonable time." (B-0992.)  In her testimony, Ms. Morris simply confirmed that, to her
knowledge Plaintiffs were first informed that they would receive no AMIP bonus in the
September 2003 timeframe via letter and oral communications. (B-1189.)  In any event, this
argument is irrelevant as Plaintiffs were not removed from AMIP during the fiscal year – as
shown above, they were never AMIP-eligible in the first place.

the fiscal year.[5]  For instance, although CSC's revenue and earnings per share fluctuate throughout the year, the earning of an AMIP bonus depends solely on the measurement of these objectives on the final day of the fiscal year.  Accordingly, because AMIP is based on year-end goals and AMIP bonuses are earned only if those goals have been achieved at the close of the fiscal year, the fact that AMIP-eligible employees receive their objectives, targets and weightings after the start of the fiscal year is inconsequential.

Moreover, Plaintiffs admit that AMIP bonuses are calculated based on specific objectives, targets and weightings assigned for each fiscal year. (Pl. Dep. at B-0047, B-0057-B-0058, B-0227-B-0230, B-0263-B-0264, B-0316-B-0317, B-0408-B-0411, B-0495-B-0497, B-0500, B-0595-B-0596, B-0675-B-0677, B-0739-B-0740, B-00849-B-0850, B-0905-B-0906.)  They further admit that without these AMIP criteria, it is impossible to calculate the amount of AMIP bonus due to an employee, if any. (Pl. Dep. at B-0042-B-0043, B-0088-B-0090, B-0175-B-0176, B-0269-B-0270, B-0327-B-0328, B-0426-B-0427, B-0466, B-0616-B-0617, B-0692, B-0707-B-0708, B-0789, B-0869-B-0870, B-0944, B-0946-B-0947.)  In light of these admissions, Plaintiffs' contentions that AMIP goals and objectives are unnecessary to earn an AMIP bonus and that AMIP bonuses can be earned simply by working hard and achieving "a good financial performance throughout the year" are nonsensical.  *AMIP would quickly become subjective and discretionary rather than structured and formulaic if undefined, unmeasured "hard work" was the sole requirement for entitlement to a bonus.*

---

[5] In reality, AMIP-eligible employees cannot be provided their AMIP criteria on the first day of the fiscal year because CSC must assess the previous fiscal year before making projections and objectives for the new fiscal year. (A413; A434.)

C.   **Plaintiffs Provide No Evidence That Plaintiffs Were Participating In AMIP From April Of 2003 Through September Of 2003.**

Plaintiffs engage in still further leaps of logic when asserting that CSC considered Plaintiffs to be participating in AMIP from April 2003 through September 2003. Plaintiffs first point to the September 2003 letter explaining that Plaintiffs were not eligible to participate in FY04 AMIP. (D.I. 99 at 17.) They contend that the very distribution of this letter contradicts CSC's assertion that Plaintiffs were not participating in AMIP prior to that time. The mere fact that CSC took an unnecessary but precautionary measure when making a large-scale realignment of the AMIP program, however, is not evidence that it believed Plaintiffs were participating in FY04 AMIP prior to September 2003.

More importantly, however, CSC distributed the September 2003 letters so that employees *such as Plaintiffs* who were *not* eligible to participate in FY04 AMIP would not be waiting indefinitely for the distribution of their AMIP objectives, goals and targets. As discussed above, CSC's general practice was to communicate objectives, targets and weightings to AMIP-eligible employees anywhere from August through December of the fiscal year, although there was no set time frame for this communication. (Pl. Dep. at B-0047, B-0231-B-0232, B-0319, B-0503-B-0504, B-0606-B-0607, B-0741-B-0742, B-0843-B-0844; B-1113-B-1114; A413; A434.) Thus, CSC distributed the September 2003 letter to curtail employee speculation about whether and when their particular communication would take place.

Plaintiffs' focus on the use of the future tense in select sentences of several CSC emails is likewise misplaced given the context of these emails. For example, Gus Siekierka's July 8, 2003 email solicits feedback on a draft of a proposed plan for the FY04 AMIP Realignment. (B-1289-B1290.) As shown by the replies to this email, the future tense is utilized because Mr. Siekierka and the executives with whom he corresponds are still

determining which employees should and should not be AMIP-eligible in FY04. (B-1288-B-1289.)[6] Notably, as of the dates of these emails, CSC had not finally determined which employees would be AMIP-eligible in FY04 and thus had not yet distributed any AMIP objectives, targets and goals.[7]

> **D.    Plaintiffs Provide No Evidence That Their "Assumption That They Were Earning Their AMIP Bonuses" Has Any Bearing On Whether They Were Actually Earning Their AMIP Bonuses.**

CSC has never argued that Plaintiffs were entitled to nothing for their work from April 2003 through September 2003. Plaintiffs were each paid the salary to which they were entitled for that time period. Instead, CSC simply asserts that Plaintiffs were not and are not entitled to any AMIP bonus for this time period because they were never made eligible to earn such a bonus in FY04. Quite simply, the fact that Plaintiffs *assumed* that they would earn an AMIP bonus if they continued to perform their duties as in previous years does not make it so, particularly in light of their admissions that participation in AMIP was not guaranteed. (Pl. Dep. at B-0051-B-0052, B-0236-B-0237, B-308, B-0437, B-0485, B-0589-B-0590, B-0648, B-0857, B-0899-B-0890, B-0944; B-0992; B-1109; B-1186-B-1187.)

Plaintiffs knew that AMIP was based on the achievement of specific criteria and could not be calculated without these criteria. (Pl. Dep. at B-0041-B-0043, B-0047, B-0057-B-0058, B-0077, B-0088-B-0091, B-0175-B-0176, B-0227-B-0230, B-0269-B-0270, B-

---

[6] Likewise, the June 2003 email correspondence between William Bancroft, Gus Siekierka and others represents an earlier example of the ongoing evolution of and discussion about the FY04 AMIP Realignment. (B-1303-B-1305.) Both Mr. Bancroft and Mr. Lewis utilize the future tense because they provide suggestions and feedback on the future of AMIP.

Plaintiffs attempt to turn Mr. Bancroft's email on its head. His statement that AMIP is not an entitlement program could not in any way suggest that AMIP is an entitlement.

[7] Although Plaintiffs attempt to attach great significance to the words of these few emails, they chose not to depose any of the authors or recipients of these emails with the exception of Russ Owen. Plaintiffs did not depose Gus Siekierka, William Bancroft, Gary Lewis, Henry Liedemer, or John Walker.

0316-B-317, B-0327-B-0328, B-0408-B-0411, B-0427-B-0428, B-0466, B-0495-B-0497, B-0500, B-0595-B-0599, B-0616-B-0617, B-0675-B-0692, B-0707-B-0708, B-0745, B-0789, B-0839-B-0840, B-0850-B-0851, B-0869-B-0870, B-0905-B-0909, B-0944, B-0946-B-0947.) Accordingly, until Plaintiffs received such criteria any assumption that they would be entitled to an AMIP bonus as a matter of course was clearly misplaced.

> **E.    Plaintiffs Provide No Evidence That Individuals Who Are
> Removed From The AMIP Program During The Fiscal Year
> Receive Prorated AMIP Bonuses At The End Of The Fiscal Year.**

Plaintiffs point to only one person, a former CSC employee by the name of Steve Quinn, to support their broad statement that "there have been CSC employees in the past who were not participating in the program at the close of the fiscal year that did, in fact, receive a prorated bonus for that fiscal year." (D.I. 99 at 20.)   Although it is not evident from Plaintiffs' selective citation to Plaintiff Brian Miller's testimony, Mr. Quinn was actually laid off from CSC in the middle of the fiscal year.   (Pl. Dep. at B-0486-B-0488.)   CSC's Employee Total Rewards Guide explicitly states that employees who are laid off due to lack of work "will receive the pro-rated portion of the payout at the time of award payment." (B-1300.) Accordingly, the prorated bonus allegedly received by Mr. Quinn fell under a specific exception not applicable to any of the Plaintiffs and provides no support for their claim.

Similarly, Plaintiffs' selective references to CSC policies provide no evidence that CSC pays prorated AMIP bonuses to employees no longer on the program at the close of the fiscal year *except* in specific, limited situations described in the policy itself.   Plaintiffs disingenuously cite to CSC's original 1983 AMIP Plan (long since outdated) for the proposition that employees received a prorated AMIP bonus if their "employment was terminated through no fault of their own during the fiscal year." (D.I. 99 at 20.)   In fact, the policy provides for a prorated AMIP bonus only in the specific event of an employee's mid-fiscal year death, permanent disability or retirement at the age of 65 or older. (B-1285.) To

compound this misleading argument, Plaintiffs suggest that proration of AMIP bonuses is far more common than is actually the case with their incomplete quote from the Employee Total Rewards Guide. (D.I. 99 at 20.) The *full* quotation reads:

- **Exceptions:** In the event of termination due to
  - o  death
  - o  retirement due to lack of work
  - o  layoff due to lack of work
  - o  disability

  the employee will receive the pro-rated portion of payout at the time of award payment, based on the months of participation.

(B-1300.)

Upon closer scrutiny of Plaintiffs' "evidence" that "the AMIP program contemplated a prorated bonus if an employee was removed from the AMIP program during the fiscal year" it becomes clear that their argument is highly misleading. (D.I. 99 at 21). With the exception of specifically delineated situations set forth in the Employee Total Rewards Guide, *none of which are applicable to Plaintiffs*, the AMIP program does not contemplate a prorated bonus for employees removed from the program midyear. Indeed, CSC's express designation of the specific limited exceptions listed above is evidence that no additional exceptions have been contemplated by the Company.[8]

Moreover, Plaintiffs' argument assumes that employees "removed from the AMIP program during the fiscal year" were AMIP-eligible for that fiscal year at the time of removal. They do not and cannot identify a single employee who, despite never receiving any AMIP objectives, targets, or weightings for the fiscal year, nevertheless received a

---

[8] It is also noteworthy that Plaintiffs wholly ignore the consistent testimony of Russell Owen, Susan Eltzroth and Mary Jo Morris that employees who are removed from the AMIP program prior to the close of the fiscal year typically do not receive *any* AMIP bonus. (B-1133-B-1134; B-1149; B-0988-B-0989; B-1197.) Plaintiffs likewise inaccurately describe James Styles' testimony as speculation when, in fact, Mr. Styles knew at the time of his deposition that he had not received and would not be receiving any amount of an AMIP bonus for FY06 even though he had left the company less than two weeks prior to the close of the fiscal year. (B-1079-B-1080.)

prorated AMIP bonus at the close of the fiscal year. Such employees would not be entitled to any amount of AMIP bonuses because they, like Plaintiffs, were never made eligible for AMIP in the first place. Further, from a practical standpoint, CSC would have no way to calculate and prorate an AMIP bonus for an employee in the absence of AMIP objectives, targets and weightings. Accordingly, Plaintiffs argument fails both because they were not "removed" from AMIP mid-fiscal year because they were never eligible for FY04 in the first place, and because, even if they had been eligible, CSC's policy *does not* contemplate proration of AMIP bonuses for employees removed mid-year except in specific, limited situations not applicable here, such as death or disability.

## CONCLUSION

WHEREFORE, for the foregoing reasons and those set forth in their Opening Brief, CSC respectfully requests that summary judgment be granted in its favor as a matter of law.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

Sarah E. DiLuzio (#4085)
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Of counsel:
Larry R. Seegull
Linda M. Boyd
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Dated: June 15, 2006

Counsel for Defendant
*Computer Sciences Corporation*

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on June 15, 2006, I electronically filed

true and correct copies of **DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT**

**OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using

CM/ECF which will send notification of such filing, which is available for viewing and

downloading from CM/ECF, to the following counsel of record:

> Jeffrey K. Martin, Esq.
> Timothy J. Wilson, Esq.
> MARGOLIS EDELSTEIN
> 1509 Gilpin Avenue
> Wilmington, DE 19806
> (302) 777-4680
> jmartin@marolisedelstein.com

> Sarah E. DiLuzio (DSB ID No. 4085)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, Delaware  19899
> Tel:  (302) 984-6000
> E-mail:  sdiluzio@potteranderson.com

737185