# EXHIBIT 1

2006 U.S. App. LEXIS 3568, *

RICHARD BALTER, Appellant v. UNITED STATES OF AMERICA; FEDERAL BUREAU OF
PRISONS; JAE H. SHIM, Clinical Director, Health Services Unit; MAXIMO R. VALESCO,
Medical Officer, Health Services Unit; DANIEL O. ROMERO, Medical Officer, Health
Services Unit; ARNOLD T. REYES, Health Services Administrator

NO. 04-3687

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

2006 U.S. App. LEXIS 3568

January 6, 2006, Submitted Under Third Circuit LAR 34.1(a)
February 15, 2006, Filed

**NOTICE: [*1]** RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT
CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE
UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal From the United States District Court For the Middle
District of Pennsylvania. (D.C. Civ. No. 01-cv-01944). District Judge: Honorable
Judge James M. Munley.

COUNSEL: RICHARD BALTER, Appellant, Pro se, White Deer, PA.

For UNITED STATES OF AMERICA, FED BUR PRISONS, JAE H. SHIM, Clinical Director,
Health Services Unit, MAXIMO R. VALESCO, Medical Officer, Health Services Unit,
DANIEL ROMERO, Medical Officer, Health Services Unit, ARNOLD REYES, Health
Services Administrator, Appellees: Joseph J. Terz, Office of United States Attorney,
Harrisburg, PA.

JUDGES: BEFORE: ROTH, RENDELL and AMBRO, CIRCUIT JUDGES.

**OPINION:**

PER CURIAM

Appellant, Richard Balter, appeals from an order entered by the United States
District Court for the Middle District of Pennsylvania dismissing his complaint. The
facts and procedural history of this case are well known to the parties. It is thus not
necessary for us to restate them in great detail here. Balter, a federal prisoner, filed
the underlying complaint pursuant to Bivens v. Six Unknown Named Agents of the
Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619
(1971), **[*2]** and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.,
against the following defendants: the United States of America; the Federal Bureau
of Prisons; Jae H. Shim, Clinical Director of the Health Services Unit; Maximo R.
Valesco, Medical Officer; Daniel O. Romero, Medical Officer; and Arnold T. Reyes,
Health Services Administrator. Balter essentially asserts that the defendants failed to
provide him with timely and adequate medical treatment for an eye condition, and

that the delayed treatment which he did receive resulted in the loss of vision in his right eye.

We have jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291, and [HN1] exercise plenary review over a District Court's order granting defendants' motion to dismiss the complaint and for summary judgment. See Debiec v. Cabot Corp., 352 F.3d 117, 128 n.3 (3d Cir. 2003); Broselow v. Fisher, 319 F.3d 605, 607 (3d Cir. 2003). After careful review of the record, we find that dismissal was proper and we will thus affirm the judgment of the District Court.

The District Court properly granted defendants' motion to dismiss with [*3] respect to defendant Reyes because Reyes had no direct involvement in Balter's medical treatment. See Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(citing cases holding that [HN2] respondeat superior is not a viable theory of Bivens liability); cf. Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) [HN3] (no respondeat superior liability in § 1983 cases). As for Balter's Eighth Amendment claim against the remaining defendants, summary judgment was appropriate insofar as Balter failed to demonstrate that the defendants were deliberately indifferent to his eye condition. See Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In fact, a review of the record shows that Balter was seen on numerous occasions by prison doctors, outside ophthalmologists, and a variety of specialists. As the District Court concluded, [HN4] Balter's disagreement with the prison doctors regarding the type of treatment he should have been given does not amount to an Eighth Amendment violation. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990). Summary judgment was thus properly granted with respect to the merits of Balter's Eighth Amendment [*4] claim and, we would note, Balter does not take issue with the District Court's disposition of this claim on appeal.

Finally, we agree with the District Court that Balter's FTCA claim was barred by the statute of limitations. Initially, we reject appellant's argument that the District Court committed reversible error in considering defendants' argument regarding the timeliness of his FTCA claim since it was not raised in their initial motion to dismiss the complaint and for summary judgment. As we have noted in the past, [HN5] affirmative defenses (including the statute of limitations) are not waived if raised at a "pragmatically sufficient time" with no prejudice to the plaintiff. See Eddy v. VI Water & Power Authority, 256 F.3d 204, 209 (3d Cir.2001), citing Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991). Here, defendants raised the statute of limitations defense in their objections to the Magistrate Judge's first Report and Recommendation, and again on remand from the District Court in their answer and second motion to dismiss and for summary judgment. Balter was afforded an opportunity to meet that defense and to present his arguments to both [*5] the Magistrate Judge and the District Court. Given these circumstances, we cannot agree with appellant's contention that the District Court erred in considering the limitations defense.

That having been said, [HN6] Balter was required to file an administrative claim with the appropriate federal agency within two years after his claim accrued. See 28 U.S.C. § 2401(b). The District Court correctly concluded that Balter knew of both the existence and the probable cause of his injury in August 1997 because, at that time, two eye specialists had allegedly told him that the delay in seeking treatment had adversely affected his prognosis. In his complaint, Balter claimed the delay was caused by the prison medical staff at USP-Lewisburg. Moreover, in his September 26, 2000 administrative complaint Balter listed the "incident date" as August 29, 1997.

While Balter argues that the incident was ongoing, we agree with the District Court that the events which occurred subsequent to August 1997 did not allow him to delay in bringing suit until after his treatment was complete. See Tyminski v. United States, 481 F.2d 257 (3d Cir. 1973). Balter thus had until **[*6]** August 1999 to file his administrative tort claim. The claim he filed on September 26, 2000 was clearly untimely.

Accordingly, for the reasons stated, we will affirm the District Court's judgment.

# EXHIBIT 2

Computer Sciences Corporation

Tyler B. Raimo
Counsel

January 16, 2004

**CSC**

VIA FACSIMILE TRANSMISSION
    Fax: (302) 777-4682

Jeffrey K. Martin, Esq.
1509 Gilpin Avenue
Wilmington, DE  19806

        Re:    CSC's Annual Management Incentive Program

Dear Mr. Martin:

        This is to acknowledge my receipt today of your letter dated January 16, 2004 addressed to Mr. Dan Fisk of Computer Sciences Corporation ("CSC").

        As I stated to you in our previous conversation, you may forward all of your correspondence to me at the address below.  I will be in touch with you as soon as I have had a reasonable time to investigate the issue raised in your letter.  Should you have any questions or comments in the interim, please do not hesitate to call me at (703) 641-2508.

                        Very truly yours,

                        Tyler Raimo

cc:    Hayward "Dan" Fisk

Corporate Office
3170 Fairview Park Drive
Falls Church, Virginia 22042
703.641.2508   Fax 703.849.1015

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.          )
HAUCK, KEVIN KEIR, ASHBY          )
LINCOLN, KAREN MASINO, ROBERT     )
W. PETERSON, SUSAN M. POKOISKI,)
DAN P. ROLLINS, and WILLIAM       )
SPERATI,                          )
                                  )
    Plaintiffs,                   )
                                  )
    v.                            ) C.A. No. 05-10-JJF
                                  )
COMPUTER SCIENCES CORPORATION, )
                                  )
    Defendant.                    )

            Deposition of WILLIAM E. SPERATI taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 9:25 a.m., on Thursday,
January 12, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

        TIMOTHY J. WILSON, ESQUIRE
        MARGOLIS EDELSTEIN
          1509 Gilpin Avenue
          Wilmington, Delaware 19806
         for the Plaintiffs

        LARRY R. SEEGULL, ESQUIRE
        LINDA M. BOYD, ESQUIRE
          DLA PIPER RUDNICK GRAY CARY US LLP
          6225 Smith Avenue
          Baltimore, Maryland 21209-3600
          for the Defendant

            WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
                (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

69

1   participating in AMIP or not, correct?

2      A.   I was participating, okay, because I had a

3   letter that said you will be included.

4      Q.   How long after you received the completed

5   worksheet and met with Ms. Cebula did you receive the

6   bonus payment?

7      A.   Hours or days.

8      Q.   Or maybe right at the same time?

9      A.   I mean, I'm trying to think.  It may be a

10  scenario of the payday would be Friday, we would have

11  visibility to our pay stubs on Tuesday, so we would

12  actually know the amount, and on Wednesday or Thursday

13  she would actually talk to us as to how it was

14  calculated.

15     Q.   What were you told in September of 2003 about

16  no longer being a participant in AMIP?

17     A.   The entire communication was in the letter and

18  a statement that something to the effect of it's because

19  now it's only going to managers; they're enforcing that

20  old rule that we had been excepted from in the past.

21     Q.   So am I correct that you had no communications

22  with anybody else about your no longer being a

23  participant in AMIP other than that letter?

24     A.   That was the first time I heard anything about

70

1    it.

2        Q.    Was that the only time you spoke to anybody in

3    the company about it?  I say "spoke."  You didn't speak

4    to anybody.  Was that the only communication you had with

5    anybody about no longer being a participant in AMIP?

6        A.    Basically, yes.  I mean, some of the other

7    people who I believed lost it, we started talking about,

8    boy, this seems pretty unbelievable.

9        Q.    Other than that?

10        A.    No.

11        Q.    No other communications?

12        A.    No.  And then the letter from Bill saying

13    please respond to the letter that you received.

14        Q.    What was your understanding of what it meant

15    when you received the letter?

16        A.    It meant that CSC had on September 11th

17    declared that effective April 1st I was no longer to be

18    participating.

19        Q.    Did you understand that meant that you would no

20    longer receive any AMIP?

21        A.    I suspect that to be the case.

22        Q.    That's what you understood it to mean.

23        A.    Yes.

24        Q.    Did you understand that you were not going to

1 | get prorated?

2 |     A.    I was pretty sure because of that use of the

3 | April 1st language that they would not recognize the fact

4 | that I had participated for those six months.

5 |     Q.   Did you ever ask anybody about proration?

6 |     A.    I might have said are we going to at least get

7 | money for this -- I suspect that I asked, but I don't

8 | remember specifically.

9 |     Q.    You think you were told no, you're not going to

10 | get prorated?

11 |     A.    Right.

12 |     Q.    That would have been Debbie Cebula?

13 |     A.    Yes.

14 |     Q.    And that would have been in September 2003, as

15 | well, that you spoke to her about this?

16 |     A.    Yes.

17 |     Q.    So you knew once you spoke to Debbie Cebula

18 | that you would not get any AMIP?

19 |     A.    I expected that, when the AMIP was distributed,

20 | I would not -- my participation would not be recognized

21 | and, therefore, I would get nothing for that fiscal year.

22 |     Q.    That's what you understood.

23 |     A.    Yes.

24 |             (Deposition Exhibit No. 2 was marked for

# EXHIBIT 4

                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.       )
HAUCK, KEVIN KEIR, ASHBY       )
LINCOLN, KAREN MASINO, ROBERT  )
W. PETERSON, SUSAN M. POKOISKI,)
DAN P. ROLLINS, and WILLIAM    )
SPERATI,                       )
                               )
     Plaintiffs,               )
                               )
       v.                      ) C.A. No. 05-10-JJF
                               )
COMPUTER SCIENCES CORPORATION, )
                               )
     Defendant.                )

                  Deposition of DANIEL P. ROLLINS taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 8:55 a.m., on Friday,
January 13, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.


APPEARANCES:

            TIMOTHY J. WILSON, ESQUIRE
            MARGOLIS EDELSTEIN
              1509 Gilpin Avenue
              Wilmington, Delaware 19806
              for the Plaintiffs

            LARRY R. SEEGULL, ESQUIRE
            LINDA M. BOYD, ESQUIRE
              DLA PIPER RUDNICK GRAY CARY US LLP
              6225 Smith Avenue
              Baltimore, Maryland 21209-3600
              for the Defendant

                  WILCOX & FETZER
      1330 King Street - Wilmington, Delaware 19801
                   (302) 655-0477



**WILCOX & FETZER LTD.**
Registered Professional Reporters
COPY

Daniel P. Rollins

155

1   bonus?

2       A.      No.

3       Q.      Do you know on what basis they decide who gets

4   it and who doesn't?

5       A.      No.

6       Q.      At the time that you received this letter,

7   Exhibit 8, you understood you would no longer be getting

8   AMIP payments, correct?

9       A.      Correct.

10      Q.      You knew that you were no longer eligible under

11  the AMIP plan?

12      A.      Yes.

13      Q.      You also knew that this discretionary bonus you

14  suddenly became eligible for, correct?

15      A.      Yes.  That's what the letter said.

16      Q.      You had not been eligible for the discretionary

17  bonus before, correct?

18      A.      Correct.

19      Q.      So you understood that, although the company

20  was taking away your eligibility from AMIP, they were

21  giving you something, as well, which is eligibility for

22  the discretionary bonus.

23      A.      Yeah.  That's what was said in the letter, but,

24  like I said, I never saw anything of the discretionary

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.        )
HAUCK, KEVIN KEIR, ASHBY        )
LINCOLN, KAREN MASINO, ROBERT   )
W. PETERSON, SUSAN M. POKOISKI, )
DAN P. ROLLINS, and WILLIAM     )
SPERATI,                        )
                                )
    Plaintiffs,                 )
                                )
    v.                          ) C.A. No. 05-10-JJF
                                )
COMPUTER SCIENCES CORPORATION,  )
                                )
    Defendant.                  )

          Deposition of KAREN A. MASINO taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 1:00 p.m., on Friday,
January 13, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

        TIMOTHY J. WILSON, ESQUIRE
        MARGOLIS EDELSTEIN
          1509 Gilpin Avenue
          Wilmington, Delaware 19806
          for the Plaintiffs

        LARRY R. SEEGULL, ESQUIRE
        LINDA M. BOYD, ESQUIRE
          DLA PIPER RUDNICK GRAY CARY US LLP
          6225 Smith Avenue
          Baltimore, Maryland 21209-3600
          for the Defendant

              WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
              (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters



Karen A. Masino

192

1   period?

2       A.    Correct.

3       Q.    Which would either be within a week or maybe

4   two weeks of that?

5       A.    Exactly.

6       Q.    You were notified on September 11th, 2003, when

7   you received a letter from the company saying you were no

8   longer eligible for AMIP?

9       A.    I believe it was the 11th.  It may have been

10  the 13th when I actually had my face-to-face meeting.

11      Q.    At the time that you were notified, you knew

12  you would no longer get any AMIP payment, correct?

13      A.    Correct.

14      Q.    What is your Social Security number?

15      A.    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.

16      Q.    What is your date and place of birth?

17      A.    September 1st, 1959.  I was born here in

18  Wilmington, Delaware.

19      Q.    Where do you currently reside?

20      A.    At 420 West 22nd Street.

21      Q.    Do you own or rent your home?

22      A.    I rent.

23      Q.    How long have you been at that address?

24      A.    More than 15 years.



# EXHIBIT 6

```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
BRIAN MILLER, HECTOR CALDERON,  )
CHARLES FOLWELL, DAWN M.        )
HAUCK, KEVIN KEIR, ASHBY        )
LINCOLN, KAREN MASINO, ROBERT   )
W. PETERSON, SUSAN M. POKOISKI, )
DAN P. ROLLINS, and WILLIAM     )
SPERATI,                        )
                                )
     Plaintiffs,                )
                                )
       v.                       )  C.A. No. 05-10-JJF
                                )
COMPUTER SCIENCES CORPORATION,  )
                                )
     Defendant.                 )
```

              Deposition of ROBERT W. PETERSON taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 9:00 a.m., on Saturday,
January 28, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.


APPEARANCES:

         TIMOTHY J. WILSON, ESQUIRE
         MARGOLIS EDELSTEIN
            1509 Gilpin Avenue
            Wilmington, Delaware 19806
            for the Plaintiffs

         LARRY R. SEEGULL, ESQUIRE
         LINDA M. BOYD, ESQUIRE
            DLA PIPER RUDNICK GRAY CARY US LLP
            6225 Smith Avenue
            Baltimore, Maryland 21209-3600
            for the Defendant

              WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
              (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters



Robert W. Peterson

310

1   be eligible for participation in AMIP?

2       A.    I think the letter was September 11th, 2003.

3   I'm not sure.

4       Q.    Who told you this?

5       A.    I received a letter and also my manager,

6   Val Rowan, told me.

7       Q.    Did you receive a letter in the mail?

8       A.    I don't remember if it came in the mail or it

9   was handed to me personally.

10      Q.    When did Ms. Rowan meet with you?

11      A.    I don't know exactly when.

12      Q.    What did she tell you?

13      A.    She told me I was being taken off of the AMIP

14  list and there will be a letter or she gave me the

15  letter -- I don't remember if I received it in the mail

16  or she gave it to me, saying that I was no longer to

17  receive the AMIP bonus.

18      Q.    That was around September of 2003?

19      A.    Around there, yes.

20      Q.    So you understood at that time that you

21  wouldn't be receiving an AMIP bonus at all?

22      A.    Correct.

23      Q.    You're requesting from CSC a prorated bonus

24  from the beginning of the fiscal year, April 1st, through

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.          )
HAUCK, KEVIN KEIR, ASHBY          )
LINCOLN, KAREN MASINO, ROBERT     )
W. PETERSON, SUSAN M. POKOISKI,   )
DAN P. ROLLINS, and WILLIAM       )
SPERATI,                          )
                                  )
     Plaintiffs,                  )
                                  )
     v.                           ) C.A. No. 05-10-JJF
                                  )
COMPUTER SCIENCES CORPORATION,    )
                                  )
     Defendant.                   )

          Deposition of SUSAN M. POKOISKI taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 9:00 a.m., on Thursday,
February 16, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

          TIMOTHY J. WILSON, ESQUIRE
          MARGOLIS EDELSTEIN
             1509 Gilpin Avenue
             Wilmington, Delaware 19806
             for the Plaintiffs

          LARRY R. SEEGULL, ESQUIRE
          LINDA M. BOYD, ESQUIRE
             DLA PIPER RUDNICK GRAY CARY US LLP
             6225 Smith Avenue
             Baltimore, Maryland 21209-3600
             for the Defendant




1       A.    No, I do not.

2       Q.    You said that you received e-mails with some

3   financial information.  Do you remember who you would

4   have received those e-mails from?

5       A.    Well, the only e-mails that I would receive are

6   something from corporate.  Very basic.  I would never

7   receive anything personal and confidential via e-mail.

8       Q.    Who sent the corporate e-mails?

9       A.    Could have been Honeycutt, somebody from Falls

10  Church.  Information that was distributed to everyone

11  that had anything to do in our goals or objectives or the

12  state of the -- I won't say state of the union.  Anything

13  like that.  I never received anything via e-mail that was

14  something like AMIP or salary information.

15      Q.    Do you remember anything in particular that you

16  did receive regarding corporate financial information?

17      A.    No.  Basically, when -- even before I got AMIP

18  at the end of the year, there would be a -- we made our

19  goal and the upcoming year's going to be as challenging.

20  Something like that to that nature.  I do remember

21  e-mails like that.  We still get them today.

22      Q.    You were notified by CSC that you would no

23  longer be eligible for participation in the AMIP program

24  for fiscal year 2004?

Susan M. Pokoiski                                405

1    A.    Uh-huh.

2    Q.    When was that?

3    A.    There was a meeting invite from Jeannie to her

4  organization -- and I don't know the specific date.  I

5  believe it was late August or early September -- to

6  attend a meeting.  The subject was not -- there was no

7  indication what the subject matter was about, but to

8  attend a meeting and that's when we were told.

9    Q.    Who attended the meeting?

10    A.    Her direct reports or people that were eligible

11  for AMIP.

12    Q.    Approximately how many people were at the

13  meeting?

14    A.    Well, it was face-to-face or on a conference

15  call.  So I would say there were 15, 20 people.

16    Q.    Were you there face-to-face?

17    A.    I was there face-to-face.

18    Q.    What did Ms. Maul say?

19    A.    Basically that we were not eligible for the

20  AMIP program.

21    Q.    Did she say why?

22    A.    No.  There was not really a clear reason given.

23    Q.    Did she tell you that you may be eligible for a

24  discretionary bonus?

Susan M. Pokoiski

406

1     A.    Well, actually everybody -- yes, you were told

2  that, but that's just common knowledge that anybody was

3  eligible for the discretionary bonus.

4     Q.    So you believe you could have received an AMIP

5  bonus and a discretionary bonus?

6     A.    No.   What I'm saying is that we were told that

7  we were no longer on the AMIP and that we were eligible

8  for the discretionary bonus, but I believe the

9  discretionary bonus was always out there anyway.   It

10  wasn't like now all of a sudden you're eligible for a

11  discretionary bonus.   It was always available anyway.

12     Q.    Do you know of anyone who ever received an AMIP

13  bonus and a discretionary bonus for the same year?

14     A.    No, I don't know.

15     Q.    Was the meeting with Jeannie Maul the first

16  time you learned you wouldn't be eligible for AMIP --

17     A.    Yes.

18     Q.    -- for fiscal year 2004?

19     A.    Yes.

20     Q.    You understood from that meeting that you

21  wouldn't be receiving any AMIP bonus at all for that

22  year?

23     A.    Yes.

24     Q.    You're claiming that CSC has improperly

Susan M. Pokoiski                          418

1      A.    No.  I guess the folks -- I would assume that

2   whoever I was working with, they might have gotten

3   knowledge that this exists, but I'm in a different group

4   now and I moved from 400, so I don't see anybody.  I'm

5   not with the same organization.

6      Q.    You don't know of anyone in CSC or otherwise

7   who has personal knowledge?

8      A.    No.

9      Q.    Who have you spoken with regarding your

10  lawsuit?

11     A.    The only person I guess I mentioned this to is

12  my husband that I was involved, but he stays out of that.

13     Q.    Other than your husband, nobody else?

14     A.    No.

15     Q.    No one at CSC?

16     A.    No.

17     Q.    None of the plaintiffs?

18     A.    Actually, again, I don't see them.  I'm in a

19  different -- I'm not on the DuPont account anymore, and

20  some of those folks I never met till that January 27th

21  meeting.

22     Q.    Going back to that meeting with Jeannie Maul,

23  as of the date of that meeting, which I believe you said

24  was early August or late August or early September, as of

Susan M. Pokoiski                                    419

1    that date, you were told that you were no longer eligible

2    for AMIP for fiscal year '04.

3                    As of that date, you did not believe that

4    you were receiving any amount of money for an AMIP bonus

5    for fiscal year 2004?

6        A.    When we were told, there was a lot of talk in

7    regards to what does that mean.  We had questions.  But

8    when we were told that we were no longer eligible, I

9    believed that the work that we were doing was not going

10   to reap any kind of AMIP money the coming year, the

11   coming April.

12       Q.    So you believed you were completely off the

13   program at that point?

14       A.    Yes.

15       Q.    And wouldn't receive any AMIP bonus for the

16   year?

17       A.    That's right.

18       Q.    Do you have any debts at the present time?

19       A.    Debts?  Mortgage.

20       Q.    Credit card debts?

21       A.    Yes.

22       Q.    Anything else?

23       A.    Car loan.

24       Q.    Anything else?

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.          )
HAUCK, KEVIN KEIR, ASHBY          )
LINCOLN, KAREN MASINO, ROBERT     )
W. PETERSON, SUSAN M. POKOISKI,)
DAN P. ROLLINS, and WILLIAM       )
SPERATI,                          )
                                  )
    Plaintiffs,                   )
                                  )
    v.                            )  C.A. No. 05-10-JJF
                                  )
COMPUTER SCIENCES CORPORATION,    )
                                  )
    Defendant.                    )

            Deposition of BRIAN L. MILLER taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 1:00 p.m., on Thursday,
February 16, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

            TIMOTHY J. WILSON, ESQUIRE
            MARGOLIS EDELSTEIN
              1509 Gilpin Avenue
              Wilmington, Delaware 19806
              for the Plaintiffs

            LARRY R. SEEGULL, ESQUIRE
            LINDA M. BOYD, ESQUIRE
              DLA PIPER RUDNICK GRAY CARY US LLP
              6225 Smith Avenue
              Baltimore, Maryland 21209-3600
              for the Defendant

            WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
            (302) 655-0477



Brian L. Miller                                    461

1         Q.      Have you discussed with the other plaintiffs

2    how you will split those fees?

3         A.      Not specifically, no.

4         Q.      Do you have any understanding of how you will

5    pay them?  Will you split them evenly?

6         A.      We haven't really discussed that.

7         Q.      What if it's more than a thousand dollars?

8         A.      Then it's more than a thousand dollars.

9         Q.      Have any lawsuits ever been filed against you?

10        A.      No.

11        Q.      Have you ever been a witness in a lawsuit?

12        A.      No.

13        Q.      Other than this case.

14        A.      No.

15        Q.      When you received notice in September 2003 by

16   Bob Tattle that you were not going to be AMIP-eligible,

17   you understood at that point that you would not receive

18   any AMIP payment, correct?

19        A.      I understood the company was telling me that

20   that would be the case.  Not that I agreed with that

21   situation, but I understood what they were trying to tell

22   me, yes.

23        Q.      I understand you disagreed with that result.

24        A.      Correct.

Brian L. Miller

462

1      Q.    But you understood that the result was you were

2   not going to get paid any AMIP payment.

3      A.    I understood that's what they were telling me,

4   yes.

5      Q.    Tell me a little bit about your educational

6   experience.  Where did you go to school?

7      A.    I went to high school in the Harrisburg area,

8   Pennsylvania.  Then I went to Penn State University,

9   earned a Bachelor of Science degree in computer science

10  and math.

11     Q.    When did you graduate?

12     A.    1986.

13     Q.    Did you graduate with honors?

14     A.    Yes.  I had a 3.57 GPA.

15     Q.    Any postgraduate work?

16     A.    No.

17     Q.    I mean education.  Any postgraduate education?

18     A.    No postgraduate formal education, no.  Towards

19  a degree, that is.

20     Q.    Where did you go after school?  Did you start

21  working?

22     A.    I started working at DuPont Corporation in the

23  June time frame of 1986.

24     Q.    Did you ever send out a letter to other

1    employees at CSC seeking to have them join you in a

2    lawsuit?

3        A.    Yes.  Let me clarify that.  Not to join me.  To

4    inform them that they may have some legal rights there

5    and if they were interested in contacting the

6    attorneys -- an attorney, here is one that understands

7    this case.

8        Q.    How did you know who to send it to?

9        A.    Personal information and knowledge about the

10   people who were in the same situation that I was.  I have

11   a lot of colleagues.

12       Q.    So how did you know who to send it to?

13       A.    I came up with a list of names of people who I

14   thought were in a similar situation.  Not 100 percent

15   fact, but I believe they were in a similar situation.

16   And sent the letter.

17       Q.    How did you send it, by e-mail?

18       A.    No.  Via Uncle Sam -- formal mail.

19       Q.    Through the mail?

20       A.    Through the mail.

21       Q.    How did you get their addresses?

22       A.    Public Web sites.  Some places like

23   whitepages.com and other places like that or the phone

24   book.

Brian L. Miller

1    compensation claims?

2        A.    No.

3        Q.    When did you first contact an attorney to

4    handle your case against CSC?

5        A.    I guess that would be probably in the fall soon

6    after I received the letter, which would have been, I

7    guess -- I'm drawing a blank on years here.  It's been so

8    long.  October 2004?  Yes.

9        Q.    You say soon after you received the letter.

10   What do you mean?

11       A.    The letter talking about the removal from the

12   AMIPs program.

13       Q.    Was it your supervisor that gave you the

14   letter?

15       A.    Yes, my supervisor gave me the letter.  Right.

16       Q.    Is that a he or she?

17       A.    It's a he.

18       Q.    Who is that?

19       A.    Robert Tattle, T-a-t-t-l-e.

20       Q.    Bob Tattle?

21       A.    Bob, yes.

22       Q.    What was his position?

23       A.    His position was director -- application

24   development manager/director on the DuPont account.

1     Q.    He was your supervisor?

2     A.    Correct.

3     Q.    As of September of '03?

4     A.    When we received the letter, right.  Oh, yes.

5     Q.    Is he still your supervisor?

6     A.    No.

7     Q.    What was your position in September of '03?

8     A.    The title was portfolio manager.  My role

9 within CSC was titled senior manager.

10    Q.    Are you still in that position?

11    A.    No, I'm not.

12    Q.    What position are you in now?

13    A.    I'm now a -- it's the next level above that.  I

14 can't remember the title of it.  Computer scientist

15 principal, I believe.

16    Q.    Are you AMIP-eligible now?

17    A.    Yes, I am.

18    Q.    When did you become AMIP-eligible?

19    A.    In September of 2004 I was put back on the

20 program and I received a prorated bonus for fiscal 2005

21 under that program.

22    Q.    That was because you received a promotion?

23    A.    No.  I moved to the new assignment and then my

24 position was reassessed into a new assignment.  Moved to

1    the assignment first, and a couple months I moved to that

2    assignment, month and a half, my position was

3    reevaluated.  I was placed back on the program and

4    received a prorated bonus for approximately that six

5    months of fiscal year 2005.

6         Q.    When did you move to the new assignment?

7         A.    August/September time frame of 2004.

8         Q.    Is it fair to say that you were --

9         A.    I think my correction of when I contacted them

10   would be 2003.  I'm getting confused on dates.  I

11   contacted them whenever the letter came out.

12        Q.    You contacted an attorney?

13        A.    An attorney.

14        Q.    Shortly after you were told you were no longer

15   eligible for AMIP?

16        A.    Correct.

17        Q.    That would have been in September of '03.  So

18   it would have been shortly thereafter?

19        A.    Correct.

20        Q.    You remained ineligible under AMIP until you

21   were placed in the new position in August and then that

22   position was reevaluated in September or October?

23        A.    That's correct.

24        Q.    Of '04?

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.          )
HAUCK, KEVIN KEIR, ASHBY          )
LINCOLN, KAREN MASINO, ROBERT     )
W. PETERSON, SUSAN M. POKOISKI,   )
DAN P. ROLLINS, and WILLIAM       )
SPERATI,                          )
                                  )
     Plaintiffs,                  )
                                  )
     v.                           ) C.A. No. 05-10-JJF
                                  )
COMPUTER SCIENCES CORPORATION,    )
                                  )
     Defendant.                   )

          Deposition of KEVIN R. KEIR taken pursuant
to notice at the law offices of Potter Anderson &
Corroon, Hercules Plaza, 6th Floor, Wilmington, Delaware,
beginning at 3:20 p.m., on Thursday, February 16, 2006,
before Kimberly A. Hurley, Registered Merit Reporter and
Notary Public.

APPEARANCES:

          TIMOTHY J. WILSON, ESQUIRE
          MARGOLIS EDELSTEIN
             1509 Gilpin Avenue
             Wilmington, Delaware 19806
             for the Plaintiffs

          LARRY R. SEEGULL, ESQUIRE
          LINDA M. BOYD, ESQUIRE
             DLA PIPER RUDNICK GRAY CARY US LLP
             6225 Smith Avenue
             Baltimore, Maryland 21209-3600
             for the Defendant

                    WILCOX & FETZER
      1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

Kevin R. Keir                                      593

1        Q.    When did you generally receive a worksheet when

2    you did receive one?

3        A.    As I said, it depends if we're talking about

4    the preliminary ones or the final ones.

5        Q.    The final.

6        A.    A couple of times they were right around the

7    time we were paid it out, and I do believe a manager did

8    once sit down and say -- or present it to me, saying we

9    met the objectives, so you're eligible for the

10   22 percent.

11       Q.    When did you generally receive the AMIP bonus?

12       A.    That I don't remember.  It was, I believe, in

13   April-June time frame.

14       Q.    You wouldn't receive it until you were well

15   into the next fiscal year?

16       A.    After the close of the previous year.

17       Q.    Because it took CSC a while to wrap up its

18   prior fiscal year and close the books, correct?

19       A.    I believe so.

20             MR. RAIMO:  Go off the record.

21             (A recess was taken.)

22   BY MR. RAIMO:

23       Q.    Mr. Keir, you were notified by CSC that you

24   were not eligible for participation in the AMIP program

1   for 2004 fiscal year at some point in September, correct?

2       A.    Right.

3       Q.    At what point in September was this

4   communicated to you?

5       A.    I believe -- the letter I believe was dated

6   September 11th.

7       Q.    How was it sent to you?

8       A.    I believe through the mail.  I could be wrong.

9       Q.    The U.S. mail or e-mail?

10      A.    I don't recall, actually.

11      Q.    Is that how you were first notified by CSC that

12  you were no longer eligible for the AMIP?

13      A.    Yes.

14      Q.    You understood from this communication that you

15  would not be receiving any AMIP bonus at all, correct?

16      A.    I understood we weren't eligible for it

17  anymore.

18      Q.    You wouldn't be receiving an AMIP bonus for

19  FY '04?

20      A.    Seemed to indicate that, yes.

21      Q.    You continued to perform your job after you

22  learned you were no longer eligible for AMIP for FY '04,

23  correct?

24      A.    Correct.



# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON,  )
CHARLES FOLWELL, DAWN M.        )
HAUCK, KEVIN KEIR, ASHBY        )
LINCOLN, KAREN MASINO, ROBERT   )
W. PETERSON, SUSAN M. POKOISKI, )
DAN P. ROLLINS, and WILLIAM     )
SPERATI,                        )
                                )
     Plaintiffs,                )
                                )
     v.                         )  C.A. No. 05-10-JJF
                                )
COMPUTER SCIENCES CORPORATION,  )
                                )
     Defendant.                 )

          Deposition of CHARLES D. FOLWELL, JR.,
taken pursuant to notice at the law offices of Potter
Anderson & Corroon, Hercules Plaza, 6th Floor,
Wilmington, Delaware, beginning at 8:55 a.m., on Friday,
February 17, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

          TIMOTHY J. WILSON, ESQUIRE
          MARGOLIS EDELSTEIN
             1509 Gilpin Avenue
             Wilmington, Delaware 19806
             for the Plaintiffs

          LARRY R. SEEGULL, ESQUIRE
          DLA PIPER RUDNICK GRAY CARY US LLP
             6225 Smith Avenue
             Baltimore, Maryland 21209-3600
             for the Defendant

                  WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                  (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters

 1    like a bonus.

 2        Q.    How much was the bonus?

 3        A.    One year I recall it was $800.  Another one I

 4    recall was a thousand.  Those are the two I can recall.

 5        Q.    Once you received notification that you were no

 6    longer eligible for the AMIP program in September of

 7    2003, you understood at that time that you would not get

 8    an AMIP payment?

 9        A.    Ever again.

10        Q.    Is that what you understood?

11        A.    Correct.

12        Q.    Any other awards or honors?

13        A.    Not that I recall.

14        Q.    Tell me about the positions you have held at

15    DuPont.  I understand you were there for 17 years?

16        A.    Correct.

17        Q.    That probably means you held a variety of

18    different positions; is that right?

19        A.    Correct.

20        Q.    Do your best to just tell me the different

21    positions you have held.

22        A.    I supported and taught a language called

23    Mark IV.  Then I supported and taught a language called

24    Focus.  Then I worked on replacing DuPont's 401(k)

1    Q.    Did she say she was being removed, too?

2    A.    She did not say those words.

3    Q.    Did she tell you anything else?

4    A.    On this subject?

5    Q.    During that conversation.

6    A.    I don't recall anything else being discussed.

7    Q.    Did you say anything to her?

8    A.    Yes.

9    Q.    What did you say?

10   A.    I probably expressed an opinion of

11   disappointment of some type.  I don't recall --

12   Q.    Do you recall what you said?

13   A.    I don't recall the exact words.

14   Q.    But you were clearly disappointed?

15   A.    Yes.

16   Q.    You said this is wrong or I'm disappointed?

17   A.    Yes.

18   Q.    Something to that effect.

19   A.    Yes.

20   Q.    She said what?

21   A.    I don't recall.

22   Q.    Do you recall anything else about the

23   conversation?

24   A.    No.

 1      Q.    Did she say you will be getting a letter

 2   confirming this?

 3      A.    I recall her saying something will follow, yes.

 4      Q.    Then shortly thereafter, maybe a day or two,

 5   you received a letter?

 6      A.    Yes.

 7                (Deposition Exhibit No. 40 was marked for

 8   identification.)

 9   BY MR. SEEGULL:

10      Q.    I'm now showing you what's been marked

11   Exhibit 40.  Do you recognize this?

12      A.    Yes.

13      Q.    This is the letter that we have been talking

14   about?

15      A.    Yes.

16      Q.    This is the letter that was given to you on or

17   about September 11th, 2003, telling you that you were no

18   longer eligible for AMIP, correct?

19      A.    Yes.

20      Q.    Do you know who gave this to you?

21      A.    I don't recall.

22      Q.    Did you receive it in person or through the

23   mail?

24      A.    I don't recall.

1    Q.    You understood from this letter that your AMIP

2  eligibility was terminated as of that moment?

3    A.    I understood that I would not be receiving a

4  check at the end of that fiscal year.

5    Q.    You also were told that you would now be

6  eligible for a discretionary bonus, correct?

7    A.    That's what this letter says.

8    Q.    That's what you understood.

9    A.    I understood that that's what this letter says.

10            MR. SEEGULL:  Can you repeat the question?

11            (The reporter read back as instructed.)

12            THE WITNESS:  Correct.  The letter says

13  that.

14  BY MR. SEEGULL:

15    Q.    That's what you understood, that you would now

16  be eligible --

17    A.    I did not understand that.  I read that.

18    Q.    Were you confused by what the letter said?

19    A.    Correct.

20    Q.    Why were you confused?

21    A.    The letter does not tell me how, when, the

22  criteria for how this bonus will be distributed.

23    Q.    The discretionary bonus?

24    A.    Correct.

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.          )
HAUCK, KEVIN KEIR, ASHBY          )
LINCOLN, KAREN MASINO, ROBERT     )
W. PETERSON, SUSAN M. POKOISKI,)
DAN P. ROLLINS, and WILLIAM       )
SPERATI,                          )
                                  )
    Plaintiffs,                   )
                                  )
    v.                            )  C.A. No. 05-10-JJF
                                  )
COMPUTER SCIENCES CORPORATION,   )
                                  )
    Defendant.                    )

        Deposition of ASHBY A. LINCOLN, III, taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 12:55 p.m., on Friday,
February 17, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

        TIMOTHY J. WILSON, ESQUIRE
        MARGOLIS EDELSTEIN
          1509 Gilpin Avenue
          Wilmington, Delaware 19806
          for the Plaintiffs

        LARRY R. SEEGULL, ESQUIRE
        DLA PIPER RUDNICK GRAY CARY US LLP
          6225 Smith Avenue
          Baltimore, Maryland 21209-3600
          for the Defendant

        WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
        (302) 655-0477

**WILCOX & FETZER LTD.**
Registered Professional Reporters

1      Q.      Interactive phone call or just a recording?

2      A.      It was an interactive phone call.

3      Q.      Were AMIP bonuses discussed?

4      A.      No.   It was just an orientation of CSC policies

5   and procedures, tell you CSC sources.  They gave you

6   direction on how to interact with HR, it would explain

7   the medical benefits, that kind of thing.  But it didn't

8   go into any of the customization-type things that would

9   have been outside of that umbrella.

10     Q.      You were rehired in January of 2004, correct?

11     A.      Correct.

12     Q.      During your orientation nothing was discussed

13  regarding AMIP bonuses?

14     A.      No.

15     Q.      You're currently in the AMIP bonus program now?

16     A.      No.

17     Q.      You're not?

18     A.      It's a different bonus program.

19     Q.      What is that?

20     A.      It's referenced in the letter that I have

21  taking me off AMIP bonus, it mentions in that letter that

22  you can be eligible for a $10,000 or $5,000 bonus at the

23  discretion of somebody.  And I am currently receiving

24  that bonus, but I did not receive that bonus the last

1    year I was at DuPont.

2         Q.    CSC you mean?

3         A.    Yes.   The gentleman that gave me the letter,

4    Tom Saienni, apparently had the option of giving me the

5    bonus, a new bonus, that's outlined in the letter which

6    does not cover the specifics, but he did not do that.

7         Q.    Is that a discretionary bonus, the new bonus?

8         A.    Right.

9         Q.    You were notified that you were no longer

10   eligible for the AMIP bonus in September of 2003,

11   correct?

12        A.    Yes.

13        Q.    Could you say the person's name again?

14        A.    Tom Saienni.

15        Q.    How do you spell that?

16        A.    S-a-i-e-n-n-i.   Something like that.

17        Q.    You continued to perform your job after you

18   learned you were not eligible for an AMIP bonus in

19   FY '04, correct?

20        A.    Right.

21        Q.    You continued to fulfill your job expectations

22   and duties, right?

23        A.    Yes.   Those didn't change.

24                   (Deposition Exhibit No. 48 was marked for

1    identification.)

2    BY MR. RAIMO:

3        Q.    Mr. Lincoln, the court reporter has provided

4    you with what's been marked Exhibit 48. Could you tell

5    me what this document is?

6        A.    That is the letter that I received from

7    Tom Saienni that explained to me that I was no longer

8    eligible for the AMIP program retroactive back through

9    April the 1st.

10       Q.    But you were told in this letter also that you

11   were eligible to earn a discretionary bonus.

12       A.    That is correct.

13       Q.    That's what you mentioned before, the same

14   discretionary bonus we talked about a minute ago.

15       A.    That is correct. In fact, when I got this

16   letter from Tom, he told me I would be getting that

17   bonus, and I didn't get it, so I called Tom and he said,

18   "Oh, no, I didn't recommend that bonus for anybody."

19       Q.    So you didn't receive any discretionary bonus

20   as of that year?

21       A.    No. I expected to get that one, as well,

22   because he did tell me I was going to get it.

23             MR. RAIMO:   Could we go off the record?

24             (Discussion off the record.)

**W&F**

**WILCOX & FETZER LTD.**
Registered Professional Reporters

1    that it had to be paid.  I believe it probably still

2    exists.

3         Q.    Is it a 3 percent salary increase or 3 percent

4    bonus?

5         A.    Bonus on the salary.

6         Q.    So it's not AMIP?

7         A.    It is not AMIP.  It's not an AMIP bonus.  I

8    don't recall what it was called.

9              MR. WILSON:  You're going to have to wait

10   until he finishes his questions.  It gets hard for her to

11   take it down if you're both talking at the same time.

12             THE WITNESS:  Okay.

13        Q.    Mr. Lincoln, if I could direct your attention

14   to Exhibit 48.

15        A.    Okay.

16        Q.    After you received this letter, you knew you

17   were not going to get an AMIP bonus, correct?

18        A.    Correct.

19        Q.    Mr. Lincoln, I want to talk about your damages

20   in this case.  What are your damages?

21        A.    Monetarily?

22        Q.    Yes.

23        A.    Approximately $10,000.

24        Q.    That's it?

# EXHIBIT 12

789

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON,  )
CHARLES FOLWELL, DAWN M.        )
HAUCK, KEVIN KEIR, ASHBY        )
LINCOLN, KAREN MASINO, ROBERT   )
W. PETERSON, SUSAN M. POKOISKI, )
DAN P. ROLLINS, and WILLIAM     )
SPERATI,                        )
                                )
    Plaintiffs,                 )
                                )
    v.                          )  C.A. No. 05-10-JJF
                                )
COMPUTER SCIENCES CORPORATION,  )
                                )
    Defendant.                  )

            Deposition of HECTOR L. CALDERON taken
pursuant to notice at the law offices of Potter Anderson
& Corroon, Hercules Plaza, 6th Floor, Wilmington,
Delaware, beginning at 9:40 a.m., on Thursday,
March 2, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

          TIMOTHY J. WILSON, ESQUIRE
          MARGOLIS EDELSTEIN
            1509 Gilpin Avenue
            Wilmington, Delaware 19806
            for the Plaintiffs

          LARRY R. SEEGULL, ESQUIRE
          DLA PIPER RUDNICK GRAY CARY US LLP
            6225 Smith Avenue
            Baltimore, Maryland 21209-3600
            for the Defendant


               WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
               (302) 655-0477



794

1    Q.    At some point you learned that's not what the

2    letter meant.  You have not received --

3    A.    I did not get the checks, so yes.

4    Q.    At what point did you realize that what the

5    letter meant was you were not going to get any AMIP bonus

6    even for a period of time going backwards?

7    A.    Shortly after.  After discussions and asking

8    questions what's going to happen.  That's how I learned.

9    Q.    So maybe sometime within a couple of weeks

10   after September 11th, 2003, you understood you wouldn't

11   even get an AMIP bonus payment for any period of time for

12   fiscal year 2004.

13   A.    Right.  Correct.

14   Q.    By the way, just so we get this out of the way

15   early, when I refer to a fiscal year, you would agree

16   that the fiscal year runs from April 1 through the

17   following March 31?

18   A.    Correct.

19   Q.    So as an example, fiscal year 2004 would be

20   April 1, 2003, through March 31, 2004.

21   A.    Yes.  Correct.

22   Q.    You understood that, at least by the end of

23   September, maybe not the first day that you received the

24   letter, but by the end of September, you understood by



Hector L. Calderon

795

1    the end of September 2004 that you would not receive any

2    AMIP bonus for any of fiscal year 2004.

3        A.    Yes.

4        Q.    What you are calculating now is $10,000, and

5    you're saying that's based upon taking 21 percent times

6    your fiscal year 2004 salary and then dividing it by two?

7        A.    Yes.

8        Q.    So essentially your fiscal year 2004 salary was

9    about $100,000?

10       A.    $98,000.

11       Q.    So really it should be a little bit less than

12   $10,000, right?

13       A.    Yeah, a little bit less.

14       Q.    Do you know how much less?

15       A.    No, I don't.

16       Q.    But to be precise, the way you would calculate

17   your damages if you were doing it down to the penny, it

18   would be to take your annual salary in your mind of

19   $98,000, multiply that by 21 percent, and then divide

20   that by two.

21       A.    Yes.

22       Q.    I haven't done the numbers, so I don't know

23   what that equals.  You don't know what that equals,

24   either?

# EXHIBIT 13

870

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN MILLER, HECTOR CALDERON, )
CHARLES FOLWELL, DAWN M.            )
HAUCK, KEVIN KEIR, ASHBY            )
LINCOLN, KAREN MASINO, ROBERT    )
W. PETERSON, SUSAN M. POKOISKI,)
DAN P. ROLLINS, and WILLIAM      )
SPERATI,                              )
                                       )
     Plaintiffs,                       )
                                       )
         v.                            )  C.A. No. 05-10-JJF
                                       )
COMPUTER SCIENCES CORPORATION, )
                                       )
     Defendant.                        )

              Deposition of DAWN M. HAUCK taken pursuant
to notice at the law offices of Potter Anderson &
Corroon, Hercules Plaza, 6th Floor, Wilmington, Delaware,
beginning at 11:30 a.m., on Thursday,
March 2, 2006, before Kimberly A. Hurley, Registered
Merit Reporter and Notary Public.

APPEARANCES:

          TIMOTHY J. WILSON, ESQUIRE
          MARGOLIS EDELSTEIN
            1509 Gilpin Avenue
            Wilmington, Delaware 19806
            for the Plaintiffs

          LARRY R. SEEGULL, ESQUIRE
          DLA PIPER RUDNICK GRAY CARY US LLP
            6225 Smith Avenue
            Baltimore, Maryland 21209-3600
            for the Defendant


              WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
                (302) 655-0477



**WILCOX & FETZER LTD.**
Registered Professional Reporters

900

1    nonmonetary.

2        Q.    Could be simply a certificate of sorts?

3        A.    Correct.

4        Q.    Or a plaque?

5        A.    Certificate.

6        Q.    Any other awards or honors or any other

7    recognition that you have ever received?

8        A.    Similar type of recognition while I was also a

9    DuPont employee.

10       Q.    Anything else?

11       A.    No.

12       Q.    By the way, when you received the notification

13   that you were no longer eligible for AMIP in September of

14   2003, you knew as of that point in time you would not get

15   any AMIP bonus for fiscal year 2004?

16       A.    That's what the letter read.

17       Q.    That's what you understood?

18       A.    That's what I understood.

19       Q.    That's what happened.  You did not receive any

20   AMIP bonus for that fiscal year, correct?

21       A.    We understood that the program was being

22   retroactively removed dated back to April 1st, which was

23   the beginning of the fiscal year.

24       Q.    Just as you understood, you did not receive any

# EXHIBIT 14

2004 U.S. Dist. LEXIS 17896, *

EDWIN GONZALEZ, DONNA ANN MINOR, KARA PIETROWICZ and ALBERINA ZIEMBA, Plaintiffs, v. COMCAST CORPORATION, a Pennsylvania corporation, COMCAST CABLEVISION OF WILLOW GROVE, a Pennsylvania corporation, COMCAST CABLE COMMUNICATIONS, INC., a Delaware corporation, SUZANE KEENAN, ALLEN R. PEDDRICK, RICHARD GERMANO, JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL CALHOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MCGOWAN, VINCENT JOHNSON, and MICHAEL A. DOYLE, Defendants.

Civil Action No. 03-445-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 17896

August 25, 2004, Decided

**SUBSEQUENT HISTORY:** Motion denied by Gonzalez v. Comcast Corp., 2004 U.S. Dist. LEXIS 21868 (D. Del., Oct. 19, 2004)

**PRIOR HISTORY:** Gonzalez v. Comcast Corp., 2004 U.S. Dist. LEXIS 14989 (D. Del., July 30, 2004)

**DISPOSITION:** [*1] Plaintiffs' motion for leave to file second amended complaint denied.

**COUNSEL:** For EDWIN GONZALEZ, DONNA ANN, KARA PIETROWICZ, ALBERINA ZIEMBA, plaintiffs: Victor F. Battaglia, Sr., Biggs & Battaglia, Wilmington, DE.

For COMCAST CORPORATION, COMCAST CABLEVISION OF WILLOW GROVE, COMCAST CABLE COMMUNICATIONS, SUZANNE KEENAN, ALLEN R. PEDDRICK, RICHARD GERMANO, JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL CALHOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MACGOWAN, VINCENT JOHNSON, MICHAEL A. DOYLE, COMCAST CABLEVISION OF NEW CASTLE COUNTY LLC, defendants: Michael P. Kelly, McCarter & English, LLP, William M. Kelleher, Ballard, Spahr, Andrews & Ingersoll, LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

### OPINION: MEMORANDUM ORDER

On June 10, 2004, the plaintiffs filed a Motion for Leave to File a Second Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Docket Item ["D.I."] 165; the "Motion.") The plaintiffs seek to add Melanie Penna as a defendant (*id.* at 3) and to assert three additional claims based on Delaware state law, including claims for fraud and deceit (*id.* at 33-34), *prima facie* [*2] tort (*id.* at 34-

35), and civil conspiracy (*id.* at 35-37).

<sup>HN3</sup>Rule 16 of the Federal Rules of Civil Procedure provides that a pretrial scheduling order "shall not be modified except upon a showing of *good cause* and by leave of the district judge ...." Fed. R. Civ. P. 16(b) (emphasis added). A scheduling order was issued in this case on August 19, 2003 and required that all motions to join other parties and to amend or supplement the pleadings be filed on or before December 1, 2003. (D.I. 31 at 2.) The plaintiffs' Motion was filed on June 10, 2004, over seven months after that deadline. To grant the plaintiffs' Motion would also require substantial changes in other deadlines set forth in the scheduling order, including the trial date. Therefore, under Rule 16, the plaintiffs are required to show good cause why their Motion should be granted and such changes made.

The plaintiffs make several arguments in support of their Motion. None of them, however, establishes or even attempts to establish the good cause required for modifying the deadlines in the scheduling order. "Properly construed, 'good **[*3]** cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Co. V. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997), aff'd 129 F.3d 116 (4th Cir. 1997)* (citing 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1 at 230-31 (2d ed. 1990)). Instead of focusing on why, despite diligent effort, plaintiffs could not have asserted their motion at an earlier time, within the scheduling order guidelines, the plaintiffs focus on why they believe the defendants will not be unduly prejudiced if their Motion is granted (D.I. 173 at 1-7) and why adding three more state law claims is not futile (D.I. 173 at 7-9). These arguments do not establish good cause, as defined above, for this remarkably late motion for leave to amend.

The untimeliness of the plaintiffs' Motion is also emphasized by the fact that I have already ruled on a summary judgment motion made by the defendants. (D.I. 185.) Granting the plaintiffs' Motion, which was filed after the discovery deadline and only three months before the joint proposed final pretrial order is due on September 22, 2004 (D. **[*4]** I. 188 at 1) would indeed be unduly prejudicial to the defendants.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' Motion (D.I. 165) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware

August 25, 2004