## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BRIAN MILLER; HECTOR CALDERON;** | : |
| **CHARLES FOLWELL; ROLLAND GREEN;** | : |
| **DAWN M. HAUCK; KEVIN KEIR;** | : |
| **ASHBY LINCOLN; KAREN MASINO;** | : |
| **ROBERT W. PETERSON; SUSAN M. POKOISKI;** | : |
| **DAN P. ROLLINS; and WILLIAM SPERATI,** | : **C.A. No. 05-010-JJF** |
| | : |
| **Plaintiffs,** | : **JURY TRIAL DEMANDED** |
| | : |
| **v.** | : |
| | : |
| **COMPUTER SCIENCES CORPORATION,** | : |
| **a Delaware Corporation,** | : |
| | : |
| **Defendant.** | : |

### PROPOSED JOINT PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16, Federal Rules of Civil Procedure.

**Plaintiffs' Counsel:**
Jeffrey K. Martin, Esq.
Timothy, J. Wilson, Esq.
MARGOLIS EDELSTEIN
1509 Gilpin Ave.
Wilmington, DE 19806
Telephone (302) 777-4680
Facsimile (302) 777-4682
twilson@margolisedelstein.com

**Defendant(s) Counsel:**
Sarah E. DiLuzio (#4085)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Larry R. Seegull (admitted pro hac vice)
Linda M. Boyd (admitted pro hac vice)
DLA PIPER RUDNICK GRAY CARY U.S. LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@piperrudnick.com

## I.    Statement of the Nature of the Case:

**Plaintiffs:** This is a claim brought pursuant to the Delaware Wage Payment and Collection Act, 19 Del. C. §1101 et. seq.  Plaintiffs claim that they earned wages under a Defendant's bonus program entitled the Annual Management Incentive Program ("AMIP") during Fiscal Year 2004 until they were terminated from the program on or about September 11, 2003.  This termination was conducted retroactive to the beginning of the fiscal year, April 1, 2003.  Therefore, they claim CSC wrongfully withheld wages for the period April 1, 2003 through September 11, 2003 and that CSC had no reasonable grounds to do so.

**Defendants:**  Plaintiffs commenced this action against CSC on December 13, 2004 in the Superior Court for the State of Delaware.  In their Complaint, Plaintiffs allege one count of Violation of Delaware's Wage Payment and Collection Act ("DWPCA"), DEL. CODE. ANN. tit. 19, §§1101 et seq.  Plaintiffs each seek to recover a prorated portion of a year-end incentive bonus.  CSC contends that Plaintiffs' claim is barred by Delaware's one-year statute of limitations on actions for the "recovery of wages for work, labor or personal services performed." DEL. CODE. ANN. tit. 10, § 8111 (2005).  Further, CSC contends that Plaintiffs are not entitled to the incentive bonus they seek because they did not participate in CSC's bonus program for the relevant fiscal year and thus did not earn and are not entitled to any portion of a bonus under this program.

On January 10, 2006, CSC filed a Notice of Removal to the United States District Court for the District of Delaware (D.I. 1.), and on January 18, 2005, CSC filed an Answer denying the substantive allegations of the Complaint. (D.I. 3.)  On June 15, 2006, CSC filed a Motion for Leave To File Amended Answer to include the statute of

2

limitations set forth by Section 8111 of the Delaware Code as an affirmative defense. Plaintiffs opposed this motion on June 30, 2006, claiming that CSC has waived its right to amend the pleadings because the statute of limitations defense was not raised prior to CSC's motion for summary judgment. This motion is still pending.

No counterclaims or cross-claims have been brought in this action.

## II. Jurisdiction:

Federal jurisdiction in this matter is based on the complete diversity of the parties. 28 U.S.C. § 1332. At all material times, Plaintiffs are and were citizens and residents of Delaware, Pennsylvania, Oklahoma or West Virginia. At all material times, Computer Sciences Corporation has been incorporated in Nevada, and not in Delaware, Pennsylvania, Oklahoma or West Virginia, and has maintained its headquarters and principal place of business in California, and not in Delaware, Pennsylvania, Oklahoma or West Virginia. Additionally, this is a civil action in which the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. This lawsuit was properly removed to this Court from the Superior Court for the State of Delaware pursuant to 28 U.S.C. § 1441. Jurisdiction is not disputed.

## III. Statement of Uncontroverted Facts:

1. Defendant, Computer Sciences Corporation (hereinafter, "CSC"), is, and at all times relevant to this action was, a Nevada corporation duly organized and existing under the laws of the Nevada.

2. Plaintiffs were employed by CSC in Manager or Senior Manager positions, or their technical equivalents, during Fiscal Year 2004.

3.      CSC is an information technology ("IT") services company that provides outsourcing of IT services to clients worldwide.

4.      Outsourcing is the practice of turning over operational and management responsibilities for a business' IT systems to an outside firm.

5.      In 1983, CSC created an incentive compensation program known as the Annual Management Incentive Program ("AMIP").

6.      Under the program, AMIP participants are eligible to receive up to a specified percent of their base salary as a bonus after the close of the fiscal year.

7.      CSC's fiscal year runs from April 1 through March 31.   For example, Fiscal Year 2004 ran from April 1, 2003 through March 31, 2004.

8.      All but one of the Plaintiffs became CSC employees at-will in June of 1997 via an outsourcing arrangement with E. I. DuPont De Nemours & Company ("DuPont").

9.      These Plaintiffs were all employed by DuPont when DuPont outsourced the operation and management of its IT systems to CSC.

10.      When the outsourcing deal was finalized in June of 1997, these Plaintiffs were transitioned to CSC and became CSC employees in CSC's Chemical Group.

11.      Some Plaintiffs became participants in AMIP for Fiscal Year 1998 ("FY98") upon their transfer to CSC.

IV.    **Statement of Facts That Remain at Issue:**

   A.    **Plaintiffs' Statement of Facts That Remain At Issue:**

1.      Prior to April 1, 2003, the date of the beginning of the fiscal year, Plaintiffs were each eligible for, and received the Annual Management Incentive Program

4

(hereinafter "AMIP"), wherein such eligibility was communicated to each Plaintiff in writing and relied upon by each Plaintiff as part of his or her salary. (Comp. at 3).

2.    The AMIP bonus provided at least ten percent (10%) of each Plaintiff's annual compensation. (Comp. at 3).

3.    This AMIP bonus was compensation earned by each of the Plaintiffs. (Comp. at 3).

4.    At the beginning of each year, under the terms of the AMIP program, some form of communication to the AMIP participants is required to inform them as to whether or not they will continue in the AMIP program for the upcoming fiscal year. (Answering Br. to Motion for SJ at 5).

5.    The course and practice of CSC was however, in direct contravention of this policy.  Namely, that such communication was only made to employees who were being removed at the beginning of the fiscal year and rarely, if ever made to continuing participants.  In other words, it became the business practice at CSC for employees who are not instructed that they have been eliminated from the program at the beginning of the fiscal year to remain in the AMIP program for that fiscal year. (Answering Br. to Motion for SJ at 5).

6.    During the 2003 fiscal year each Plaintiff continued to perform his or her duties in accordance with the criteria required to receive his or her AMIP bonus. (Comp. at 3).

7.    At some point in September of 2003, each Plaintiff was notified by CSC that he or she would no longer be eligible for participation in the AMIP program for the fiscal year, *retroactive* to April 1, 2003.  (Comp. at 4).

8.    Each Plaintiff was informed that he or she *may* be eligible for an alternative bonus. (Comp. at 4).

9.    Prior to the September AMIP termination announcement, CSC advised no Plaintiff of his or her ineligibility for, or that he or she would no be receiving his or her yearly AMIP bonus. (Comp. at 4).

10.    The elimination of the AMIP bonuses from the Plaintiffs employees was an improper withholding of earned income from the Plaintiffs and conducted without reasonable grounds. (Comp. at 4).

11.    Employees who are not a part of the program for the entire fiscal year earn an AMIP bonus that is pro-rated based upon the number of months that they contribute to the program objectives. (Answering Br. to Mtn for SJ at 4).

12.    Throughout 2003, up until the September AMIP termination announcement, each Plaintiff planned on receiving and relied upon their AMIP compensation to provide a substantial portion of his or her annual compensation. (Comp. at 4).

13.    AMIP bonuses were paid to none of the Plaintiffs at the conclusion of the fiscal year on March 31, 2004. Furthermore, there were no other bonuses paid out to any of the Plaintiff that would have compensated the Plaintiff's for their withheld AMIP bonuses. (Comp. at 4).

14.    CSC improperly withheld the AMIP bonus of each of the Plaintiffs for the period April 1, 2003 through and including the time of CSC's notice to each Plaintiff in September 2003. (Comp. at 5).

15.    By letter dated January 16, 2004, the undersigned counsel for Plaintiffs advised CSC's General Counsel and Secretary, that the law prohibits the withdrawal of an earned bonus. (Comp. at 4).

16.    CSC's General Counsel and Secretary were also notified that Delaware law allows for the doubling of earned income that is improperly withheld by the employer, as well as the imposition of attorneys' fees. (Comp. at 4).

### B.    Defendant's Statement of Facts That Remain At Issue[1]:

Defendant reserves the right to modify the following submission, based upon the Court's ruling on the pending summary judgment motion and/or in the interests of justice.

1.    Often, outsourcing is accomplished by transitioning the IT employees from the client company to CSC.

2.    The percent actually received by each participant, if any, is based upon achieving a combination of various corporate, business unit, group and/or individual performance objectives set for each fiscal year.

3.    CSC measures the degree to which these objectives have been met at the close of the fiscal year.

4.    If all of the objectives are achieved, an AMIP participant generally receives the specified potential percent of their base salary as an AMIP bonus.

5.    The greater or lesser achievement of objectives results in a scaled percentage of the targeted AMIP bonus.

---

[1] Currently pending before the Court is Defendant's Motion for Summary Judgment, filed May 24, 2006, which has been fully briefed. (D.I. 97, 98, 99, 100, 101, 102, 107, 108.) Defendant continues to believe that no genuine issues of material fact are in dispute, and that, accordingly, summary judgment is appropriate.

6.    AMIP is intended to incentivize and reward upper-level management with year-end bonuses.

7.    Upper level management has traditionally included Presidents (Salary Level 09 – "S09"), Vice Presidents (Salary Level 08 – "S08") and some Directors (Salary Level 07 – "S07").

8.    Over time, AMIP participation expanded beyond CSC's original intent.

9.    This expansion resulted from CSC's absorption of large groups of new employees from clients in connection with outsourcing deals.

10.    As a result, the application of AMIP became inconsistent across the company as some S05 and S06 employees were allowed to participate in AMIP while others were not.

11.    Consequently, the ever increasing AMIP pool no longer reflected CSC's original intent for the AMIP program as many lower level management and non-management employees were sporadically admitted to the program.

12.    Regardless of whether employees became AMIP participants as upper-level management or lower-level management, CSC never promised or guaranteed ongoing participation in AMIP.

13.    Indeed, Plaintiffs admit that there were no guarantees.

14.    Employees are "made eligible to participate in AMIP based on anticipated superior contributions to the successful achievement of business objectives" as well as their "job scope and impact of decisions to the success of the business."

15.    CSC never promised or guaranteed ongoing participation in AMIP.

16.    Participation in AMIP endures for only one fiscal year.

17.    CSC's policy states that "[a]ll incentive/variable compensation programs are reviewed annually and may be modified or discontinued based on the Chemical Group's financial capability and business requirements."

18.    After the close of each fiscal year, CSC reviews employee participation in AMIP and removes employees as appropriate.

19.    CSC regularly removes employees from AMIP for business reasons.

20.    CSC's compensation policies are available to employees on the corporate Internet and are distributed in printed form and via email.

21.    The guiding compensation policies for the Chemical Group, of which all Plaintiffs were a part, are found in the Chemical Group North American Compensation Programs Employee Total Reward Guide ("Employee Total Reward Guide") and the Chemical Group North American Compensation Programs Manager Total Reward Guide ("Manager Total Reward Guide").

22.    The former was available to all Chemical Group employees, while the latter was provided to all Chemical Group employees who supervised other employees within the Chemical Group.  (A432.)

23.    These guides described the AMIP details and participation criteria for all Chemical Group employees for FY03.

24.    AMIP bonuses are based on achieving a combination of various corporate, business unit, group and/or individual performance objectives set for each fiscal year.

25.    The objectives for a given year might include such metrics as revenue, operating income, earnings per share, and returns on investment, as well as individual financial and non-financial objectives.

26.    Each of these objectives is assigned a specific target number or similar goal towards which the employee is to strive.

27.    Likewise, each objective is weighted to reflect the employee's ability to impact certain objectives, and the achievement of the objectives is measured at the end of the fiscal year.

28.    The objectives, as well as their targets and weightings, change from year to year and from employee to employee.

29.    Each AMIP-eligible employee received individualized AMIP objectives, targets and goals.

30.    Because AMIP is based entirely on year-long objectives, CSC assesses whether an employee has achieved his or her designated objectives after the close of the fiscal year.

31.    Once the fiscal year ends, CSC spends several weeks determining how the company performed against the various objectives set forth on all AMIP worksheets.

32.    After these calculations are complete, AMIP bonuses for the now-past fiscal year are awarded as appropriate, typically in May or June of the new fiscal year.

33.    After performance for a recently concluded fiscal year has been measured and AMIP bonuses awarded, CSC then begins to set AMIP objectives, targets and weightings for the new fiscal year.

34.    These objectives, targets and weightings are communicated to employees at some point during the fiscal year, although there is no set timeframe for this communication.

35.     Typically, the objectives are communicated anywhere from August through October of the fiscal year.

36.     The communication of AMIP objectives, targets and weightings serves to notify employees that they are eligible for AMIP.

37.     CSC policy states that the communication of these objectives, targets and weightings serves to notify employees that they are eligible for AMIP: "**If you are eligible to participate in AMIP, your manager will supply you with a description of the program criteria and payout methodology.**"

38.     Accordingly, employees who are not provided the AMIP criteria and payout methodology cannot assume that they are eligible for AMIP for the fiscal year.

39.     Although incentive compensation was discussed with some transitioning DuPont employees before, during and after the transfer, these employees were never guaranteed or promised that they would be entitled to participate in AMIP throughout their career at CSC.

40.     Plaintiff Ashby Lincoln joined CSC as an at-will employee in October of 1998.

41.     These Plaintiffs were all classified as S05 or S06 employees, but were permitted to participate in AMIP when they transferred to CSC.

42.     Other Plaintiffs did not participate in AMIP until later in their tenure at CSC.

43.     All Plaintiffs were participants in AMIP for FY03, the year prior to their removal.

44.     All AMIP bonuses Plaintiffs had received in prior years had been calculated using AMIP-specific objectives, targets and weightings

45.    Fiscal Year 2003 was a difficult and disappointing year for CSC, as the Company missed many of its financial targets.

46.    To get the Company back on financial track, CSC implemented a number of substantial cost-saving measures consistent with its general operating model.

47.    Recognizing that AMIP had long since deviated from its original objective of incentivizing and rewarding only upper-level management, CSC decided to realign AMIP with this original intent, thereby reducing costs and fostering consistency across the company ("AMIP Realignment").

48.    CSC has the right to make business decisions to remain competitive, maximize profits and reduce costs.

49.    Additionally, the AMIP Realignment allowed CSC to layoff fewer employees than would otherwise have been necessary.  (A297; A414.)

50.    The consideration of the AMIP Realignment began early in FY04.

51.    After significant discussion among the leaders of CSC's business units, senior financial officers, and Human Resources employees about how best to implement the changes, CSC decided to limit AMIP participation for FY04 to the Director level (S07) and above.

52.    In addition, CSC reduced the maximum AMIP bonus that some Directors could receive.

53.    A few individuals who commanded the management and/or budget responsibility beyond that which their level indicated were also eligible to participate in AMIP.

54.    In total, several hundred employees were removed from AMIP for FY04 pursuant to the AMIP Realignment.

55.    Because all of the Plaintiffs were at S05 or S06, they were not eligible to participate in AMIP for FY04.

56.    CSC provided detailed instructions for informing relevant employees that they would not be participating in AMIP for FY04 as a result of the AMIP Realignment.

57.    Managers of such employees were instructed to speak with each employee individually as well as to give them a written letter to sign.

58.    Pursuant to these instructions, Plaintiffs spoke with their respective managers in September of 2003, and received a letter regarding the fact that they would not participate in AMIP for FY04.

59.    Plaintiffs were informed that they would have the opportunity to earn a discretionary bonus based on consideration of overall performance and contribution to the company.

60.    CSC employees cannot receive both a discretionary bonus and an AMIP bonus in the same fiscal year.

61.    Plaintiffs never received any communications regarding FY04 AMIP objectives, targets or weightings.

62.    The only thing Plaintiffs were ever told about the FY04 AMIP was that they were not eligible.

63.    As a result of CSC's September 2003 communications with Plaintiffs, both through conversations with their managers and through the September 11, 2003

letters, Plaintiffs understood at that time that they would receive no AMIP bonus whatsoever for FY04.

64.    Upper level management employees (S07 and above) received their AMIP objectives, targets and weightings after the September 2003 communications were made to Plaintiffs and the other S05 and S06 employees.

65.    The employees who remained AMIP-eligible in FY04 were more senior than any of the Plaintiffs and thus would have had different AMIP objectives, targets and goals.

66.    Plaintiff Karen Masino received a discretionary bonus in the amount of $10,000.

67.    Plaintiffs must estimate the prorated AMIP bonus to which they claim entitlement because they did not and do not know the objectives, targets and weightings upon which such a bonus would have been based had they been eligible.

68.    Because no FY04 AMIP objectives, targets and goals were created for Plaintiffs, neither they nor CSC have any way of knowing if these goals, whatever they might have been, would have been achieved at all.

## V.    Statement of Issues of Law:

### A.    Plaintiffs' Statement of Issues of Law:

Not applicable.

### B.    Defendant's Statement of Issues of Law:

Currently pending before the Court is Defendant's Motion for Summary Judgment, filed May 24, 2006, which has been fully briefed. (D.I. 97, 98, 99, 100, 101,

102, 107, 108.) Defendant reserves the right to modify the following submission, based upon the Court's rulings on the pending summary judgment motion and/or in the interests of justice.

1.    Are Plaintiffs claims barred by Delaware's one-year statute of limitations on actions for the "recovery of wages for work, labor or personal services performed," DEL. CODE. ANN. tit. 10, § 8111 (2005), because they each knew as of September of 2003 that they would receive no AMIP bonus for Fiscal Year 2004 ("FY04")? *E.g., Compass v. American Mirrex Corp.*, 72 F. Supp. 2d 462, 468 (D. Del. 1999); *Seitz v. The Siegfried Group, LLP*, 2001 Del. Super. LEXIS 364, at *6 (Del. Super. Oct. 2, 2001).

2.    Have Plaintiffs met their burden of proving by a preponderance of the evidence that they are entitled to any portion of an AMIP bonus for FY04 under the Delaware Wage Payment and Collection Act?

3.    Does the fact that Plaintiffs never received any AMIP objectives, goals or targets for FY04 show that they were never eligible for AMIP in FY04 and thus could not have earned any amount of an AMIP bonus for that year?

4.    Does the fact that Plaintiffs never received any AMIP objectives, goals or targets for FY04 show that Plaintiffs could not have been working towards the achievement of such objectives, goals and targets and thus could not have earned any amount of an AMIP bonus for that year?

5.    Does the fact that Plaintiffs could not and cannot now calculate what they would have earned as an FY04 AMIP bonus because they never received any AMIP objectives, goals or targets for FY04 show that Plaintiffs are not entitled to any amount of an AMIP bonus for FY04?

6.     Assuming *arguendo* that Plaintiffs were eligible for FY04 AMIP, are they entitled to any portion of an AMIP bonus when earning an AMIP bonus is based on the achievement of objectives that are measured at the close of the fiscal year and none of the Plaintiffs were enrolled in AMIP at that time?

7.     Assuming *arguendo* that Plaintiffs are entitled to some portion of an AMIP bonus for FY04, on what basis are the bonus amounts to be calculated and prorated when Plaintiffs never received any AMIP objectives, goals or targets for FY04 and were not enrolled in AMIP at the close of FY04?

8.     Assuming *arguendo* that Plaintiffs are entitled to some portion of an AMIP bonus for FY04, should the amount of each Plaintiff's AMIP bonus recovery be reduced by the amount the discretionary bonus received by that Plaintiff for FY04, if any?

9.     Assuming *arguendo* that Plaintiffs are entitled to some portion of an AMIP bonus for FY04, have Plaintiffs met their burden of proving by a preponderance of the evidence that CSC had no reasonable grounds for disputing that Plaintiffs were entitled to a portion of an AMIP bonus for FY04? DEL. CODE. ANN. tit. 19, § 1103(b) (2005).

## VI.    List of Premarked Exhibits:

### A.    Joint Exhibits

| Joint Exhibit | Description |
|---|---|
| JX1 | September 11, 2003 letters to Plaintiffs regarding FY04 AMIP: (Miller 113, Miller 120, Miller 201, Miller 274, Miller 462, Miller 546, Miller 548, Miller 550, D-10057, Deposition Exhibit 21/D-11869) |
| JX2 | Internal transfer letters for Plaintiffs (Miller 124-125, Miller 268, Miller 553) |

| JX3 | Plaintiffs' FY03 AMIP Worksheets (Miller 004-Miller 005, Miller 272-Miller 273, Miller 254-255, Miller 399, Miller 459-460, Miller 551-552, D-10168-D-10181, D-10184-D-10187, D-10231-D-10232, D-10461) |
|-----|-----|
| JX4 | Plaintiffs' FY02 AMIP Worksheets (Miller 003, Miller 252, Miller 265, Miller 448 , Miller 554) |
| JX5 | FY2003 Total Rewards Strategy –Employee Guide (D-10370-10386) |
| JX6 | Chemical Group Compensation Programs North America Employee's Guide for April 1, 2001 – March 31, 2002 (D-10462- 10484) |
| JX7 | FY 2000 Chemical & Energy Group Manager's Guide to Annual Management Incentive Plan (Miller 087-091) |
| JX8 | FY99 AMIP Program Documentation dated July 26, 1998 (Miller 084-086) |

### B.    Plaintiffs Exhibits

Plaintiff reserves the right to use as an exhibit any or all of the exhibits designated by Defendant as exhibits (subject to the objections filed by Plaintiff, any pleading or written discovery response or any deposition transcript or portion thereof, summary exhibits as provided for under Fed. R. Evid. 1006, demonstrative or illustrative exhibits, and such exhibits as are necessary for purposes of rebuttal.  Plaintiff also reserves the right to enlarge for trial any and all exhibits (or portions thereof).

| Plaintiffs' Exhibit Number | Description | Defendant's Basis for Objection | Plaintiffs' Response to Objection |
|-----|-----|-----|-----|
| PX 1 | March 7, 1997 letter to Brian Miller from Dorothy Eltzroth (Miller 001) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX 2 | Payment Statement for Brian Miller for pay period 05/10/2003-05/23/2003 (D-11529) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX 3 | Payment Statement for Brian Miller for pay period | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE |

| | | | |
|---|---|---|---|
| | 05/11/2002-05/24/2002 (D-11502) | | 803), residual exception (FRE 807). |
| .PX 4 | Payment Statement for Brian Miller for pay period 04/28/2001-05/11/2001 (D-11474) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX5 | March 7, 1997 offer letter to Karen Masino for employment from Dorothy Eltzroth (Deposition Exhibit 13) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX 6 | September 9, 2003 email cc to Karen Masino from Robert Tattle in response to group letter regarding removal from AMIP. (Miller 114- 116) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801), residual exception (807). |
| PX 7 | December 11, 2002 email to Karen Masino from Van Athanas re: AMIP weightings and targets. (Miller 270) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801), residual exception (807). |
| PX8 | Payment Statement for Karen Masino for pay period 4/28/2001-05/11/2001 (D-10903) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX9 | Payment Statement for Karen Masino for pay period 05/11/2002-05/24/2002 (D-10931) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX10 | Payment Statement for Karen Masino for pay period 05/10/2003-05/26/2003 (D-10958) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |

| | | | |
|---|---|---|---|
| PX11 | March 17, 1997 offer letter to William Sperati for employment from Dorothy Eltzroth (Deposition Exhibit 1) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX12 | November 25, 2003 email from William Sperati to William Cummings and Deborah Cebula re: reason for not signing September 11, 2003 letter. (D-10058- D-10059) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX13 | December 5, 2003 letter to CSC employees impacted by September 11, 2003 letter from anonymous re: attorney contacts. (Miller 544) | Relevance (FRE 402), hearsay (FRE 802) and authentication (FRE 901). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX14 | December 9, 2003 email from Charles Folwell to William Sperati and Deborah Cebula with caption "AMIP Changes Potential Lawsuit. (D-10640) | Relevance (FRE 402), hearsay (FRE 802), authentication (FRE 901); incomplete; best evidence rule (FRE 1002). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX15 | William Sperati calculations during his deposition of his damages. (Deposition Exhibit 6) | Relevance (FRE 402); cumulative and unfairly prejudicial (FRE 403) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX16 | March 7, 1997 offer letter to Daniel Rollins for employment from Dorothy Eltzroth (Deposition Exhibit 7) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX17 | Daniel Rollins' calculations during his depositions of his | Relevance (FRE 402); cumulative and unfairly | Relevant (FRE 402), hearsay exception (FRE |

|  | damages. (Deposition Exhibit 9) | prejudicial (FRE 403) and hearsay (FRE 802). | 803), residual exception (807). |
|---|---|---|---|
| PX18 | Payment Statement for Daniel Rollins for pay period 04/23/2001 − 05/11/2001 (D-10739) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX19 | Payment Statement for Karen Masino for pay period 05/10/2003-05/23/2003 (D-10794) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX20 | Payment Statement for Karen Masino for pay period 05/11/2002-05/24/2002 (D-10767) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX21 | September 18, 1998 letter to Ashby Lincoln from Scott North re: acceptance of employment. (Deposition Exhibit 46) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801), residual exception (807). |
| PX22 | Payment Statement for Ashby Lincoln for pay period 04/28/2001-05/11/2001 (D-10985) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX23 | Payment Statement for Ashby Lincoln for pay period 05/11/2002-05/24/2002 (D-11013) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX24 | Payment Statement for Ashby Lincoln for pay period 05/10/2003 - 05/23/2003   (D-11040) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |

| PX25 | March 7, 1997 offer letter to Robert Peterson for employment from Dorothy Eltzroth (Deposition Exhibit 20) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
|---|---|---|---|
| PX26 | Payment Statement for Robert Peterson for pay period 04/28/2001-05/11/2001 (D-11146) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX27 | Payment Statement for Robert Peterson for pay period 05/11/2002-05/24/2002 (D-11174) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX28 | Payment Statement for Robert Peterson for pay period 05/10/2003-05/23/2003 (D-11201) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX29 | March 7, 1997 offer letter to Hector Calderon for employment from Dorothy Eltzroth (Miller 549) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX30 | March 7, 1997 offer letter to Dawn Hauck for employment from Dorothy Eltzroth (Miller 122) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX31 | March 10, 2000 letter to Dawn Hauck re: reassignment from Marianne Kane (Miller 123 | Relevance (FRE 402) | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801), residual exception (807). |
| PX32 | AMIPs Loss Calculation for Dawn Hauck (Miller 121) | Relevance (FRE 402); cumulative and unfairly prejudicial (FRE | Relevant (FRE 402), hearsay exception (FRE 803), residual |

| | | | |
|---|---|---|---|
| | | 403) and hearsay (FRE 802). | exception (807). |
| PX33 | December 11, 2002 email to Dawn Hauck from Van Athanas re: AMIP weightings and targets. (Miller 256) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801), residual exception (807). |
| PX34 | Payment Statement for Dawn Hauck for pay period 04/28/2001-05/11/2001 (D-11392) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX35 | Payment Statement for Dawn Hauck for pay period 05/25/2002-06/07/2002 (D-11421) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX36 | Payment Statement for Dawn Hauck for pay period 05/10/2003-05/23/2003 (D-11447) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX37 | March 7, 1997 offer letter to Susan Pokoiski for employment from Dorothy Eltzroth. (Deposition Exhibit 24) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX38 | US CG GIS FY04 Objectives- Initial List Developed 1/8/2003 (Miller 389-398) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX39 | Payment Statement for Susan Pokoiski for pay period 05/12/2001-05/25/2001 (D-10658 | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX40 | Payment Statement for Dawn Hauck for | Relevance (FRE 402) and hearsay | Relevant (FRE 402), hearsay |

| | pay period 05/11/2002-05/24/2002 (D-10685 | (FRE 802). | exception (FRE 803), residual exception (FRE 807). |
|---|---|---|---|
| PX41 | Payment Statement for Dawn Hauck for pay period 05/10/2003-05/23/2003 (D-10712 | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX42 | March 7, 1997 offer letter to Charles Folwell Jr. for employment from Dorothy Eltzroth (Deposition Exhibit 39) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX43 | December 4, 2003 email from Charles Folwell Jr. to William Cummings re: reason for not signing September 11, 2003 letter. (D-10053) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX44 | May 18, 2004 anonymous fax from initialed individual EWD re: Report of Unethical Behavior. (Deposition Exhibit 42 | Relevance (FRE 402); hearsay (FRE 802) and authentication (FRE 901). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX45 | Payment Statement for Charles Folwell Jr. for pay period 04/28/2001-05/11/2001 (D-11064) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX46 | Payment Statement for Charles Folwell Jr. for pay period 05/11/2002-05/24/2002 (D-11092) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX47 | Payment Statement for Charles Folwell Jr. for pay period | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE |

| | | | |
|---|---|---|---|
| | 05/10/2003-05/23/2003 (D-11119 | | 803), residual exception (FRE 807). |
| PX48 | March 7, 1997 offer letter to Kevin Keir for employment from Dorothy Eltzroth (Deposition Exhibit 33) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801). |
| PX49 | February 25, 1997 Interoffice Memorandum from Barry Day re: Variable Compensation at CSC (Miller 452) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), non-hearsay (FRE 801), residual exception (807). |
| PX50 | AMIP Withdrawal estimate and calculation by Kevin Keir dated October 9, 2005. ( Miller 447) | Relevance (FRE 402); cumulative and unfairly prejudicial (FRE 403) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (807). |
| PX51 | Payment Statement for Kevin Keir for pay period 04/28/2001-05/11/2001 (D-11228 | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX52 | Payment Statement for Kevin Keir for pay period 05/11/2002-05/24/2002 (D-11256 | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX53 | Payment Statement for Kevin Keir for pay period 05/10/2003-05/23/2003 (D-11283) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant (FRE 402), hearsay exception (FRE 803), residual exception (FRE 807). |
| PX54 | Defendant's Answers to Plaintiffs' First Set of Interrogatories Directed to Defendant, Interrogatory and | | |

| | Response #7 | | |
|---|---|---|---|

## C.    Defendant's Exhibits

Defendant reserves the right to use as an exhibit any or all of the exhibits designated by Plaintiffs as exhibits (subject to the objections filed by Defendant), any pleading or written discovery response or any deposition transcript or portion thereof, summary exhibits as provided for under Fed. R. Evid. 1006, demonstrative or illustrative exhibits, and such exhibits as are necessary for purposes of rebuttal.    Defendant also reserves the right to enlarge for trial any and all exhibits (or portions thereof).

| Defendant's Exhibit Number | Description | Plaintiff's Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| DX1 | Discretionary Bonus Justification Form for Karen Masino (D-10050) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant to AMIP Realignment decision and Plaintiffs' damages (FRE 401 & 402); hearsay exception (FRE 803). |
| DX2 | June 12, 2003 email from Gus Siekierka to Russ Owen ,Mary Jo Morris, Tony Doye and others (D-10155-D-10156) | Relevance (FRE 402) and hearsay (FRE 802). | Relevant to AMIP Realignment decision (FRE 401 & 402); hearsay exception (FRE 803). |
| DX3 | Correspondence regarding FY04 AMIP Realignment (D-10206-D-10209, D-10241-D-10242, D-10250-D-10251, D-10210-D-10214, D-10219-D-10222, 10260-D-10261, 10105-10107, D-10112-D-10115, D-10116-D-10129, D-10322-D-10334, D-10130-D-10144, D- | Relevance (FRE 402), confusion and waste of time (FRE 403), and hearsay (FRE 802). | Relevant to AMIP Realignment decision (FRE 401 & 402); hearsay exception (FRE 803); probative value substantially outweighs danger of confusion or waste of time (FRE 403). |

|  | 10293-D-10295, D-10553-D-10555, D-10188-D-10190, D-10204-D-10205, D-10620-10623, D-10298-D-10303, D-10145-D-10147) |  |  |
|---|---|---|---|
| DX4 | July 31, 2003 emails from Gus Siekierka to various people (D-10116-D-10129, D-10322-D-10334, D-10130-D-10144) | Relevance (FRE 402), confusion and waste of time (FRE 403) and hearsay (FRE 802). | Relevant to AMIP Realignment decision (FRE 401 & 402); hearsay exception (FRE 803); probative value substantially outweighs danger of confusion or waste of time (FRE 403). |
| DX5 | Chemical Group - FY03 Manager Total Rewards Guide (D-10348-D-10369) | Relevance (FRE 402), hearsay (FRE 802) and authentication (FRE 901). | Relevant to AMIP Realignment decision (FRE 401 & 402); hearsay exception (FRE 803); can be authenticated at trial and was authenticated through the testimony of a witness (FRE 901(b)(1)). |
| DX6 | Chemical Group – Compensation Programs North America - Manager's Guide- April 1, 2001-March 31, 2002 (D-10485-D-10552) | Relevance (FRE 402), hearsay (FRE 802) and authentication(FRE 901). | Relevant to AMIP Realignment decision; hearsay exception (FRE 803); can be authenticated at trial (FRE 901(b)(1)). |
| DX7 | FY2001 Chemical Group Guide to AMIP (Miller 092-Miller 098) | Relevance (FRE 402), hearsay (FRE 802) and authentication (FRE 901).. | Relevant to AMIP Realignment decision; hearsay exception (FRE 803); can be authenticated at trial (FRE 901(b)(1)). |
| DX8 | CSC's Interrogatory No. 1 to Susan |  |  |

| | | | |
|---|---|---|---|
| | Pokoiski, and Ms. Pokoiski's answer thereto | | |
| DX9 | CSC's Interrogatory No. 1 to Ashby Lincoln, and Mr. Lincoln's answer thereto | | |
| DX10 | CSC's Interrogatory No. 1 to Brian Miller, and Mr. Miller's answer thereto | | |
| DX11 | CSC's Interrogatory No. 1 to Kevin Keir, and Mr. Keir's amended answer thereto | | |
| DX12 | CSC's Interrogatory No. 1 to Kevin Keir, and Mr. Keir's answer thereto | | |
| DX13 | CSC's Interrogatory No. 1 to William Sperati, and Mr. Sperati's answer thereto | | |
| DX14 | CSC's Interrogatory No. 1 to Hector Calderon, and Mr. Calderon's answer thereto | | |
| DX15 | CSC's Interrogatory No. 1 to Dawn Hauck, and Ms. Hauck's answer thereto | | |
| DX16 | CSC's Interrogatory No. 1 to Karen Masino, and Ms. Masino's answer thereto | | |
| DX17 | CSC's Interrogatory No. 1 to Charles Folwell, and Mr. Folwell's answer thereto | | |
| DX18 | CSC's Interrogatory | | |

| | | | |
|---|---|---|---|
| | No. 1 to Daniel Rollins, and Mr. Rollins' answer thereto | | |
| DX19 | CSC's Interrogatory No. 1 to Robert Peterson, and Mr. Peterson's answer thereto | | |
| DX18 | Fee Agreement letter between Karen Masino and Jeffrey K. Martin, P.A. dated January 16, 2004. (Deposition Exhibit 19) | Relevance (FRE 402) unfairly prejudicial and hearsay (FRE 802). | Relevant to statute of limitations issue and Plaintiffs' damages (FRE 401 & 402); probative value substantially outweighs danger of unfair prejudice (FRE 403); can be authenticated at trial and was authenticated through testimony of a witness (FRE 901(b)(1)). |

## VII.    List of Witnesses:

### A.    List of witnesses the plaintiff expects to call, including experts:

1.    Expert witnesses:  None.

2.    Non-expert witnesses.

    a.    Brian Miller, 519 Riblett Lane, Wilmington, Delaware, 19808.

    b.    Hector Calderon, 7 Iona Ct., Bear, Delaware, 19701.

    c.    Charles Folwell, 2411 Marilyn Dr. Wilmington, Delaware, 19801.

    d.    Dawn Hauck, 155 Cornwell Dr., Bear, Delaware, 19701.

    e.    Kevin Keir, 3315 Heritage Dr., Wilmington, Delaware 19808.

f.     Ashby Lincoln, 6731 Blanch Dr. Lorton VA 22079.

g.     Karen Masino, 420 W. 22nd St. Apt. 1, Wilmington, Delaware, 19802.

h.     Robert Peterson, 2817 Lexington Way, Edmond, Oklahoma, 73993.

i.     Sue Pokoiski, 738 Massey Church Road, Smyrna, Delaware, 19977.

j.     Dan Rollins, 5335 Westbrook Dr., Cross Lanes, West Virginia.

k.     William Sperati. 107 Wayland Rd., Wilmington, Delaware, 19807.

l.     Dorothy Eltzroth, 219 Thomas Jefferson Terrace, Elkton, MD 21921

m.    James Styles, 105 D Cherry Parke, Cherry Hill, NJ

n.     Russ Owens, 9501 Atwood Rd, Vienna, VA 22182

o.     Mary Jo Morris, address unknown (refused to disclose at deposition)

p.     Nick Wilkinson, 4 Squirrel Run, Greenville, DE 19807

Plaintiff reserves the right to call any rebuttal witnesses and any witnesses identified on Defendant's witness list without prior notice.

**B.     List of witnesses the defendant expects to call, including experts:**

1.     Expert witnesses: None.

2.     Non-expert witnesses.

a.     Plaintiffs

b.     Monique Burton
       Computer Sciences Corporation
       400 Commerce Drive

Newark, DE   19713

c.   Tony Doye
     Computer Sciences Corporation
     3170 Fairview Park Drive, MC 244
     Falls Church, VA  22042

d.   Dorothy Eltzroth
     Computer Sciences Corporation
     400 Commerce Drive, MC 1SA1
     Newark, DE  19713

e.   Sonia Koplowicz
     Computer Sciences Corporation
     400 Commerce Drive, MC 1SAR
     Newark, DE  19713
     ~or~
     Computer Sciences Corporation
     3170 Fairview Park Drive
     Falls Church, VA  22042

f.   Henry M. ("Marty") Leidemer
     Computer Sciences Corporation
     3170 Fairview Park Drive, MC 229 (Rm 602)
     Falls Church, VA  22042

g.   Mary Jo Morris
     Computer Sciences Corporation
     MC 672, VTC-C, Room 670
     3170 Fairview Park Drive
     Falls Church, VA  22042

h.   Russell Owen
     Computer Sciences Corporation
     Lancaster House, Farnborough Aerospace Centre
     Farnborough, Hampshire
     GU146YU UNITED KINGDOM

i.   Eugene "Gene" M.  Procopio
     Computer Sciences Corporation
     2100 E. Grand Avenue, MC A315
     El Segundo, CA   90245

j.   Gus Siekierka
     Computer Sciences Corporation
     2100 E. Grand Avenue, MC A115

El Segundo, CA   90245

Defendant reserves the right to call any rebuttal witnesses, any witnesses identified on Plaintiffs' witness list and such document custodians as may be necessary without prior notice.

      C.     Not applicable.

      D.     **Rebuttal Witnesses.**  Each of the parties may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

## VIII.  Statement of What Plaintiff Intends to Prove at Trial and Damages:

      A.     Plaintiffs will prove that CSC withheld wages earned by Plaintiffs in the form of their AMIP bonuses for FY 2004.  This withholding was wrongful and without a reasonable grounds.

      B.     Damages:  Each Plaintiff makes a claim for the withholding of wages listed below.  In addition, each makes a claim for liquidated damages for the wrongful withholding of wages their wages in an amount equal to, and in addition to the amounts listed below.  Any judgment on their behalf requires an awarding of reasonable costs and attorneys fees pursuant to § 1113, and a civil penalty of not less than $1,000 and not more that $5,000 pursuant to § 1112.

     1.  Brian Miller, $12,671.02.

     2.  Hector Calderon, $11,330.72.

     3.  Charles Folwell, Wilmington, Delaware, $12,298.23.

     4.  Dawn M. Hauck, Bear, Delaware, $10,510.70.

     5.  Kevin Keir Wilmington, Delaware, $8,977.69.

     6.  Ashby Lincoln Newark, Delaware, $10,038.44.

7.  Karen Masino Wilmington, Delaware, $12,903.53.

8.  Robert W. Peterson Edmond, Oklahoma, $15,043.38.

9.  Susan M. Pokoiski Smyrna, Delaware, $7,823.00.

10. Dan P. Rollins, Cross Lanes, West Virginia, $18,400.

11. William Sperati, Wilmington, Delaware, $15,667.86.

## IX.    Statement of What Defendant Intends to Prove as a Defense

Plaintiff's sole claim under the Delaware Wage Payment and Collection Act is barred by the one-year statute of limitations imposed by Section 8111 of the Delaware Code. DEL. CODE. ANN. tit. 10, § 8111 (2005).  Plaintiffs each knew and understood as of September of 2003 that they would not receive an AMIP bonus in any amount for Fiscal Year 2004 ("FY04"), but failed to file the present action until December 13, 2004. Accordingly, Plaintiffs' claim is time-barred.

Even assuming *arguendo* that the claim is not barred by the statute of limitations, which CSC disputes, Plaintiffs' claim still fails because they did not earn and are thus not entitled to any portion of an AMIP bonus for FY04.  First, Plaintiffs were never eligible to participate in the AMIP bonus program for FY04.   Plaintiffs recognized and understood that ongoing, indefinite participation in AMIP was not guaranteed. Moreover, *none* of the Plaintiffs received AMIP criteria and payout methodology for FY04, which served as the prerequisite for participation in AMIP per CSC's policy.

Second, it was impossible for Plaintiffs to earn any portion of an AMIP bonus without AMIP criteria and payout methodology, which provides the objectives, targets and weightings on which the earning and payment of an AMIP bonus is based.  Plaintiffs never had any goals towards which to work, nor did they or CSC have any way to

measure whether such (non-existent) goals were attained at the close of the fiscal year. Moreover, the award of AMIP bonuses is based solely on the achievement of objectives that are measured at the close of the fiscal year and it is undisputed that none of the Plaintiffs were enrolled in AMIP at that time. Accordingly, Plaintiffs did not earn and are not entitled to any portion of an AMIP bonus for FY04.

**X.     Statements by Counterclaimants or Cross-claimants**

Not applicable

**XI.    Amendments of Pleadings**

On June 15, 2006, CSC filed a Motion for Leave To File Amended Answer to include the statute of limitations set forth by Section 8111 of the Delaware Code as an affirmative defense. Plaintiffs opposed this motion on June 30, 2006, claiming that CSC has waived its right to amend the pleadings because the statute of limitations defense was not raised prior to CSC's motion for summary judgment. CSC submitted a reply brief on July 10, 2006. This motion is still pending

**XII.   Certification of Two-Way Communication**

The parties, by and through their counsel, have conferred regarding settlement, including participation in two mediations with Magistrate Judge Thynge on January 27, 2006 and June 26, 2006. Despite these efforts, the parties have been unable to come to a mutually agreeable resolution. Continued settlement discussions at this time are not likely to prove productive.

**XIII.  Conclusion:**

This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.

DATED: _____

_____
UNITED STATES DISTRICT JUDGE


APPROVED AS TO FORM AND
SUBSTANCE:

_/s/ Timothy J. Wilson_____
ATTORNEY FOR PLAINTIFFS
Jeffrey K. Martin, Esq.
Timothy, J. Wilson, Esq.
MARGOLIS EDELSTEIN
1509 Gilpin Ave.
Wilmington, DE 19806
Telephone (302) 777-4680
Facsimile (302) 777-4682
twilson@margolisedelstein.com

_/s/ David E. Moore_____
ATTORNEY FOR DEFENDANT
Sarah E. DiLuzio (#4085)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Larry R. Seegull (admitted pro hac vice)
Linda M. Boyd (admitted pro hac vice)
DLA PIPER RUDNICK
GRAY CARY U.S. LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)

(410) 580-3253 (fax)
larry.seegull@piperrudnick.com