# EXHIBIT A

Case 1:05-cv-00010-JJF    Document 115-2    Filed 07/10/2006    Page 1 of 16

LEXSEE

EDWIN GONZALEZ, DONNA ANN MINOR, KARA PIETROWICZ and ALBERINA ZIEMBA, Plaintiffs, v. COMCAST CORPORATION, a Pennsylvania corporation, COMCAST CABLEVISION OF WILLOW GROVE, a Pennsylvania corporation, COMCAST CABLE COMMUNICATIONS, INC., a Delaware corporation, SUZANE KEENAN, ALLEN R. PEDDRICK, RICHARD GERMANO, JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL CALHOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MCGOWAN, VINCENT JOHNSON, and MICHAEL A. DOYLE, Defendants.

Civil Action No. 03-445-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 17896

August 25, 2004, Decided

**SUBSEQUENT HISTORY:** Motion denied by Gonzalez v. Comcast Corp., 2004 U.S. Dist. LEXIS 21868 (D. Del., Oct. 19, 2004)

**PRIOR HISTORY:** Gonzalez v. Comcast Corp., 2004 U.S. Dist. LEXIS 14989 (D. Del., July 30, 2004)

**DISPOSITION:** [*1] Plaintiffs' motion for leave to file second amended complaint denied.

**COUNSEL:** For EDWIN GONZALEZ, DONNA ANN, KARA PIETROWICZ, ALBERINA ZIEMBA, plaintiffs: Victor F. Battaglia, Sr., Biggs & Battaglia, Wilmington, DE.

For COMCAST CORPORATION, COMCAST CABLEVISION OF WILLOW GROVE, COMCAST CABLE COMMUNICATIONS, SUZANNE KEENAN, ALLEN R. PEDDRICK, RICHARD GERMANO, JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL CALHOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MACGOWAN, VINCENT JOHNSON, MICHAEL A. DOYLE, COMCAST CABLEVISION OF NEW CASTLE COUNTY LLC, defendants: Michael P. Kelly, McCarter & English, LLP, William M. Kelleher, Ballard, Spahr, Andrews & Ingersoll, LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

On June 10, 2004, the plaintiffs filed a Motion for Leave to File a Second Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Docket Item ["D.I."] 165; the "Motion.") The plaintiffs seek to add Melanie Penna as a defendant (*id.* at 3) and to assert three additional claims based on Delaware state law, including claims for fraud and deceit (*id.* at 33-34), *prima facie* [*2] tort (*id.* at 34-35), and civil conspiracy (*id.* at 35-37).

Rule 16 of the Federal Rules of Civil Procedure provides that a pretrial scheduling order "shall not be modified except upon a showing of *good cause* and by leave of the district judge ...." Fed. R. Civ. P. 16(b) (emphasis added). A scheduling order was issued in this case on August 19, 2003 and required that all motions to join other parties and to amend or supplement the pleadings be filed on or before December 1, 2003. (D.I. 31 at 2.) The plaintiffs' Motion was filed on June 10, 2004, over seven months after that deadline. To grant the plaintiffs' Motion would also require substantial changes in other deadlines set forth in the scheduling order, including the trial date. Therefore, under Rule 16, the plaintiffs are required to show good cause why their Motion should be granted and such changes made.

The plaintiffs make several arguments in support of their Motion. None of them, however, establishes or even attempts to establish the good cause required for modifying the deadlines in the scheduling order. "Properly construed, 'good [*3] cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."

Page 1

*Dilmar Oil Co. V. Federated Mut. Ins. Co.,* 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd* 129 F.3d 116 (4th Cir. 1997) (citing 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1 at 230-31 (2d ed. 1990)). Instead of focusing on why, despite diligent effort, plaintiffs could not have asserted their motion at an earlier time, within the scheduling order guidelines, the plaintiffs focus on why they believe the defendants will not be unduly prejudiced if their Motion is granted (D.I. 173 at 1-7) and why adding three more state law claims is not futile (D.I. 173 at 7-9). These arguments do not establish good cause, as defined above, for this remarkably late motion for leave to amend.

The untimeliness of the plaintiffs' Motion is also emphasized by the fact that I have already ruled on a summary judgment motion made by the defendants. (D.I. 185.) Granting the plaintiffs' Motion, which was filed after the discovery deadline and only three months before the joint proposed final pretrial order is due on September 22, 2004 (D. [*4] I. 188 at 1) would indeed be unduly prejudicial to the defendants.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' Motion (D.I. 165) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware

August 25, 2004

# EXHIBIT B

Case 1:05-cv-00010-JJF    Document 115-2    Filed 07/10/2006    Page 4 of 16

LEXSEE

JOSEPH R. FALLON v. JOHN ASHCROFT, et al.

CIVIL ACTION NO. 00 CV 5258

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 12202

January 25, 2002, Decided
January 25, 2002, Filed; January 28, 2002, Entered

**SUBSEQUENT HISTORY:** Affirmed by Fallon v. Meissner, 2003 U.S. App. LEXIS 8277 (3d Cir. Pa., Apr. 30, 2003)

**DISPOSITION:** [*1] Defendant's Motion For Summary Judgment granted.

**COUNSEL:** For JOSEPH R. FALLON, PLAINTIFF: JACQUELINE M. VIGILANTE, LAW OFFICES OF JACQUELINE M. VIGILANTE, MULLICA HILL, NJ USA.

For JOHN ASHCROFT, ATTORNEY GENERAL, RESPONDENT: STEPHEN J. BRITT, U.S. ATTORNEY'S OFFICE, PHILA, PA USA.

For JOHN ASHCROFT, ATTORNEY GENERAL, RESPONDENT: JAMES G. SHEEHAN, U.S. ATTORNEY'S OFFICE, PHILA, PA USA.

**JUDGES:** R. Barclay Surrick, Judge.

**OPINIONBY:** R.Barclay Surrick

**OPINION:**

MEMORANDUM AND ORDER

SURRICK, J.

JANUARY 25, 2002

Presently before the Court is the Government's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. (Doc. No. 14) and Plaintiff's response thereto. For the reasons that follow, the Government's motion will be granted.

**Factual Background**

Plaintiff Joseph R. Fallon ("Plaintiff") is a fifty-four year old attorney who is employed by the Department of Justice as an Assistant District Counsel in the New York Office of District Counsel of the Immigration and Naturalization Service ("INS"). Plaintiff has been so employed since July 24, 1995. Although Plaintiff works in New York City, he has chosen to reside in Philadelphia and has commuted to New York [*2] City each business day since 1995. Because Plaintiff travels the distance between his residence and workplace by bus, he is perpetually held hostage to the bus schedule. In addition, Plaintiff suffers from a recurring back problem which limits his movement and has created difficulty in certain aspects of his job. For instance, Plaintiff requires full back and lumbar supports in his office chairs and he experiences discomfort in bending down, which makes it difficult for him to reach items that are located close to the ground.

Since 1996, Plaintiff has sought transfer out of the New York Office of District Counsel by applying for vacant positions in other INS offices, including Boston, Philadelphia, and the Eastern Regional Office in South Burlington, Vermont. Plaintiff was not selected for any of the vacancies for which he applied. In most instances he was not advised of his non-selection. Plaintiff alleges that his non-selection was either the result of his age or physical condition and that in each case, a younger worker was transferred or hired to fill the vacancy.

Plaintiff contends that the failure of the INS to transfer him has resulted in the deprivation of income and opportunities [*3] for promotion. He states that the failure of the INS to transfer him to the Philadelphia District Office deprived him of certain benefits such as decreased commuting costs of more than $ 3,000 per year, the ability to work longer hours and take advantage of an alternative work schedule, and additional promotional opportunities. (Pl.'s Response, at X-12.) Similarly, Plaintiff

contends that the failure of the INS to transfer him to the Eastern Regional Office in South Burlington, Vermont deprived him of the ability to work longer hours and save money that he now spends on commuting to New York. He also contends that a transfer to the Eastern Regional Office would have provided him with greater exposure and broader experience and that this, in turn, would have led to additional promotion opportunities. (Pl.'s Response, at X-13.)

On November 3, 1999, Plaintiff initiated contact with an Equal Employment Opportunity Commission (EEOC) Counselor to discuss his non-selections for transfer and his allegation that Defendants have a practice of denying older workers' transfer requests. Plaintiff subsequently filed a formal Complaint of Discrimination with the INS EEO office with respect to these [*4] allegations on January 10, 2000. n1 It appears that no final decision has yet been made with respect to this Complaint. n2 On December 3, 1999, Plaintiff initiated contact with an EEOC Counselor specifically concerning the failure to transfer to Philadelphia. A formal Complaint of Discrimination was filed on March, 14, 2000. No final decision has been made as to this Complaint. Plaintiff also initiated contact with an EEOC Counselor on December 8, 1999 for the purpose of discussing the denial of his transfer request to the Eastern Regional Office in Vermont. A formal Complaint of Discrimination was thereafter filed and was ultimately dismissed as untimely on July 19, 2000. (See Pl.'s Complaint, Exhibits A, B & C).

n1 The formal Complaint originally contained an allegation of class discrimination. However, Plaintiff withdrew this allegation and elected to pursue the denial of transfer on an individual basis only. The Complaint included specific instances of Plaintiff's non-selection for transfer, including his non-selection of transfer to Philadelphia and Boston. (See Pl.'s Response, X-66, and Pl.'s Complaint Exhibit A).

[*5]

n2 The instant action was filed pursuant to 29 C.F.R. § 1614.407(b), which provides that a complainant who has filed an individual complaint may file a civil action in a United States District Court "after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and a final decision has not been issued." EEOC Federal Sector Equal Employment Opportunity, 29 C.F.R. § 1614.407(b) (2001).

Plaintiff has brought this action against Attorney General John Ashcroft, n3 the Immigration and Naturalization Service, and INS Commissioner Doris Meissner (collectively, "Defendants") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act"). Plaintiff's Complaint alleges that Defendants engaged in employment discrimination on the basis [*6] of both his age and physical disability.

n3 Plaintiff's original lawsuit named Attorney General Janet Reno as a defendant in this case. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Attorney General John Ashcroft was substituted for former Attorney General Janet Reno.

Count I of Plaintiff's Complaint contains non-specific allegations that Plaintiff has not been selected for transfer to any of the vacancies for which he has applied, and that the denial of his transfer requests was due to age discrimination. Although Count I does not refer to any specific instances of age discrimination, Plaintiff's response to Defendants' interrogatories lists twenty-four different instances where he was denied transfer out of the New York office dating back to 1996. n4 Count I is essentially an aggregation of claims for Defendants' refusal to transfer Plaintiff. Plaintiff further alleges in Count I that nearly all requests to transfer from the New York office of the INS made by workers over the age of forty [*7] have been denied while no one under the age of forty who requested a transfer out of the New York office has been denied. n5

n4 In their motion for summary judgment Defendants assume that Count I is a "general litany of allegations of nonselection" (Def.s' Mot. for Summary Judgment) that implicitly incorporates claims for every instance of nonselection for transfer since Plaintiff was hired. Plaintiff confirmed Defendants' assessment of Count I in his response to Defendant's motion for summary judgment." (Pl.'s Response at 12, X-9, X-10).

n5 Plaintiff repeatedly refers to Defendants' conduct with regard to transfers as a "pattern and practice" of discrimination. Plaintiff's usage of the term "pattern and practice" is not entirely clear. The term "pattern and practice" is used in several different ways in the employment dis-

*crimination context. First, the term "pattern and practice" may be used to describe a type of claim that may be brought by either the federal government or by a party asserting a class-action against an employer. See Vaszlavik v. Storage Tech Corp.*, 175 F.R.D. 672, 679 (D. Col. 1997). Under this usage, the federal government or party bringing a class-action may bring suit against an employer claiming that the employer has a pattern and practice of employment discrimination. Second, the term "pattern and practice" may be used to identify the type of evidence that may be presented to demonstrate discrimination. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1217 (3d Cir. 1995). Under this usage, an individual may use evidence of a pattern or practice to help prove individual claims of discrimination. Lastly, the term "pattern and practice" may be used when a party seeks to invoke the continuing violations doctrine to defeat an affirmative defense of untimeliness. *Dunn v. Hercules, Inc.*, 1994 U.S. Dist. LEXIS 6445, at *3 n.3 (E.D. Pa. May 12, 1994). Under this usage, a party may be able to avoid the effect of the statute of limitations by showing that the otherwise time-barred claims are part of a pattern and practice of employment discrimination that he has only recently become aware of.

Plaintiff's Complaint does not provide useful clues as to the manner in which he uses the term "pattern and practice." Indeed, we note that Plaintiff does not use the term "pattern and practice" in his Complaint, but instead refers to "practices and policies," a term that we interpret to be substantially synonymous with "pattern and practice." At any rate, the parties have apparently agreed in their submissions that the term "pattern and practice" and, by implication, the term "practices and policies," are used as a means of invoking the continuing violations doctrine so as to defeat Defendants' affirmative defense of untimeliness.

[*8]

Count II of Plaintiff's Complaint is a specific allegation of age discrimination for failure to transfer Plaintiff from the New York office to the Philadelphia office. Count III is a specific allegation of age discrimination for failure to transfer Plaintiff from the New York office to the Eastern Regional Office in South Burlington, Vermont. Count IV is a general allegation of discrimination for denying Plaintiff transfer opportunities, promotional opportunities, assignments, and details based upon a disability.

Defendant's motion for summary judgment requests dismissal of Plaintiff's Complaint for two reasons. First, Defendants argue that all but two of Plaintiff's claims related to non-selection for transfer are barred by the statute of limitations. Second, Defendants contend that Plaintiff's claims fail because Plaintiff has not established a prima facie case of discrimination.

**Legal Standard**

In deciding a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, we must grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue [*9] as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). We must take all evidence of the nonmovant as true, and draw all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Where the record, taken in its entirety, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

**Discussion**

**I. Timeliness of Plaintiff's Claims in Counts I through III**

In Counts I through III, Plaintiff has asserted claims arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq., for Defendants' refusal to transfer* [*10] *him on the basis of his age. As above indicated, Count I is a rather amorphous allegation that Defendants routinely discriminated against persons based on age, and that as a result Plaintiff was denied transfer out of the New York office. Although not specifically pleaded in Count I, counsel agree that based upon Plaintiff's interrogatory answers, this Count includes all failures to transfer Plaintiff out of the New York office dating back to 1996. Although Counts II and III allege specific instances of age discrimination, they are redundant, as these claims of age discrimination are pled, if but vaguely, in Count I. Counts II and III are merely a restatement of claims already included in Count I through the answers to interrogatories. The timeliness of claims included in Count I will ultimately be dispositive of the timeliness of the same claims in Counts II and III.*

*A federal employee complaining of age discrimination has two routes by which he may seek relief.* Stevens v. Dep't of Treasury, 500 U.S. 1, 6, 114 L. Ed. 2d 1, 111 S. Ct. 1562 (1991). An aggrieved individual may either invoke the EEOC's administrative process and then file an action in federal court if [*11] he is not satisfied with the administrative remedies or he may simply decide to litigate the merits of his claim in a federal court in the first instance. 29 U.S.C. § § 633a(b) & (c) (1994 & Supp. V 1999); *Stevens*, 500 U.S. at 5-6. Regardless of whether the aggrieved individual chooses to pursue an administrative remedy or to litigate his claim in federal court, he must he must first consult with a Counselor prior to filing the complaint in an attempt to informally resolve the matter. This initial informal complaint to a counselor must occur within forty-five days of the date of the alleged discrimination. 29 C.F.R. § 1614.105 (2001); n6 *Bohac v. West*, 85 F.3d 306 (7th Cir 1996) (administrative time limits under ADEA are statutes of limitation); *Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997) (plaintiff must exhaust required administrative remedies before seeking judicial relief); *Arizmendi v. Lawson*, 914 F. Supp 1157 (E.D. Pa 1996). n7 After consulting with a Counselor, the aggrieved individual may file an administrative complaint. If there has been no decision after [*12] 180 days from the date the individual filed the administrative complaint, the individual may bring an action in federal district court. 29 C.F.R. § 1614.407. Alternatively, if after consulting with a Counselor the individual decides not to pursue a remedy for alleged age discrimination through the administrative process, he may file a lawsuit under the ADEA. However, he may not commence the civil action until he has given the EEOC not less than thirty days notice of his intent to sue. 29 C.F.R. § § 1614.105(b)(1) & 1614.201(a). This notice must be filed within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 633a(d).

n6 Section 1614.105 entitled Pre-Complaint Processing provides:

(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of action.

[*13]

n7 The forty-five day period of limitations contained in 29 C.F.R. § 1614.105 also applies to claims under the ADA and Rehabilitation Act. See *Trumbull v. Shalala,*. No. AW-99-34-1, 2000 U.S. Dist. LEXIS 20584 at *11 (D. Md. June 21, 2000); *Peterson v. Henderson*, No. 97-75481, 1998 U.S. Dist. LEXIS 18964, at *13-14 (E.D. Mich Nov. 13, 1998); *Miller v. Cohen*, 52 F. Supp. 2d 389 (M.D. PA. 1998).

Defendants contend that with two exceptions, all of the non-selections in Count I, as well as the non-selection alleged in Count III, preceded Plaintiff's informal complaint by more than forty-five days and are therefore barred by the limitations period contained in 29 C.F.R. § 1614.105(a)(1). Defendants concede that the claims in Counts I and II based upon the requested transfers to Boston in 2000 and Philadelphia in 1999 are timely. Defendants first raised the timeliness issue in their motion for summary judgment and did not plead the period of limitations as an affirmative defense in their Answer [*14] to Plaintiff's Complaint.

Plaintiff argues that although he did not comply with the forty-five day limitation period, his claims are not time-barred for the following reasons. First, Plaintiff argues that Defendants have waived their right to raise the period of limitations at this stage of the litigation by not including it as an affirmative defense in their Answer. Second, Plaintiff argues that the INS accepted his Complaint of Discrimination, which included the allegations made in Count I, and thereby made a decision not to dismiss the allegations for failure to comply with the period of limitations. Plaintiff contends that this constitutes a waiver of any potential statute of limitations defense. Third, Plaintiff argues that the doctrine of continuing violation should be applied in this case to render Plaintiff's otherwise untimely allegations timely. Finally, as to Plaintiff's non-selection for transfer to the Eastern Regional Office in Vermont, Plaintiff argues that the doctrine of equitable tolling or equitable estoppel renders this claim timely.

**A. Waiver of the Statute of Limitations Defense by Failure to Plead**

Federal Rule of Civil Procedure 8 requires that a [*15] defendant answering a complaint set forth any affirmative defenses such as the statute of limitations. Fed. R. Civ. P. 8(c). The Third Circuit "has taken the position that whether an affirmative defense that must be pleaded in the answer is waived will depend on whether the defense was raised 'at a pragmatically sufficient time' and the plaintiff was prejudiced in the ability to respond." *Pro v. Donatucci*, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991)); *see also Turiano v. Schnarrs*, 904 F. Supp. 400, 405-406 (M.D. Pa. 1995) (permitting an affirmative defense of qualified immunity to be raised for the first time in defendant's motion for summary judgment because it was done in a pragmatically sufficient time); *Petock v. Thomas Jefferson Univ.*, No. 84-5937, 1986 U.S. Dist. LEXIS 30246, at *3 (E.D. Pa. Jan. 21, 1986) ("A defendant may raise an affirmative defense for the first time by way of summary judgment and a court so grant only if there are no genuine issues of material fact, if the plaintiff is not prejudiced by the raising of the defense on summary judgment, [*16] and if the defendant is entitled because of the newly raised defense to summary judgment as a matter of law.").

It is apparent that Defendants failed to plead the statute of limitations as an affirmative defense. However, it is equally apparent that Plaintiff has not been prejudiced by Defendants first raising the untimeliness of Plaintiff's claims in their motion for summary judgment. *Compare Regal Indus., Inc. v. Genal Strap, Inc.*, No. 93-0209, 1994 U.S. Dist. LEXIS 10193 (E.D. Pa. July 26, 1994) (finding waiver of affirmative defense of statute of limitations where it was first asserted after trial on a motion to alter or amend the judgment) *with Harris v. Mercy Health Corp.*, No. 97-7802, 2000 U.S. Dist. LEXIS 11228, at *18-19 (E.D. Pa. Aug. 10, 2000) (noting that where plaintiff previously argued against the limitations defense in his brief in response to defendant's motion to dismiss, there was presumably no surprise or prejudice). Defendants have set forth the period of limitations defense in their motion for summary judgment and Plaintiff has had ample opportunity to respond to Defendants' arguments. The lack of prejudice is demonstrated by [*17] the fact that Plaintiff has taken full advantage of the opportunity to present his position on the matter in his response to Defendants' motion. The affirmative defense was therefore raised in a pragmatically sufficient time for Plaintiff to fully and thoughtfully respond. *See Harris*, 2000 U.S. Dist. LEXIS 11228, at *18-19. Under the circumstances, we will deem Defendants' Answer amended to include the affirmative defense of the statute of limitations. *See Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 55 F. Supp. 2d 309, 315 (D. Del. 1999); *Pantzer v. Shields Dev. Co.*, 660 F. Supp. 56, 61 (D. Del. 1986).

## B. Waiver of Timeliness Requirement at the Administrative Level

When the INS accepted Plaintiff's formal Complaint of Discrimination on January 10, 2000, it failed to dismiss the complaint as untimely in accordance with 29 C.F.R. § 1614.107(a)(2). n8 Plaintiff contends that this constituted a decision not to dismiss the allegation for failure to comply with applicable time limits, thereby waiving the statute of limitations as a defense to Plaintiff's claims. This argument is without merit. [*18]

> n8 29 C.F.R. § 1614.107(a)(1) provides that an agency shall dismiss a complaint that "fails to comply with the applicable time limits contained in § § 1614.105, 1614.106 and 1614.204(c), unless the agency extends the time limits in accordance with § 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor."

By accepting the complaint, the INS did not waive the timeliness requirement. "An agency does not waive a timeliness defense merely by accepting or investigating a discrimination complaint." *Smith v. Danzig*, No. 00-216-P-H, 2001 U.S. Dist. LEXIS 10262, at *32 (D. Me. July 20, 2001); *see also Ester v. Principi*, 250 F.3d 1068, 1072 n.1 (7th Cir. 2001) ("We do not . . . reject the well-settled rule that agencies do not waive a timeliness defense merely by accepting and investigating a discrimination complaint."). Plaintiff [*19] first contacted a Counselor on November 3, 1999. Plaintiff then proceeded to file the Complaint of Discrimination on January 10, 2000. Plaintiff offers nothing more than the fact that he was permitted to file a formal complaint, that he did file a formal complaint, and that this formal complaint was assigned a particular number. There is no suggestion that the INS ever addressed the merits of the complaint or made an explicit finding with regards to its timeliness. The lack of an explicit finding of timeliness or a decision on the merits compels the conclusion that the timeliness defense was not waived by Defendants. *See Ester*, 250 F.3d at 1071-72.

## C. Doctrine of Continuing Violation

"Under the continuing violation doctrine, if a plaintiff has expressed a "continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it," *Fitzgerald v. Henderson* 251 F.3d 345 (2d Cir. 2001). The application of the con-

tinuing violation doctrine permits Plaintiff to pursue otherwise time-barred claims if he can demonstrate that the alleged wrongful [*20] conduct is part of an ongoing pattern and practice of discrimination by Defendants. *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480-81 (3d Cir. 1997). In determining whether Plaintiff has demonstrated a continuing violation, we apply the three factor analysis set forth in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971 (5th Cir. 1983), as approved by the Third Circuit. See *Rush*, 113 F.3d 476 at 481.

> This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, [*21] or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate? As noted, the particular context of individual employment situations requires a fact-specific inquiry by a trial judge which cannot be easily reduced to a formula.

*Berry*, 715 F.2d at 981-82 (footnote omitted).

Plaintiff contends that all of the alleged violations at issue involve the same type of discrimination which was of a recurring nature and which lacked the degree of permanence that would have triggered Plaintiff's awareness of his rights. Plaintiff argues that a sufficient degree of permanence is not present because he was not informed that he had not been selected for many of the positions for which he applied, that someone else had been selected, or of the reasons for his non-selection. In other words, Plaintiff argues that because he was not aware that employment decisions had been made by the INS or the basis for those decisions, he could not have been expected to initiate contact with a counselor in a timely fashion.

We are satisfied that the continuing violation [*22] doctrine has no application in this case. The facts of this case are such that a reasonable person should have been aware of his duty to assert his rights. Although the acts alleged by Plaintiff do concern the same type of discrimination occurring over a period of time, this does not automatically transform the alleged acts into a continuing violation. See *Berry*, 715 F.2d at 981-82. Each denial of a transfer application was a discrete event. Even if Plaintiff was not notified that he was not selected for transfer, the lengthy passage of time was sufficient to put Plaintiff on notice that his various applications had not been approved. It is important to note that Plaintiff was denied transfer out of the New York office on no fewer than nineteen occasions before 1999. Seventeen of these denials occurred before 1998. Surely Plaintiff was aware, or at the very least should have been aware, that he had not been selected for the positions after the lapse of months and years. Even though Plaintiff may not have been informed of his non-selection, the non-selection would certainly have achieved a sufficient degree of permanence over time and should have triggered Plaintiff's [*23] awareness of and duty to assert his rights. See *Rush*, 113 F.3d 476 at 481; *Berry*, 715 F.2d at 981-82. Moreover, given the extensive list of denied transfer requests, Plaintiff should have been aware that he could expect future transfer requests to be denied as well. Indeed, either the sheer volume of denials or the lengthy passage of time should have been sufficient to have put Plaintiff, an attorney, on notice of the duty to assert his rights. n9 Plaintiff did not initiate the complaint process when he should have been aware of his duty to do so. Under the circumstances, the continuing violation doctrine cannot be applied to resurrect Plaintiff's untimely claims in this case. See *Rush*, 113 F.3d 476 at 481.

> n9 Plaintiff is an attorney with eighteen years experience who is licensed to practice law in five states. He has a Juris Doctorate Degree, Master of Arts Degree in Industrial Relations and a Master of Law Degree in Labor Law from Georgetown University. He has been a supervisor in the litigation department of a major insurance company, has represented both labor and management in arbitration, mediation and collective bargaining and has taught courses in labor management relations, human resources management and collective bargaining.

[*24]

As reflected in the answers to interrogatories, of the twenty-four positions that Plaintiff has applied for since 1996, Plaintiff has sought informal counseling or otherwise made an administrative complaint on three occasions. These occasions are: (1) November 3, 1999, after Plaintiff's application to transfer to Philadelphia was denied on October 6, 1999; (2) December 9, 1999, approximately one year after his application to transfer to Vermont had been denied in December of 1998; and (3) November 13, 2000, after his application to transfer to Boston was denied on or about October 5, 2000. On only two of these occasions -- the November 3, 1999 denial of his application to transfer to Philadelphia and the November 13, 2000 denial of his application to transfer to Boston -- did Plaintiff seek informal counseling within the forty-five day period provided by 29 C.F.R. § 1614.105. Clearly, the only timely claims relate to these two denials.

### D. Doctrine of Equitable Tolling

Plaintiff argues that the doctrine of equitable tolling or equitable estoppel n10 compels a finding that the complaint process was timely initiated with respect to the Assistant [*25] Regional Counsel position at the Eastern Regional Office in Vermont. "Equitable tolling stops the running of the statute of limitations in light of established equitable considerations." *New Castle County v. Halliburton Nus Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997). Equitable tolling may be appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). For equitable tolling to apply, Plaintiff need only show that he could not have discovered essential information bearing on his claim through the exercise of reasonable diligence. 38 F.3d 1390.

---

n10 The Third Circuit treats equitable tolling and equitable estoppel as two sides of the same coin. *See Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).

---

[*26]

We are satisfied that the facts proffered by Plaintiff, like the facts in *Oshiver*, do not support the application of equitable tolling. In *Oshiver* the plaintiff brought suit against the defendant law firm claiming, among other things, discriminatory failure to hire. The plaintiff alleged that in May, 1989, she applied for a position as an associate attorney with defendant. The plaintiff was instead hired as an hourly attorney, having been informed by the defendant that there were no salaried positions available at that time. The defendant did advise her, however, that she would be considered for an associate position if one became available. A little over one year later, in April, 1990, the plaintiff was dismissed with the explanation that the firm did not have sufficient work to sustain her position as an hourly employee, but that if additional hourly work or an associate position became available, the defendant would contact her. In May, 1991, plaintiff learned at an unemployment compensation benefits hearing that shortly after her dismissal defendant hired a male attorney to take over her duties as an hourly employee. Nearly six months after learning of this information, [*27] the plaintiff filed an administrative complaint alleging that her dismissal was the product of gender discrimination. Subsequently, in January, 1992, the plaintiff learned that defendant hired a male attorney as an associate in May, 1991, without notifying her that an associate position had become available. The plaintiff then amended her administrative complaint to include a claim of discriminatory failure to hire. In considering whether the plaintiff's claims were time-barred, the Third Circuit concluded that the equitable tolling doctrine was inapplicable to the plaintiff's failure to hire claim. The decision was based squarely upon the fact that nowhere in the plaintiff's complaint did she allege that the defendant misled her, actively or otherwise, with respect to its failure to hire. The court stated that "at most, Oshiver alleges that the firm concealed from her the fact that an associate opening arose. To be activated, equitable tolling requires active misleading on the part of the defendant. The type of concealment Oshiver alleges is ... qualitatively different from taking affirmative steps to mislead." *Oshiver*, 38 F.3d at 1391 n.10.

In the instant case, [*28] we have no concealment or misleading. Plaintiff applied for a transfer to the position of Assistant Regional Counsel in the Eastern Regional Office in South Burlington on or about November 9, 1998. In late December, 1998, Plaintiff was notified that the position had been filled by another INS attorney. On or about January 4, 1999, Plaintiff made inquiries regarding the selected candidate in order to determine whether any discriminatory action had occurred. Plaintiff was advised that the selected candidate was "senior" and "experienced." Although Plaintiff was apparently unsatisfied with the response he did not request additional information through the Freedom of Information Office until October of 1999. On November 3, 1999, Plaintiff received information pursuant to this request revealing that the "senior" and "experienced" person originally selected for the vacancy, Mr. McGrath, had declined the position and that it had then been offered to another candidate, Mr. Muther, who is younger than Plaintiff. n11

Page 7

After receiving this new information, Plaintiff initiated a claim in November, 1999.

> n11 This alternate candidate entered duty on March 15, 1999.

[*29]

Plaintiff contends that he had no reason to know of his ADEA claim at the time he was notified of his non-selection in December, 1998. Plaintiff also argues that as of December, 1998, Plaintiff did not have any experience with the filing requirements to perfect a complaint of age discrimination and that this should be a factor in considering whether equitable tolling applies to Count III. n12

> n12 As mentioned above, Plaintiff is an experienced attorney not an unsophisticated litigant. Nonetheless he contends that because he had no experience or actual or constructive knowledge of the filing requirements, the Court should consider this as a factor in whether equitable tolling applies in this case. We do not believe that we should disregard the period of limitation provided for by federal regulations simply because plaintiffs contend that they have no actual or constructive knowledge of the filing requirements.

We are compelled to conclude that Plaintiff has not shown the requisite "active misleading" on the part [*30] of Defendants necessary to invoke the equitable tolling doctrine. *See Oshiver*, 38 F.3d at 1391 n.10. There is no indication that Plaintiff was being misled when he inquired into the identity of the successful candidate on January 4, 1999. Although Plaintiff was not satisfied with the amount of information that he received from his inquiries, and subsequent information revealed that the position was ultimately awarded to another candidate, there is no indication that McGrath had already declined the position on January 4, 1999. In fact, on January 7, 1999, Muther sent a "cc: mail" to Rachel McCarthy expressing his disappointment that he had not been chosen for the position. Plaintiff has offered no evidence to indicate that McGrath had declined the position as of January 4, 1999 and that Plaintiff had been actively misled. Accordingly, the doctrine of equitable tolling does not apply in this case.

## II. Plaintiff's Prima Facie Case under the ADEA and Rehabilitation Act

The only claims in Plaintiff's Complaint that are not time-barred under the foregoing analysis are the claims related to the denial of transfer to Philadelphia and the claims related to the [*31] denial of transfer to Boston. Defendants argue that Plaintiff has failed to establish a prima facie case of employment discrimination under both the ADEA and the Rehabilitation Act and that they are therefore entitled to summary judgment on these claims. For the reasons hereinafter discussed, we are compelled to conclude that Plaintiff has failed to establish a prima facie case of either age or disability discrimination because he cannot demonstrate that he suffered an adverse employment action, an essential element of both claims.

### A. Prima Facie Case: ADEA

When evaluating a claim under the ADEA, the Third Circuit has applied a "slightly modified version" of the three-step test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). n13 *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). "First, the plaintiff must produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case." *Id.* To establish a prima facie case of employment discrimination under the ADEA, Plaintiff must show [*32] that (1) he is a member of a protected class (i.e., that he is over age forty), (2) that he was qualified for the position at issue, (3) that he suffered an adverse employment action, and (4) that he was ultimately replaced, or the position was filled by a younger person. *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 973 (3d Cir. 1998). "If the plaintiff offers sufficient proof of these elements, step two is reached. The burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the [act]." *Keller*, 130 F.3d at 1108.

> n13 We note that although Plaintiff has pled in Count I of his Complaint that Defendants had a policy and practice of discriminating against older employees, this does not entitle Plaintiff to show employment discrimination through the method of proof recognized in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977). *Cooper v. Diversicare Mgmt. Servs. Co.*, 115 F. Supp. 2d 1311, 1322 n.13 (M.D. Ala. 1999) (citing *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998)).

[*33]

### B. Prima Facie Case: Rehabilitation Act

In Count IV, Plaintiff claims that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., by discriminating against Plaintiff on the basis of his perceived disability. n14 Plaintiff contends that this alleged discrimination was manifested in the terms and conditions of his employment, including transfer opportunities, promotional opportunities, assignments, duties, and details.* Defendants argue that Plaintiff has failed to establish both the requisite knowledge of his disability on the part of the managers of the offices to which he applied for transfer and that Plaintiff has experienced an adverse employment action by not being selected for transfer.

n14 *The ADA prohibits covered entities from discriminating against qualified individuals with a disability because of the disability in regard to the terms, conditions, and privileges of employment, including job application procedures, the hiring, advancement, or discharge of employees, employee compensation, and job training. See* 42 U.S.C. § 12112 (1994). Under the provisions of the ADA, the United States is not a covered entity. *See* 42 U.S.C. §§ 12111(2) & 12111(5)(B)(i) (1994). Therefore, the ADA does not provide Plaintiff with a cause of action and Plaintiff's claim for discriminatory conduct based on his perceived disability is appropriately brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq. Nevertheless, the ADA is an important source of applicable law insofar as the Rehabilitation Act mandates that "the standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111, et seq.) and the provisions of sections 501 though 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment." See* 29 U.S.C. § 791(g) (1994 & Supp. V 1999). Thus, while Plaintiff's claim in Count IV is not actionable under the ADA, the ADA provides the applicable law for a claim arising under the Rehabilitation Act.

[*34]

In the absence of direct evidence of discrimination, the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) is applicable to Plaintiff's claims under the Rehabilitation Act and ADA. *See Newman v. GHS Osteopathic*, 60 F.3d 153, 157-58 (3d Cir. 1995). Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination under the ADA. *Olson v. GE Aerospace*, 101 F.3d 947, 951 (3d Cir. 1996). To establish a prima facie case of discrimination based upon disability under the ADA, Plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (stating the elements for a prima facie case under the ADA). The term "disability" means (1) having a physical or mental impairment that substantially limits one or more of the major life activities [*35] of such individual, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (1994). Here, Plaintiff alleges that he was regarded as disabled by Defendants. n15 If Plaintiff succeeds in establishing a prima facie case under the ADA, the burden of production then shifts to Defendants to articulate some legitimate, nondiscriminatory reason for their action. *Olson*, 101 F.3d at 951.

n15 Although it has not been argued in Defendant's motion for summary judgment and we do not presently decide the issue, we note that it appears unlikely that Plaintiff would be able to establish that he has a "disability" as defined under the ADA. The United States Supreme Court has very recently held that in determining whether a person has a physical impairment that substantially limits one or more of the major life activities of an individual, the court must look to whether the individual is prevented or restricted from performing "tasks that are of central importance to most people's daily lives." *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S.   , 534 U.S. 184, 151 L. Ed. 2d 615, 122 S. Ct. 681, No. 00-1089, slip op. at 1-2 (Jan. 8, 2002). In the instant case, Plaintiff contends that he is disabled within the meaning of the ADA because his employer is aware of his limitations associated with his bad back and therefore regards him as being disabled. But to be regarded by one's employer as disabled under the terms of the ADA, the employer must regard the person as "having a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). *Williams* teaches that "terms [such as "substantially limits" and "major life activities"] need to be interpreted strictly to create a demanding standard for qualifying as disabled"

Page 9

*Williams*, slip op. at 12. Moreover, it appears that this is an objective standard. The inquiry is whether the impairment places "severe restrictions in the activities that are of central importance to *most people's* daily lives." *Id.* at 17 (emphasis added). In the instant case, Plaintiff has merely alleged that he uses lumbar supports in his chairs and that a recurring back problem causes him discomfort when bending over. We doubt whether such impairments are of the type that could objectively be seen as substantially limiting Plaintiff's major life activities.

[*36]

### C. Adverse Employment Action

It is essential to Plaintiff's claims under both the ADEA and the Rehabilitation Act that Plaintiff have suffered an adverse employment action. An adverse employment action is an action by an employer that is serious and tangible enough to alter Plaintiff's compensation, terms, conditions, or privileges of employment, or to deprive him of employment opportunities, or adversely affect his status as an employee. 29 U.S.C. § 623(a) (1994 & Supp. V 1999); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (construing a parallel requirement of adverse employment action in the context of a Title VII case). Although the definition of "adverse employment action" includes job opportunities that are not mere entitlements, there must be some material detriment to the plaintiff. "Mere idiosyncracies of personal preference are not sufficient to state an injury." *Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446, 457 (D.C. Cir 1999) (holding that "a plaintiff who is made to undertake or who is denied a lateral transfer -- that is, one in which she suffers no diminution in pay or benefits [*37] -- does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm").

We recognize that an adverse employment action is not limited to loss or reduction of pay or monetary benefits but may include other forms of adversity as well. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Id.* Whether Plaintiff has experienced an adverse employment action is an issue of fact and often cannot be resolved on a motion for summary judgment, except where the issue is not fairly contestable. *See Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 273-74 (7th Cir. 1996); *Danas v. Chapman Ford Sales, Inc.*, 120 F. Supp. 2d 478, 485 [*38] (E.D. Pa. Oct. 27, 2000) (citing *Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 273-74 (7th Cir. 1996)). In the instant case, we conclude that the issue is not fairly contestable and that Plaintiff has not experienced an adverse employment action.

Plaintiff alleges that "the ability to transfer to different District Counsel's office [sic] is a term and condition of employment in which Defendants have discriminated against older workers based upon their age." (Pl.'s Complaint P 24.) In support of this allegation, Plaintiff has stated that prior to being hired, he was informed that the INS "had an awful lot of promotion and transfer opportunities," that "one could expect there was quite a bit of mobility in the INS," and that "the INS is very, very big on transferring people." (Def.s' Mot. for Summary Judgment, Ex. A-8.) Plaintiff has also stated that his understanding at the time he was hired was not that he was assured of transfer, but that his "*prospects were excellent for a transfer anywhere within the system.*" (Def.'s Mot. for Summary Judgment, Ex. A-13-14.) (emphasis added) Plaintiff argues that he sought and was denied transfer to positions that "offered [*39] Plaintiff a greater opportunity for advancement, to be recognized, to improve skills with a lesser caseload and interact more collegially with his colleagues, the bench and bar." (Pl.'s Response, at 22.)

It is Plaintiff's position that the denials of his transfer requests constituted adverse employment actions because the sought-after transfers were not merely lateral or identical, but would have resulted in a material benefit had Plaintiff been selected. Plaintiff argues that the inability to work longer hours, practice in a particular field of law, or practice in a particular office has had a harmful effect upon his career. In particular, Plaintiff contends that all of the transfers for which he applied "would have resulted in a significant change in the amount of time he travels, a savings in the portion of his income he must devote to his commute and the opportunity to advance his career by being more available to his supervisors and colleagues as a result of not having to run for the bus." n16 (Pl.'s Response, at 19.)

---

n16 We have noted that Plaintiff has voluntarily chosen to live in Philadelphia and work in New York. We also note that before his present employment, Plaintiff was working in Hanover, Massachusetts while living in Nashua, New Hampshire, seventy miles away. It is unclear how the consequences of Plaintiff's commute could be

related to an adverse employment action when it is a condition that he voluntarily and repeatedly imposes upon himself.

[*40]

We have little doubt that Plaintiff would have experienced a collateral benefit by transferring out of the New York office, although we must admit that this presumes that Plaintiff would not again choose to live 100 miles away from work. It can hardly be doubted that Plaintiff would benefit from not commuting such long distances. However, the question is not whether Plaintiff would be better off working in a city other than New York, but whether the denial of his transfer requests affected his compensation, terms, conditions, or privileges of employment, deprived him of employment opportunities, or adversely affected his status as an employee. In making this determination, we note that the positions for which he applied in Boston and Philadelphia are not substantially different from his present position in New York -- the only significant difference is the location of his workplace and the impact this has upon Plaintiff's commute. The failure of the employer to transfer Plaintiff to a position that is only collaterally beneficial does not, under the circumstances in the instant case, rise to the level of an adverse employment action.

Plaintiff cites the Third Circuit case of *Goosby v. Johnson & Johnson*, 228 F.3d 313 (3d Cir. 2000), [*41] in support of his argument that Defendant's refusal of the desired transfers constituted an adverse employment action. *Goosby* is inapposite. In *Goosby* Plaintiff claimed that after her employer restructured the workforce, she was assigned to a newly created position that was more difficult, less desirable, and only "for employees that the company wanted to get rid of." *Goosby*, 228 F.3d at 317, 319. The court concluded that there existed a genuine issue of material fact concerning whether the position at issue was, in fact, less desirable, and a genuine issue of material fact concerning whether Plaintiff was treated adversely or not. *Goosby*, 228 F.3d at 319. Unlike *Goosby*, there is no allegation in this case that Defendants affirmatively acted to place Plaintiff in a less advantageous position. Rather, Plaintiff's complaint is that Defendants have failed to place him in a position which he perceives to be more advantageous.

Plaintiff also contends that had he been selected for the position of Eastern Regional Counsel in the Eastern Regional Office in South Burlington, Vermont, he would have been able to practice in different substantive [*42] areas of law that have broader based application and which would have allowed Plaintiff to draw upon his labor relations education and thereby further advance his career. Plaintiff argues that this position would have provided him with opportunities that are not as readily available to employees working in other offices. For example, Plaintiff argues that the Deputy Regional Counsel at the Eastern Regional Office obtained her position while she was an Assistant Regional Counsel at the Eastern Regional Office, and that the position was only advertised among the Assistant Regional Counsel staff at the Eastern Regional Office. Plaintiff contends that by not being permitted to transfer to the Eastern Regional Office, he is missing out on similar opportunities.

Even if Plaintiff's claims regarding transfer to Vermont were not time barred, Plaintiff has offered no substantive evidence to support his contention that his career with the INS has been adversely affected by this failure to transfer. His argument invites this Court to speculate on what might have been. In the case of *Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001), the Third Circuit considered a District [*43] Court's finding of an adverse employment action through the presumed future effect that an employer's actions might have on compensation, terms, conditions, or privileges of employment. In *Weston* plaintiff brought suit against his employer under Title VII for placing written reprimands in his personnel file that were to remain in the file for a period of six months. The trial court held that the written reprimands constituted an adverse employment action because of their "presumed" effect on the compensation, terms, conditions, or privileges of plaintiff's employment. The Third Circuit disagreed, holding that the employer did not take an adverse employment action by placing the reprimands in plaintiff's personnel file because plaintiff failed to show how the reprimands effected a material change in the terms or conditions of his employment. *Weston*, 251 F.3d at 431. The court noted that the plaintiff was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location, did not have his hours or work altered in any way, and was not denied a pay raise or promotion as a result of the reprimands. *Id.* The Third [*44] Circuit refused to speculate as to the presumed effect of a written reprimand.

Similarly, we cannot presume that Plaintiff's non-selection for transfer has effected a material change in the terms, conditions or privileges of his employment. Plaintiff's suggestion that he lacks the ability to advance his career because of Defendants' denial of his transfer requests is sheer speculation. Plaintiff has failed to demonstrate how the failure to transfer did effect a material change in the terms and conditions of his employment. Having failed to establish that he experienced an adverse employment action, Plaintiff has failed to establish a crucial element of his prima facie case of employment discrimination based on age or disability.

**Conclusion**

For the foregoing reasons Defendant's Motion For Summary Judgment will be granted.

An appropriate Order follows.

**ORDER**

AND NOW, this 25th day of January, 2002, upon consideration of Government's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Docket No. 14) and Plaintiff's response thereto, it is ORDERED that the said Motion be and the same is hereby GRANTED.

BY THE COURT: [*45]

R. Barclay Surrick, Judge